IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIA DIAGNOSTICS, INC., | No. C 11-06391 SI |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS OR TRANSFER** |
| v. | |
| SEQUENOM, INC., | |
| Defendant. | |

Defendant's motion to dismiss or transfer this case is currently scheduled for hearing on March 9, 2012. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES defendant's motion.

## BACKGROUND

**1.  Factual background**

Plaintiff seeks a declaration that its non-invasive prenatal test ("Aria test" or "Harmony test") using cell-free DNA circulating in the blood of a pregnant woman does not directly infringe or contribute to the infringement of U.S. Patent No. 6,258,540 (the "'540" patent). The '540 patent is entitled "Non-Invasive Prenatal Diagnosis," and was issued to Yuk-Ming Dennis Lo and James Stephen on July 10, 2001. Complaint ¶ 14. Defendant Sequenom is the exclusive licensee of the '540 patent, which Sequenom in-licensed from Isis Innovation Limited. *See* Tatman Decl., ¶¶ 3-4.

As relevant to this motion, Aria contends that on June 30, 2011, Dr. Ken Song, the Chief Executive Officer of Aria, presented on a panel at the 10th World Congress in Fetal Medicine. Song

Decl., ¶ 4. Dr. Song's panel was moderated by Dr. Lo, one of the named inventors of the '540 patent and a member of Sequenom's advisory board and consultant to Sequenom. *Id.* During the panel presentation, Dr. Song described a test being developed by Aria for the "detection of fetal aneuploidies using non-invasive prenatal testing," and how Aria's test detected fetal aneuploidies utilizing a selective sequencing approach to analyze the cell-free DNA found in maternal plasma. *Id.*, ¶¶ 4-8. Dr. Song declares that based on the contents of his talk and the accompanying slides, as well as a post-panel discussion attended by Dr. Lo and two representatives of Sequenom (including Sequenom's Vice-President of Business Development), Sequenom had "the information required to understand that Aria was using cell-free DNA for fetal aneuploidy detection and to understand the techniques that Aria was using for detection." *Id.*, ¶ 10.

Aria contends that during the summer and fall of 2011, Sequenom began "deploying in the marketplace" the '540 patent and making various statements that the '540 patent "will block all non-invasive cell-free DNA-based approaches" to prenatal testing. *See* Naini Decl., ¶ 2 & Ex. 1. These statements include an investor conference call where Sequenom's Executive Vice-President of Research and Development, Ron Lindsay, told participants that "we believe that the ['540 patent] is the underpinnings of this whole field, and potentially believe that anybody whose [sic] developing, an approach that interrogates [sic] the circulating cell for eDNA is infringing this key patent in the field." Naini Decl., ¶ 3 & Ex. 2. They also include statements that a Sequenom competitor, Verinata, would be infringing the '540 patent by developing a test that uses "circulating free-cell fetal nucleic acids" for prenatal testing. Naini Decl., ¶ 4 & Ex. 3; *see also id.*, ¶ 5 & Ex., 4 (article quoting Ron Lindsay as having warned Verinata that their pre-natal test infringed the '540 patent).

None of Sequenom's public statements mention Aria. However, on December 6, 2011, outside counsel for Sequenom sent Aria a letter explaining that it had come to Sequenom's attention that Aria "is planning to commercialize a method of detecting aneuploidy for non-invasive prenatal testing." Naini Decl., ¶ 8 & Ex. 7. The letter enclosed a copy of the '540 patent and asked Aria to provide a detailed explanation of the reasons Aria believed that its test did not infringe the '540 patent. *Id.* On January 6, 2011, Aria published a peer-reviewed article in the journal *Prenatal Diagnosis* titled "Selective Analysis of Cell-free DNA in Maternal Blood for Evaluation of Fetal Trisomy." Song Decl.,

¶ 4. This article, according to Dr. Song, was based on the detection techniques he discussed during the June 30, 2011 panel presentation. *Id.* On January 6, 2011, Aria posted a link on its website to a *Forbes* article, "Aria Diagnostics Emerges from Stealth With New Blood-Based Prenatal Test," published on the same date. Malecek Decl., ¶ 3, & Ex. 2. On January 9, 2011, Aria published two press releases regarding the peer-reviewed article and Aria's securing of $52.7 million in funding. Malecek Decl., ¶¶ 4, 6.

**2.     Procedural background**

Plaintiff filed this declaratory relief action against Sequenom on December 19, 2011.[1] On January 24, 2012, Sequenom filed a complaint alleging infringement of the '540 patent against Aria in the Southern District of California. *Sequenom, Inc. v. Aria Diagnostics, Inc.*, SDCA Case No. 12-cv-0189 WQH/BGS. That case also names Isis Innovation Limited – a British company who is the named assignee of the '540 patent – as a nominal defendant for purposes of subject matter jurisdiction only.[2]

Sequenom now moves to dismiss this case for lack of subject matter jurisdiction, arguing that when Aria filed suit on December 19, 2011, there was no "substantial controversy" between the parties sufficient to confer declaratory judgment jurisdiction on the Court. In the alternative, Sequenom agues the Court should decline declaratory jurisdiction and dismiss or transfer this case to the Southern District of California where Sequenom's infringement case against Aria is pending.

---

[1] Two other cases have been filed in the Northern District of California which also seek declaratory judgments that specific products do not infringe the '540 patent and that the '540 patent is invalid. *See* 12-cv-00132-SI *Natera v. Sequenom, Inc.* (filed 1/6/12) and 12-cv-865-YGR *Verinata and Stanford v. Sequenom, Inc.* (filed 2/22/12).

[2] Sequenom named Isis in the Southern District case only for purposes of subject matter jurisdiction pursuant to *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459 (1926). Sequenom requested that Isis join as a party plaintiff, but Isis has not agreed, and although Isis is named as a nominal defendant in the Southern District case, Sequenom "seeks relief realigning Isis as a plaintiff." *See* Complaint, ¶ 5 Case No. 12-0189 SDCA

**LEGAL STANDARD**

**1.      Declaratory judgments**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A district court must ask, "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (citations omitted). To determine whether jurisdiction exists, the party invoking jurisdiction must point to "some affirmative act by the patentee" that forms the basis for an actual controversy between the parties. *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1338-39 (Fed. Cir. 2008). The "affirmative act" necessary to sustain declaratory judgment jurisdiction can arise in "a variety of ways, for example, by creating a reasonable apprehension of an infringement suit . . . demanding the right to royalty payments, . . . or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id.,*537 F.3d at 1339; *but see Trend Micro Corp. v. WhiteCell Software, Inc.*, 2011 U.S. Dist. LEXIS 12248 (N.D. Cal. Feb. 8, 2011) (finding lack of declaratory judgment jurisdiction where defendant patent holder "has not made any claim that [plaintiff] infringes" its patent, has not "threatened or otherwise communicated" with plaintiff regarding infringement of that patent, and has "not even performed an infringement analysis to determine whether any" of plaintiff's products may infringe the patent).

**2.      The first-to-file rule**

The first-to-file rule was developed to "'serve the purpose of promoting efficiency well and should not be disregarded lightly.'" *Alltrade, Inc. v. Uniweld Prods, Inc*., 946 F.2d 622, 625 (9th Cir.1991), quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). Under the first-to-file rule, a district court may transfer, stay or dismiss a later-filed action when a similar action has previously been filed in another district court. *See Alltrade*, 946 F.2d at

4

625-26. When deciding whether to apply the first-to-file rule, the court must look at three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of issues. *Id.* "Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are substantially similar." *Alioto v. Hoiles*, No. C 04-1395 PJH, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004) (internal quotation marks omitted).

The first-to-file rule, however, is not to be "mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986) (citation omitted). As such, courts can decline to apply the first-to-file rule in circumstances of "bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628. Courts can also look to the respective convenience of the courts and parties in deciding whether to apply the first-to-file rule. *See Alltrade*, 946 F.2d at 628; *see also Z-Line Designs, Inc. v. Bello Int'l*, LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003).

**DISCUSSION**

**1. Motion to dismiss**

The Court finds that when Aria filed this case on December 19, 2011, there was a substantial controversy between the parties. One of the most significant purposes of the Declaratory Judgment Act "in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005) (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc*., 824 F.2d 953, 956 (Fed. Cir. 1987)). To serve that purpose, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Sequenom argues that because Aria was operating in "stealth," it could not possibly have had a controversy with Aria until the publication of Aria's article on January 6, 2012, which disclosed precise details about Aria's test. However, Aria submits evidence that the nature of its prenatal testing

and the methods used, as well as indications that Aria was taking steps to bring its test to market, were disclosed on June 30, 2011 to representatives of Sequenom including defendant's Chief Medical Officer, Vice-President of Business Development and the co-inventor of the '540 patent. Sequenom does not contest or otherwise respond to Dr. Song's assertions regarding the detailed information he shared in the June 30, 2011 presentation. Sequenom's assertion that Aria was operating in "stealth" until the publication of the January 6, 2012 article is further undermined by Sequenom's December 6, 2011 letter to Aria, asserting that Sequenom had learned that Aria intended to commercialize a product that detected aneuploidy by non-invasive prenatal testing.

The December 6, 2011 letter – which does not threaten litigation – may be insufficient by itself to establish declaratory judgment jurisdiction. However, that letter must be considered in conjunction with Sequenom's repeated, broad public statements that any product which uses "the circulating cell for eDNA" in prenatal testing infringes the '540 patent.[3] While those statements did not mention Aria, and were primarily directed to Verinata (which had a competing product coming to market), the breadth of the assertions could not only create a reasonable apprehension of an infringement suit for a company in Aria's position but also create a barrier to Aria's, as well as other innovators', attempts to secure funding to commercialize prenatal tests. Moreover, Sequenom was explicit that it intended to "enforce" the '540 patent against competing prenatal products. *See* Naini Decl., Ex. 4. The fact that Aria's apprehension was not speculative is perhaps best demonstrated by the fact that Sequenom filed an infringement suit against Aria just over a month after Aria filed suit in the Northern District.

Based on the totality of the circumstances in this case, the Court finds that there was a substantial controversy between the parties as of December 19, 2011. See *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. at 127.

**2.  Motion to decline declaratory jurisdiction and dismiss or transfer**

In the alternative, Sequenom asks this Court to decline declaratory judgment jurisdiction and dismiss or transfer the case to the Southern District of California, where Sequenom filed its own action

---

[3] Sequenom does not dispute that various representatives made the statements relied upon by Aria.

6

against Aria on January 24, 2012. Sequenom argues that the Court should decline declaratory judgment jurisdiction because any such jurisdiction here is "tenuous" at best and because Aria preemptively filed this action in order to forum shop. *See Micron Tech., Inc. v. Mosaid Techs., Inc*., 518 F.3d 897 (Fed. Cir. 2008). Sequenom asserts that Aria's operation in "stealth" mode meant that only Aria knew when the details of its tests would be disclosed, *i.e.*, in the article published on January 6, 2012, and that Aria used that asymmetry of information to preemptively file its lawsuit in its home forum, the Northern District of California. That conduct, Sequenom argues, was an abuse of the Declaratory Judgement Act, and therefore, this case should be dismissed or transferred to Sequenom's home forum in the Southern District of California. Sequenom also argues that the fact that its Southern California action against Aria, filed on January 24, 2012, is a more complete case because the assignee of the '540 patent (who has in-licensed it to Sequenom) is a party, weighs in favor of transfer to the Southern District.

When addressing a motion to dismiss or transfer a declaratory judgment action in favor of a later filed infringement suit, the Federal Circuit has cautioned that "[i]nstead of relying solely on considerations such as tenuousness of jurisdiction, broadness of case, and degree of vestment, as in this case, or automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a)." *Micron Tech., Inc. v. Mosaid Techs., Inc*., 518 F.3d 897, 904 (Fed. Cir. 2008). The Court has already determined that declaratory judgment jurisdiction exists in this case. Although not the strongest case, jurisdiction here is more than tenuous. The Court also notes that plaintiff's choice of forum, having filed the declaratory judgment action when facing a substantial controversy, should be afforded significant weight. *Micron Tech.*, 518 F.3d at 904 ("The general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action.").[4] Turning to the Section 1404(a) convenience factors, the Court notes that plaintiff's headquarters – where much of the evidence regarding infringement will be maintained – are located in the Northern District. Respecting convenience of the parties and witnesses, the Court notes that

---

[4] Even if the Court were to find that Aria's suit was anticipatory, that determination would not mandate dismissal or transfer. *Interwoven, Inc. v. Vertical Computer Sys*., 2011 U.S. Dist. LEXIS 9124, *8 (N.D. Cal. Jan. 24, 2011) ("Whether or not a party 'intended to preempt another's infringement suit' is a relevant factor, although the Federal Circuit has held that, without more, an anticipatory motive does not warrant dismissal." (quoting *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005)).

7

traveling between San Diego and San Francisco should not unduly inconvenience Sequenom's employees and likely makes no difference to third-party witnesses such as the co-inventors of the '540 patent who live abroad. Finally, although not dispositive, the Court notes that two other cases have been filed in this District seeking declarations that other companies' prenatal tests do not infringe the '540 patent as well as challenging the validity of the '540 patent. *See* 12-cv-00132-SI *Natera v. Sequenom, Inc*. (filed 1/6/12) and 12-cv-865-YGR *Verinata and Stanford v. Sequenom, Inc*. (filed 2/22/12). The Court is not reaching any determination on whether the Court has subject matter jurisdiction over these other cases or whether they are otherwise properly in this Court, but the potential for efficiencies arising from coordinating litigation in the same district weighs in favor of denying the request to transfer. *See Micron Tech., Inc*., 518 F.3d at 905.[5]

Based on the relevant factors, the Court finds that this case should proceed in this forum.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss or transfer.

**IT IS SO ORDERED.**

Dated: March 7, 2012

SUSAN ILLSTON
United States District Judge

---

[5] Sequenom argues that the fact that Isis has not been named in this case, but has been named in the Southern District case, counsels in favor of transfer. However, Sequenom also admits that Isis is subject to jurisdiction in California (Motion to Dismiss at 24). Therefore, even if Isis is a necessary party to this declaratory relief action, Isis could be added without substantial delay.