EXHIBIT 3-2

## INTERNATIONAL SEARCH REPORT

International Application No

PCT/GB 98/00690

C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT

| Category * | Citation of document, with indication,where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | FOWKE K R ET AL:  "Genetic analysis of human DNA recovered from minute amounts of serum or plasma" JOURNAL OF IMMUNOLOGICAL METHODS, vol. 180, no. 1, 13 March 1995, page 45-51 XP004021069 see abstract<br>--- | 1-3 |
| P,X | DATABASE MEDLINE US NATIONAL LIBRARY OF MEDICINE (NLM), BETHESDA, MD, US AN (NLM) 97420079, LO YM ET AL: "Presence of fetal DNA in maternal plasma and serum." XP002070361 cited in the application see abstract & LANCET, AUG 16 1997, 350 (9076) P485-7, ENGLAND,<br>----- | 1-3,6, 13,22-26 |

2

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

page 2 of 2

# INTERNATIONAL SEARCH REPORT

International Application No

PCT/GB 98/00690

**A. CLASSIFICATION OF SUBJECT MATTER**

IPC 6   C12Q1/68      G01N33/53

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)

IPC 6   C12Q

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category * | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | WO 91 08304 A (ISIS INNOVATION) 13 June 1991<br>cited in the application<br>see abstract; claims | 1-3,6,13 |
| A | GB 2 299 166 A (ANKER PHILIPPE ;STROUN MAURICE (CH); VASIOUKHIN VALERI (US)) 25 September 1996<br>cited in the application<br>see abstract; claims | 1-3 |
| A | WO 95 06137 A (AUSTRALIAN RED CROSS ;QUEENSLAND INST MED RES (AU); HYLAND CATHERI) 2 March 1995<br>see abstract; claims | 1-3,10,11 |

-/--

| X | Further documents are listed in the continuation of box C. | | X | Patent family members are listed in annex. |

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 3 July 1998 | 21/07/1998 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040, Tx. 31 651 epo nl,<br>Fax: (+31-70) 340-3016 | Ceder, 0 |

Form PCT/ISA/210 (second sheet) (July 1992)

page 1 of 2

## INTERNATIONAL SEARCH REPORT

Information on patent family members

International Application No

PCT/GB 98/00690

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| WO 9108304 | A | 13-06-1991 | EP | 0502037 A | 09-09-1992 |
| GB 2299166 | A | 25-09-1996 | CH | 686982 A | 15-08-1996 |
| | | | AU | 1075695 A | 03-07-1995 |
| | | | WO | 9516792 A | 22-06-1995 |
| WO 9506137 | A | 02-03-1995 | AU | 7486694 A | 21-03-1995 |

PCT/GB98/00690

## PA~ IT COOPERATION TREATY

From the INTERNATIONAL BUREAU

### PCT

**NOTIFICATION OF ELECTION**

(PCT Rule 61.2)

To:

United States Patent and Trademark Office
(Box PCT)
Crystal Plaza 2
Washington, DC 20231
États-Unis d'Amérique

in its capacity as elected Office

| | |
|---|---|
| Date of mailing (day/month/year)<br>07 October 1998 (07.10.98) | |
| International application No.<br>PCT/GB98/00690 | Applicant's or agent's file reference<br>KP/VM/2216 PCT |
| International filing date (day/month/year)<br>04 March 1998 (04.03.98) | Priority date (day/month/year)<br>04 March 1997 (04.03.97) |
| Applicant<br>LO, Yuk-Ming, Dennis et al | |

1.  The designated Office is hereby notified of its election made:

   [X] in the demand filed with the International Preliminary Examining Authority on:

   17 September 1998 (17.09.98)

   [ ] in a notice effecting later election filed with the International Bureau on:

2.  The election   [X] was

   [ ] was not

   made before the expiration of 19 months from the priority date or, where Rule 32 applies, within the time limit under Rule 32.2(b).

| | |
|---|---|
| **The International Bureau of WIPO**<br>34, chemin des Colombettes<br>1211 Geneva 20, Switzerland | Authorized officer<br><br>Yolaine CUSSAC |
| Facsimile No.: (41-22) 740.14.35 | Telephone No.: (41-22) 338.83.38 |

Form PCT/IB/331 (July 1992)                                              2269344

**PATENT COOPERATION TREATY**



| REC'D | 1 8 DEC 1998 |
|---|---|
| WIPO | PCT |

# PCT

## INTERNATIONAL PRELIMINARY EXAMINATION REPORT

### (PCT Article 36 and Rule 70)

| Applicant's or agent's file reference<br>KP/VM/2216 PCT | **FOR FURTHER ACTION** | See Notification of Transmittal of International<br>Preliminary Examination Report (PCT/IPEA/416) |
|---|---|---|
| International application No.<br>PCT/GB98/00690 | International filing date *(day/month/year)*<br>04/03/1998 | Priority date *(day/month/year)*<br>04/03/1997 |

| International Patent Classification (IPC) or national classification and IPC |
|---|
| C12Q1/68 |

| Applicant |
|---|
| ISIS INNOVATION LIMITED et al. |

1. This international preliminary examination report has been prepared by this International Preliminary Examining Authority and is transmitted to the applicant according to Article 36.

2. This REPORT consists of a total of  5  sheets, including this cover sheet.

   ☐ This report is also accompanied by ANNEXES, i.e., sheets of the description, claims and/or drawings which have been amended and are the basis for this report and/or sheets containing rectifications made before this Authority (see Rule 70.16 and Section 607 of the Administrative Instructions under the PCT).

   These annexes consist of a total of    sheets.

3. This report contains indications relating to the following items:

   |  |  |  |
   |---|---|---|
   | I | ☒ | Basis of the report |
   | II | ☐ | Priority |
   | III | ☐ | Non-establishment of opinion with regard to novelty, inventive step and industrial applicability |
   | IV | ☐ | Lack of unity of invention |
   | V | ☒ | Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement |
   | VI | ☒ | Certain documents cited |
   | VII | ☐ | Certain defects in the international application |
   | VIII | ☐ | Certain observations on the international application |

| Date of submission of the demand<br><br>17/09/1998 | Date of completion of this report<br><br>1 6. 12. 98 |
|---|---|
| Name and mailing address of the IPEA/<br><br>European Patent Office<br>D-80298 Munich<br>Tel. (+49-89) 2399-0, Tx: 523656 epmu d<br>Fax: (+49-89) 2399-4465 | Authorized officer<br><br>Goetz, M<br><br>Telephone No. (+49-89) 2399-8697 |

**INTERNATIONAL PRELIMINARY
EXAMINATION REPORT**

International application No.   PCT/GB98/00690

**I.  Basis of the report**

1.  This report has been drawn on the basis of (*substitute sheets which have been furnished to the receiving Office in response to an invitation under Article 14 are referred to in this report as "originally filed" and are not annexed to the report since they do not contain amendments.*):

**Description, pages:**

1-38                    as originally filed

**Claims, No.:**

1-26                    as originally filed

**Drawings, sheets:**

1/4-4/4                as originally filed

2.  The amendments have resulted in the cancellation of:

☐  the description,      pages:
☐  the claims,          Nos.:
☐  the drawings,        sheets:

3.  ☐  This report has been established as if (some of) the amendments had not been made, since they have been considered to go beyond the disclosure as filed (Rule 70.2(c)):

4.  Additional observations, if necessary:

**INTERNATIONAL PRELIMINARY
EXAMINATION REPORT**

International application No.  PCT/GB98/00690

**V. Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement**

1. Statement

| | | | |
|---|---|---|---|
| Novelty (N) | Yes: | Claims | 1-26 |
| | No: | Claims | |
| Inventive step (IS) | Yes: | Claims | 1-26 |
| | No: | Claims | |
| Industrial applicability (IA) | Yes: | Claims | 1-26 |
| | No: | Claims | |

2. Citations and explanations

**see separate sheet**

**INTERNATIONAL PRELIMINARY**          International application No.   PCT/GB98/00690
**EXAMINATION REPORT - SEPARATE SHEET**

## Re Item I
## Basis of the report

The examination is being carried out on the **following application documents**:

**Description, pages:**
1-38                     as originally filed

**Claims, No.:**
1-26                     as originally filed

**Drawings, sheets:**
1/4-4/4                  as originally filed

## Re Item V
## Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement

None of the documents cited in the International Search Report either discloses or suggests the key element of the present invention, i.e. the detection of foetal nucleic acid in the serum or plasma fraction of a maternal blood sample.

While it is true that the prior art already considered the possibility of diagnosing cancer by detecting tumour specific DNA mutations in the blood plasma fraction, there is no scientifically sound reason to believe that a skilled person would have automatically carried over this prior knowledge to the situation of prenatal diagnostic markers.

The subject-matter of present claims 1 - 26, based on the said key element, therefore complies with the requirements pursuant to Art. 33(2) and (3) PCT.

**INTERNATIONAL PRELIMINARY**        International application No.   PCT/GB98/00690
**EXAMINATION REPORT - SEPARATE SHEET**

## Re Item VI
**Certain documents cited**

Certain published documents (Rule 70.10)

| Document | Publication date (day/month/year) |
|---|---|
| LO YM et al., "Presence of fetal DNA in maternal plasma and serum." LANCET 350(9076), p. 485-7 | 16/08/97 |

## PATENT COOPERATION TREATY

# PCT

## INTERNATIONAL PRELIMINARY EXAMINATION REPORT

### (PCT Article 36 and Rule 70)

| Applicant's or agent's file reference | FOR FURTHER ACTION | See Notification of Transmittal of International Preliminary Examination Report (PCT/IPEA/416) | |
|---|---|---|---|
| KP/VM/2216 PCT | | | |
| International application No. | International filing date *(day/month/year)* | Priority date *(day/month/year)* | |
| PCT/GB98/00690 | 04/03/1998 | 04/03/1997 | |
| International Patent Classification (IPC) or national classification and IPC | | | |
| C12Q1/68 | | | |
| Applicant | | | |
| ISIS INNOVATION LIMITED et al. | | | |

1. This international preliminary examination report has been prepared by this International Preliminary Examining Authority and is transmitted to the applicant according to Article 36.

2. This REPORT consists of a total of 5 sheets, including this cover sheet.

   ☐ This report is also accompanied by ANNEXES, i.e., sheets of the description, claims and/or drawings which have been amended and are the basis for this report and/or sheets containing rectifications made before this Authority (see Rule 70.16 and Section 607 of the Administrative Instructions under the PCT).

   These annexes consist of a total of sheets.

3. This report contains indications relating to the following items:

   | | | |
   |---|---|---|
   | I | ☒ | Basis of the report |
   | II | ☐ | Priority |
   | III | ☐ | Non-establishment of opinion with regard to novelty, inventive step and industrial applicability |
   | IV | ☐ | Lack of unity of invention |
   | V | ☒ | Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement |
   | VI | ☐ | Certain documents cited |
   | VII | ☐ | Certain defects in the international application |
   | VIII | ☐ | Certain observations on the international application |

| Date of submission of the demand | Date of completion of this report |
|---|---|
| 17/09/1998 | 1 6. 12. 98 |
| Name and mailing address of the IPEA/ | Authorized officer |
| European Patent Office D-80298 Munich Tel. (+49-89) 2399-0, Tx: 523656 epmu d Fax: (+49-89) 2399-4465 | Goetz, M

Telephone No. (+49-89) 2399-8697 |

Form PCT/IPEA/409 (Cover sheet) (January 1994)

**INTERNATIONAL PRELIMINARY
EXAMINATION REPORT**

International application No.   PCT/GB98/00690

**I.  Basis of the report**

1.  This report has been drawn on the basis of (*substitute sheets which have been furnished to the receiving Office in response to an invitation under Article 14 are referred to in this report as "originally filed" and are not annexed to the report since they do not contain amendments.*):

**Description, pages:**

1-38                              as originally filed

**Claims, No.:**

1-26                              as originally filed

**Drawings, sheets:**

1/4-4/4                           as originally filed

2.  The amendments have resulted in the cancellation of:

☐   the description,       pages:
☐   the claims,            Nos.:
☐   the drawings,          sheets:

3.  ☐   This report has been established as if (some of) the amendments had not been made, since they have been considered to go beyond the disclosure as filed (Rule 70.2(c)):

4.  Additional observations, if necessary:



**INTERNATIONAL PRELIMINARY
EXAMINATION REPORT**

International application No. PCT/GB98/00690

**V. Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement**

1. Statement

| | | | |
|---|---|---|---|
| Novelty (N) | Yes: | Claims | 1-26 |
| | No: | Claims | |
| Inventive step (IS) | Yes: | Claims | 1-26 |
| | No: | Claims | |
| Industrial applicability (IA) | Yes: | Claims | 1-26 |
| | No: | Claims | |

2. Citations and explanations

**see separate sheet**

**INTERNATIONAL PRELIMINARY**     International application No.   PCT/GB98/00690
**EXAMINATION REPORT - SEPARATE SHEET**

### Re Item I
### Basis of the report

The examination is being carried out on the **following application documents**:

**Description, pages:**
1-38            as originally filed

**Claims, No.:**
1-26            as originally filed

**Drawings, sheets:**
1/4-4/4         as originally filed

### Re Item V
### Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement

None of the documents cited in the International Search Report either discloses or suggests the key element of the present invention, i.e. the detection of foetal nucleic acid in the serum or plasma fraction of a maternal blood sample.

While it is true that the prior art already considered the possibility of diagnosing cancer by detecting tumour specific DNA mutations in the blood plasma fraction, there is no scientifically sound reason to believe that a skilled person would have automatically carried over this prior knowledge to the situation of prenatal diagnostic markers.

The subject-matter of present claims 1 - 26, based on the said key element, therefore complies with the requirements pursuant to Art. 33(2) and (3) PCT.

**INTERNATIONAL PRELIMINARY**           International application No.   PCT/GB98/00690
**EXAMINATION REPORT - SEPARATE SHEET**

### Re Item VI
**Certain documents cited**

Certain published documents (Rule 70.10)

| Document | Publication date (day/month/year) |
|---|---|
| LO YM et al., "Presence of fetal DNA in maternal plasma and serum." LANCET 350(9076), p. 485-7 | 16/08/97 |



**PCT/GB98/00690**

### The Patent Office

The Patent Office
Concept House
Cardiff Road
Newport
South Wales
NP9 1RH

09/380696

REC'D   2 0 APR 1998
WIPO        PCT

I, the undersigned, being an officer duly authorised in accordance with Section 74(1) and (4) of the Deregulation & Contracting Out Act 1994, to sign and issue certificates on behalf of the Comptroller-General, hereby certify that annexed hereto is a true copy of the documents as originally filed in connection with the patent application identified therein.

In accordance with the Patents (Companies Re-registration) Rules 1982, if a company named in this certificate and any accompanying documents has re-registered under the Companies Act 1980 with the same name as that with which it was registered immediately before re-registration save for the substitution as, or inclusion as, the last part of the name of the words "public limited company" or their equivalents in Welsh, references to the name of the company in this certificate and any accompanying documents shall be treated as references to the name with which it is so re-registered.

In accordance with the rules, the words "public limited company" may be replaced by p.l.c., plc, P.L.C. or PLC.

Re-registration under the Companies Act does not constitute a new legal entity but merely subjects the company to certain additional company law rules.



Signed    *[signature]*

Dated     **27 MAR 1998**

An Executive Agency of the Department of Trade and Industry

**Patents Form 1/77**

s Act 1977
16)

**The Patent Office**

04MAR97 E258282-4 D00085
P01/7700 25.00

## Request for grant of a patent

*(See the notes on the back of this form. You can also ——
an explanatory leaflet from the Patent Office to be——
you fill in this form)*

THE PATENT OFFICE
-4 MAR 1997
RECEIVED BY HAND

The Patent Office

Cardiff Road
Newport
Gwent NP9 1RH

1. Your reference    KP/VM/2216

-4 MAR 1997

2. Patent application number
*(The Patent Office will fill in this part)*

**9704444.0**

3. Full name, address and postcode of the or of
each applicant *(underline all surnames)*

ISIS INNOVATION LIMITED
2 South Parks Road
OXFORD
OX1 3UB
United Kingdom

Patents ADP number *(if you know it)*

5495524471

If the applicant is a corporate body, give the
country/state of its incorporation

United Kingdom

4. Title of the invention

NON-INVASIVE PRENATAL DIAGNOSIS

5. Name of your agent *(if you have one)*

Stevens, Hewlett & Perkins
1 Serjeants' Inn
Fleet Street
London
EC4Y 1LL

"Address for service" in the United Kingdom
to which all correspondence should be sent
*(including the postcode)*

Patents ADP number *(if you know it)*

1545003

6. If you are declaring priority from one or more
earlier patent applications, give the country
and the date of filing of the or of each of these
earlier applications and *(if you know it)* the or
each application number

| Country | Priority application number *(if you know it)* | Date of filing *(day / month / year)* |
|---|---|---|
| | | |

7. If this application is divided or otherwise
derived from an earlier UK application,
give the number and the filing date of
the earlier application

| Number of earlier application | Date of filing *(day / month / year)* |
|---|---|
| | |

8. Is a statement of inventorship and of right
to grant of a patent required in support of
this request? *(Answer 'Yes' if:*
a) *any applicant named in part 3 is not an inventor, or*
b) *there is an inventor who is not named as an*
    *applicant, or*
c) *any named applicant is a corporate body.*
*See note (d))*

Yes

**Patents Form 1/77**

**Patents Form 1/77**

9. Enter the number of sheets for any of the
following items you are filing with this form.
Do not count copies of the same document

|  |  |
|---|---|
| Continuation sheets of this form | |
| Description | 10 |
| Claim(s) | 1 |
| Abstract | |
| Drawing(s) | |

10. If you are also filing any of the following,
state how many against each item.

|  |  |
|---|---|
| Priority documents | |
| Translations of priority documents | |
| Statement of inventorship and right to grant of a patent *(Patents Form 7/77)* | |
| Request for preliminary examination and search *(Patents Form 9/77)* | |
| Request for substantive examination *(Patents Form 10/77)* | |
| Any other documents *(please specify)* | |

11.                    I/We request the grant of a patent on the basis of this application.

Signature                          Date 0₄.03.97

STEVENS, HEWLETT & PERKINS       *Stevens Hewlett Perkins*

12. Name and daytime telephone number of
person to contact in the United Kingdom       0171 936 2499  Kate Privett

**Warning**

*After an application for a patent has been filed, the Comptroller of the Patent Office will consider whether publication or communication of the invention should be prohibited or restricted under Section 22 of the Patents Act 1977. You will be informed if it is necessary to prohibit or restrict your invention in this way. Furthermore, if you live in the United Kingdom, Section 23 of the Patents Act 1977 stops you from applying for a patent abroad without first getting written permission from the Patent Office unless an application has been filed at least 6 weeks beforehand in the United Kingdom for a patent for the same invention and either no direction prohibiting publication or communication has been given, or any such direction has been revoked.*

**Notes**

a)  *If you need help to fill in this form or you have any questions, please contact the Patent Office on 0645 500505.*

b)  *Write your answers in capital letters using black ink or you may type them.*

c)  *If there is not enough space for all the relevant details on any part of this form, please continue on a separate sheet of paper and write "see continuation sheet" in the relevant part(s). Any continuation sheet should be attached to this form.*

d)  *If you have answered 'Yes' Patents Form 7/77 will need to be filed.*

e)  *Once you have filled in the form you must remember to sign and date it.*

f)  *For details of the fee and ways to pay please contact the Patent Office.*

**Patents Form 1/77**

1

## NON-INVASIVE PRENATAL DIAGNOSIS

This invention relates to prenatal diagnosis using non-invasive techniques. In particular, it relates to prenatal diagnosis by

5    detecting foetal nucleic acids in serum or plasma from a maternal blood sample.

Conventional prenatal screening methods for detecting foetal abnormalities and for sex determination traditionally use foetal samples derived by invasive techniques such as amniocentesis and chorionic villus

10    sampling. These techniques require careful handling and present a degree of risk to the mother and to the pregnancy.

More recently, techniques have been devised for predicting abnormalities in the foetus and possible complications in pregnancy, which use maternal blood or serum samples. Three markers commonly used

15    include alpha-foetoprotein (AFP - of foetal origin), human chorionic gonadotrophin (hCG) and estriol, for screening for Down's Syndrome and neural tube defects. Maternal serum is also currently used for biochemical screening for chromosomal aneuploidies and neural tube defects. The passage of nucleated cells between the mother and foetus is now a well-

20    recognised phenomenon (Lo et al 1989; Lo et al 1996). The use of foetal cells in maternal blood for non-invasive prenatal diagnosis (Simpson and Elias 1993) avoids the risks associated with conventional invasive techniques. WO 91/08304 describes prenatal genetic determination using foetal DNA obtained from foetal cells in the maternal blood. Considerable

25    advances have been made in the enrichment and isolation of foetal cells for analysis (Simpson and Elias 1993; Cheung et al 1996). However, these techniques are time-consuming or require expensive equipment.

Recently, there has been interest in the use of plasma or serum-derived DNA for molecular diagnosis (Mulcahy et al 1996). In

30    particular, it has been demonstrated that tumour DNA can be detected by

2

the polymerase chain reaction (PCR) in the plasma or serum of some patients (Chen *et al* 1996; Nawroz *et al* 1996).

GB 2 299 166 describes non-invasive cancer diagnosis by detection of K-*ras* and N-*ras* gene mutations using PCR-based techniques.

5          It has now been discovered that foetal DNA is detectable in maternal serum or plasma samples. This is a surprising and unexpected finding; maternal plasma is the very material that is routinely discarded by investigators studying non-invasive prenatal diagnosis using foetal cells in maternal blood. The detection rate is much higher using serum or plasma

10    than using nucleated blood cell DNA extracted from a comparable volume of whole blood, suggesting that there is enrichment of foetal DNA in maternal plasma and serum. It is important that foetal DNA is found in maternal plasma as well as serum because this indicates that the DNA is not an artefact of the clotting process.

15          This invention provides a method of performing a prenatal diagnosis on a maternal serum or plasma sample, which method comprises detecting the presence of a nucleic acid sequence of foetal origin in the sample.

The term "prenatal diagnosis" as used herein covers

20    determination of any maternal or foetal condition or characteristic which is related to either the foetal DNA itself or to the quantity or quality of the foetal DNA in the maternal serum or plasma. Included are sex determination, and detection of foetal abnormalities which may be for example chromosomal aneuploidies or simple mutations. Also included is

25    detection and monitoring of pregnancy-associated conditions such as pre-eclampsia which may result in differing amounts of foetal DNA being present in the maternal serum or plasma. The nucleic acid detected in the method according to the invention may be of a type other than DNA e.g. mRNA.

3

The maternal serum or plasma sample is derived from the
maternal blood.  As little as 10μl of serum or plasma can be used.
However it may be preferable to employ larger samples in order to
increase accuracy.  The volume of the sample required may be dependent
5    upon the condition or characteristic being detected.  In any case, the
volume of maternal blood which needs to be taken is small.

The preparation of serum or plasma from the maternal blood
sample is carried out by standard techniques.  The serum or plasma is
normally then subjected to a nucleic acid extraction process.  Suitable
10    methods include the boiling method described herein in the examples, and
variations of that method.  Possible alternatives include the controlled
heating method described by Frickhofen and Young (1991).  Two other
suitable serum and plasma extraction methods include (i) proteinase K
treatment followed by phenol/chloroform extraction; and (ii) extraction using
15    a Qiamp Blood Kit.  It is envisaged that serum and plasma nucleic acid
extraction methods allowing the purification of DNA or RNA from a larger
volume of maternal sample than described herein in the example, will
increase the amount of foetal nucleic acid material for analysis and will
thus improve the accuracy.  A sequence-based enrichment method could
20    also be used on the maternal serum or plasma to specifically enrich for
foetal nucleic acid sequences.

An amplification of foetal DNA sequences in the sample is
normally carried out.  Standard nucleic acid amplification systems can be
used, including PCR, the ligase chain reaction, nucleic acid sequence
25    based amplification (NASBA), branched DNA methods, and so on.
Preferred amplification methods involve PCR.

The method according to the invention may be particularly
useful for sex determination which may be carried out by detecting the
presence of a Y chromosome.  It is demonstrated herein that using only
30    10μl of plasma or serum a detection rate of 80% for plasma and 70% for

4

serum can be achieved.  The use of just 1ml of maternal plasma or serum will result in a 100-fold increase in the absolute amount of foetal genetic material available for analysis.  This is expected to provide a very accurate system for detecting paternally-inherited foetal DNA sequences.

5    The method according to the invention can be applied to the detection of any paternally-inherited sequences which are not possessed by the mother.  Examples include:

a)   Foetal rhesus D status determination in rhesus negative mothers (Lo *et al* 1993).  This is possible because rhesus D positive

10   individuals possess the rhesus D gene which is absent in rhesus D negative individuals.  Therefore, the detection of rhesus D gene sequences in the plasma and serum of a rhesus D negative mother is indicative of the presence of a rhesus D positive foetus.  This approach may also be applied to the detection of foetal rhesus D

15   mRNA in maternal plasma and serum.

b)   Haemoglobinopathies (Camaschella *et al* 1990).  Over 450 different mutations in the beta-globin gene have been known to cause beta-thalassaemia.  Provided that the father and mother carry different mutations, the paternal mutation can be used as an amplification

20   target on maternal plasma and serum, so as to assess the risk that the foetus may be affected.

c)   Paternally-inherited DNA polymorphisms or mutations.  Paternally-inherited DNA polymorphisms or mutations present on either a Y or a non-Y chromosome, can be detected in maternal plasma and

25   serum to assess the risk of the foetus being affected by a particular disease by linkage analysis.  Furthermore, this type of analysis can also be used to ascertain the presence of foetal nucleic acid in a particular maternal plasma or serum sample, prior to diagnostic analysis such as sex determination.  This application will require the

30   prior genotyping of the father and mother using a panel of

5

polymorphic markers and then an allele for detection will be chosen which is present in the father, but is absent in the mother.

The plasma or serum-based non-invasive prenatal diagnosis method according to the invention can be applied to the screening of
5      Down's Syndrome and other chromosomal aneuploidies. Two possible ways in which this might be done are as follows:

a) It has been found that in pregnancy involving foetuses with chromosomal aneuploidies e.g. Down's Syndrome, the level of foetal cells circulating in maternal blood is higher than in
10      pregnancies involving normal foetuses (Bianchi et al 1996). Following the surprising discovery disclosed herein that foetal DNA is present in maternal plasma and serum, it may be expected that the level of foetal DNA in maternal plasma and serum will be higher in pregnancies where the foetus has a
15      chromosomal aneuploidy than in normal pregnancies. Quantitative detection of foetal nucleic acid in the maternal plasma or serum e.g. a quantitative PCR assay, could be used to screen pregnant women for chromosomal aneuploidies.

b) A second method involves the quantitation of foetal DNA
20      markers on different chromosomes. For example, for a foetus affected by Down's Syndrome the absolute quantity of foetal chromosomal 21-derived DNA will always be greater than that from the other chromosomes. The recent development of very accurate quantitative PCR techniques, such as real time
25      quantitative PCR (Heid et al 1996) will allow the realisation of this type of analysis.

Another potential application of the accurate quantitation of foetal nucleic acid levels in the maternal serum or plasma is in the molecular monitoring of certain placental pathologies, such as pre-

6

eclampsia.  It is likely that placental damage in pre-eclampsia may result in alterations in foetal DNA concentration in material serum and plasma.

It is anticipated that it will be possible to incorporate the nucleic acid-based diagnosis methods described herein into existing 5 prenatal screening programmes.  Sex determination has successfully been performed on pregnancies from 12 to 40 weeks of gestation.

The invention will now be illustrated in the following Example, which does not in any way limit the scope of the invention.

10

## EXAMPLE

**METHODS**

**Patients**

Pregnant women attending the Nuffield Department of 15 Obstetrics & Gynaecology, John Radcliffe Hospital, Oxford were recruited prior to amniocentesis or delivery.  Ethics approval of the project was obtained from the Central Oxfordshire Research Ethics Committee. Informed consent was sought in each case.  Five to ten ml of maternal peripheral blood was collected into an EDTA and a plain tube.  For women 20 undergoing amniocentesis, maternal blood was always collected prior to the procedure and 10 ml of amniotic fluid was also collected for foetal sex determination.  For women recruited just prior to delivery, foetal sex was noted at the time of delivery.  Control blood samples were also obtained from 10 non-pregnant female subjects and further sample processing was 25 as for specimens obtained from pregnant individuals.

**Sample preparation**

Maternal blood samples were processed between 1 to 3 hours following venesection.  Blood samples were centrifuged at 3000g and plasma and serum were carefully removed from the EDTA-containing 30 and plain tubes, respectively, and transferred into plain polypropylene

tubes.  Great care was taken to ensure that the buffy coat or the blood clot
was undisturbed when plasma or serum samples, respectively, were
removed.  Following removal of the plasma samples, the red cell pellet and
buffy coat were saved for DNA extraction using a Nucleon DNA extraction
5    kit (Scotlabs, Strathclyde, Scotland, U.K.).  The plasma and serum
samples were then subjected to a second centrifugation at 3000g and the
recentrifuged plasma and serum samples were collected into fresh
polypropylene tubes.  The samples were stored at -20°C until further
processing.
10

**DNA extraction from plasma and serum samples**

        Plasma and serum samples were processed for PCR using a
modification of the method of Emanuel and Pestka (1993).  In brief, 200 μl
15    of plasma or serum was put into a 0.5ml eppendorf tube.  The sample was
then heated at 99°C for 5 minutes on a heat block.  The heated sample
was then centrifuged at maximum speed using a microcentrifuge.  The
clear supernatant was then collected and 10 μl was used for PCR.

**DNA extraction from amniotic fluid**

20        The amniotic fluid samples were processed for PCR using
the method of Rebello *et al* (1991).  One hundred μl of amniotic fluid was
transferred into a 0.5 ml eppendorf tube and mixed with an equal volume of
10% Chelex-100 (Bio-Rad).  Following the addition of 20 μl of mineral oil to
prevent evaporation, the tube was incubated at 56°C for 30 minutes on a
25    heat block.  Then, the tube was vortexed briefly and incubated at 99°C for
20 minutes.  The treated amniotic fluid was stored at 4°C until PCR and
10 μl was used in a 100μl reaction.

**Polymerase chain reaction (PCR)**

        The polymerase chain reaction (PCR) was carried out
30    essentially as described (Saiki *et al* 1988) using reagents obtained from a

8

GeneAmp DNA Amplification Kit (Perkin Elmer, Foster City, CA, USA).
The detection of Y-specific foetal sequence from maternal plasma, serum
and cellular DNA was carried out as described using primers Y1.7 and
Y1.8, designed to amplify a single copy Y sequence (DYS14) (Lo *et al*

5   1990).  The sequence of Y1.7 is 5' CAT CCA GAG CGT CCC TGG CTT 3'
and that of Y1.8 is 5' CTT TCC ACA GCC ACA TTT GTC 3'.  The Y-
specific product was 198 bp.  Sixty cycles of Hot Start PCR using
Ampliwax technology were used on 10 µl of maternal plasma or serum or
100 ng of maternal nucleated blood cell DNA (denaturation step of 94°C 1

10  minute and a combined reannealing/extension step of 57°C 1 minute).
Forty cycles were used for amplification of amniotic fluid.  PCR products
were analysed by agarose gel electrophoresis and ethidium bromide
staining.  PCR results were scored before the foetal sex was revealed to
the investigator.

15

**Results**

Sensitivity of PCR assay

        Serial dilutions of male genomic DNA in 1 µg of female
genomic DNA were performed and amplified by the Y-PCR system using

20  60 cycles of amplification.  Positive signals were detected up to the
100,000 dilution, i.e., approximately the equivalent of a single male cell.

Amplification of foetal  DNA sequence from maternal plasma and serum

        Maternal plasma and serum samples were collected from 43
pregnant women with gestational ages from 12 to 40 weeks.  There were

25  30 male foetuses and 13 female foetuses.  Of the 30 women bearing male
foetuses, Y-positive signals were detected in 24 plasma samples and 21
serum samples, when 10 µl of the respective samples was used for PCR.
When nucleated blood cell DNA was used for Y-PCR, positive signals were
only detected in 5 of the 30 cases.  None of the 13 women bearing female

30  foetuses and none of the 10 non-pregnant female controls resulted in a

—   9

positive Y signal when either plasma, serum or cellular DNA was amplified. Accuracy of this technique, even with serum/plasma samples of only 10 µl, is thus very high and most importantly it is high enough to be useful.  It will be evident that accuracy can be improved to 100% or close to 100%, for

5   example by using a larger volume of serum or plasma.

### References

**Bianchi D W**, Williams J M, Pelletier C, Klinger K W, Shuber A P. Fetal cell

10   quantitation in maternal blood samples from normal and aneuploid pregnancies. Pediatr Res 1996; **39**: 142A.

**Camaschella C**, Alfarano A, Gottardi E, *et al*. Prenatal diagnosis of fetal hemoglobin Lepore-Boston disease on maternal peripheral blood. Blood 1990; **75**: 2102-106.

15   **Chen X Q**, Stroun M, Magnenat J-L, *et al*. Microsatellite alterations in plasma DNA of small cell lung cancer patients. Nat Med 1996; **2**: 1033-35.

**Cheung M C**, Goldberg JD, Kan YW. Prenatal diagnosis of sickle cell anemia and thalassemia by analysis of fetal cells in maternal blood. Nat Genet 1996; **14**: 264-68.

20   **Emanuel S L**, Pestka S. Amplification of specific gene products from human serum. GATA 1993; **10**: 144-46.

**Frickhofen N**. & Young N.S. A rapid method of sample preparation for detection of DNA viruses in human serum by polymerase chain reaction. J.Virological Methods 1991; **35**: 65-72.

25   **Heid C. A.**, Stevens J., Livak K.J., Williams P.M. Real time quantitative PCR.  Genome Research 1996; **6**: 986-994.

**Lo Y M D**, Patel P, Wainscoat J S, Sampietro M, Gillmer M D G, Fleming K A. Prenatal sex determination by DNA amplification from maternal peripheral blood. Lancet 1989; **2**: 1363-65.

10
—

**Lo Y M D**, Lo E S F, Watson N, *et al.* Two-way cell traffic between mother and fetus: biologic and clinical implications. Blood 1996; **88**: 4390-95.

**Lo Y M D**, Patel P, Sampietro M, Gillmer M D G, Fleming K A, Wainscoat JS. Detection of single-copy fetal DNA sequence from maternal blood.
5     Lancet 1990; **335**: 1463-64.

**Lo Y M D**, Bowell P J, Selinger M, *et al.* Prenatal determination of foetal RhD status by analysis of peripheral blood of rhesus negative mothers. Lancet 1993; **341**: 1147-48.

**Mulcahy H E**, Croke DT, Farthing M J G, Cancer and mutant DNA in blood
10    plasma. Lancet 1996; **348**: 628.

**Nawroz H**, Koch W, Anker P, Stroun M, Sidransky D. Microsatellite alterations in serum DNA of head and neck cancer patients. Nat Med 1996; **2**: 1035-37.

**Rebello M T**, Hackett G, Smith J, *et al.* Extraction of DNA from amniotic
15    fluid cells for the early prenatal diagnosis of genetic disease. Prenat Diagn 1991; **11**: 41-46.

**Saiki R K**, Gelfand D H, Stoffel S, *et al.* Primer-directed enzymatic amplification of DNA with a thermostable DNA polymerase. Science 1988; **239**: 487-91.

20    **Simpson J L**, Elias S. Isolating fetal cells from maternal blood: advances in prenatal diagnosis through molecular technology. JAMA 1993; **270**: 2357-61.

11

**CLAIMS:**

1.        A method of performing a prenatal diagnosis on a maternal serum or plasma sample, which method comprises detecting the presence of a nucleic acid sequence of foetal origin in the sample.

2.        The method according to claim 1, wherein the foetal nucleic acid sequence is amplified prior to detection.

3.        The method according to claim 2, wherein the foetal nucleic acid sequence is amplified by the polymerase chain reaction.

4.        The method according to claim 2 or claim 3, wherein at least one foetal sequence specific oligonucleotide primer is used.

5.        The method according to any one of claims 1 to 4, wherein the foetal nucleic acid sequence is from the Y chromosome.

6.        The method according to any one of claims 1 to 4, wherein the foetal nucleic acid is from a paternally-inherited non-Y chromosome.

7.        The method according to any one of claims 1 to 5, for the purpose of sex determination of the foetus.

8.        The method according to any one of claims 1 to 6, for detecting a genetic abnormality in the foetus.

9.        The method according to any one of claims 1 to 8, wherein the foetal nucleic acid sequence is DNA.

10.        The method according to any one of claims 1 to 9, wherein a nucleic acid extraction step is performed on the serum or plasma sample.

11.        The method according to claim 10, wherein the nucleic acid extraction step includes heating the serum or plasma sample.



## P. .NT COOPERATION TREATY

# PCT

## INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference | **FOR FURTHER ACTION** see Notification of Transmittal of International Search Report (Form PCT/ISA/220) as well as, where applicable, item 5 below. | | |
|---|---|---|---|
| KP/VM/2216 PCT | | | |
| International application No. | International filing date *(day/month/year)* | | (Earliest) Priority Date *(day/month/year)* |
| PCT/GB 98/ 00690 | 04/03/1998 | | 04/03/1997 |
| Applicant | | | |
| ISIS INNOVATION LIMITED et al. | | | |

This International Search Report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This International Search Report consists of a total of ___3___ sheets.

[X] It is also accompanied by a copy of each prior art document cited in this report.

1. [ ] **Certain claims were found unsearchable** (see Box I).

2. [ ] **Unity of invention is lacking** (see Box II).

3. [X] The international application contains disclosure of a **nucleotide and/or amino acid sequence listing** and the international search was carried out on the basis of the sequence listing

    [ ] filed with the international application.

    [X] furnished by the applicant separately from the international application,

        [ ] but not accompanied by a statement to the effect that it did not include matter going beyond the disclosure in the international application as filed.

    [ ] Transcribed by this Authority

4. With regard to the **title**, [X] the text is approved as submitted by the applicant

    [ ] the text has been established by this Authority to read as follows:

5. With regard to the **abstract**,

    [X] the text is approved as submitted by the applicant

    [ ] the text has been established, according to Rule 38.2(b), by this Authority as it appears in Box III. The applicant may, within one month from the date of mailing of this International Search Report, submit comments to this Authority.

6. The figure of the **drawings** to be published with the abstract is:

    Figure No. _____ [ ] as suggested by the applicant.      [X] None of the figures.

    [ ] because the applicant failed to suggest a figure.

    [ ] because this figure better characterizes the invention.

## INTERNATIONAL SEARCH REPORT

| | |
|---|---|
| Intern al Application No | |
| PCT, J 98/00690 | |

**A. CLASSIFICATION OF SUBJECT MATTER**

IPC 6   C12Q1/68   G01N33/53

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)

IPC 6   C12Q

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | WO 91 08304 A (ISIS INNOVATION) 13 June 1991 cited in the application see abstract; claims --- | 1-3,6,13 |
| A | GB 2 299 166 A (ANKER PHILIPPE ;STROUN MAURICE (CH); VASIOUKHIN VALERI (US)) 25 September 1996 cited in the application see abstract; claims --- | 1-3 |
| A | WO 95 06137 A (AUSTRALIAN RED CROSS ;QUEENSLAND INST MED RES (AU); HYLAND CATHERI) 2 March 1995 see abstract; claims --- | 1-3,10, 11 |
| | -/-- | |

[X] Further documents are listed in the continuation of box C     [X] Patent family members are listed in annex

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 3 July 1998 | 21/07/1998 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Tx 31 651 epo nl, Fax: (+31-70) 340-3016 | Ceder, O |

Form PCT/ISA/210 (second sheet) (July 1992)

2

## INTERNATIONAL SEARCH REPORT

| Intern   ıl Application No |
| --- |
| PC1, ౦ 98/00690 |

**C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category * | Citation of document, with indication,where appropriate, of the relevant passages | Relevant to claim No. |
| --- | --- | --- |
| A | FOWKE K R ET AL:  "Genetic analysis of human DNA recovered from minute amounts of serum or plasma", JOURNAL OF IMMUNOLOGICAL METHODS, vol. 180, no. 1, 13 March 1995, page 45-51 XP004021069 see abstract<br>--- | 1-3 |
| P,X | DATABASE  MEDLINE US NATIONAL LIBRARY OF MEDICINE (NLM), BETHESDA, MD, US AN (NLM) 97420079, LO YM ET AL: "Presence of fetal DNA in maternal plasma and serum." XP002070361 cited in the application see abstract & LANCET, AUG 16 1997, 350 (9076) P485-7, ENGLAND,<br>----- | 1-3,6, 13,22-26 |

## INTERNATIONAL SEARCH REPORT

Informa    i patent family members

| Intern    il Application No |
| --- |
| PCT, ᴜᴃ 98/00690 |

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
| --- | --- | --- | --- | --- | --- |
| WO 9108304 | A | 13-06-1991 | EP | 0502037 A | 09-09-1992 |
| GB 2299166 | A | 25-09-1996 | CH | 686982 A | 15-08-1996 |
| | | | AU | 1075695 A | 03-07-1995 |
| | | | WO | 9516792 A | 22-06-1995 |
| WO 9506137 | A | 02-03-1995 | AU | 7486694 A | 21-03-1995 |

**09/380696**

**514 Rec'd. CT/PTO 0 3 SEP 1999**

**Express Mail Label No.: EL375088070US**

**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

```
-----------------------------------------------------X
In the PATENT APPLICATION of:                        :
                                                     :
                    Lo et al.                        :
                                                     :      Our File:  SHP-PT048
Application No.:    Not Yet Known                     :
                                                     :      Date:  September 2, 1999
Filed:             Not Yet Known                     :
                                                     :
For:        NON-INVASIVE                             :
            PRENATAL DIAGNOSIS                        :
                                                     :
Group:             Not Yet Known                     :
                                                     :
Examiner:          Not Yet Known                     :
-----------------------------------------------------X
```

### COMMUNICATION UNDER RULE 37 C.F.R. § 1.53(b)

Box PCT
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

The purpose of this Communication is to advise the Office that the above-identified application is being filed pursuant to 37 C.F.R. § 1.53(b) with an unsigned Declaration and Power of Attorney.  It is respectfully requested that the application be granted a filing date of even date with this Communication.

Respectfully submitted,

Lo et al.

By _____
C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/tc
Enclosures

09/380696

51...ec'd PCT/PTO    03 SEP 1999

Express Mail Label No. EL375088070US

**PATENT**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In the **PATENT APPLICATION** of: | | |
|---|---|---|
| | Lo et al. | Our File: SHP-PT048 |
| **Application No.:** | Not Yet Known | Date: September 3, 1999 |
| **Filed:** | Not Yet Known | |
| For: | NON-INVASIVE PRENATAL DIAGNOSIS | |
| Group: | Not Yet Known | |
| Examiner: | Not Yet Known | |

**CERTIFICATE OF MAILING**
**BY EXPRESS MAIL ACCOMPANYING PATENT APPLICATION**

Box PCT
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

I hereby certify that the accompanying correspondence is being deposited with the "Express Mail Post Office to Addressee" service of the United States Postal Service in an envelope addressed to Box PCT, Assistant Commissioner for Patents, Washington, D.C. 20231 on September 3, 1999. The number of the "Express Mail" mailing label EL375088070US has been placed on the accompanying correspondence prior to mailing. It is therefore respectfully requested that this correspondence be considered as having been filed in the Office on the date shown above in accordance with the provisions of 37 C.F.R. § 1.10.

Respectfully submitted,

9/3/99

Date

Anthony Pentasuglio

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 568-6400

**410 Rec'd PT/PTO  0 3 SEP 1999**

Express Mail Label No.:  EL375088070US

| FORM PTO-1390<br>(REV 11-98)<br>TRANSMITTAL LETTER TO THE UNITED STATES<br>DESIGNATED/ELECTED OFFICE (DO/EO/US)<br>CONCERNING A FILING UNDER 35 U.S.C. 371 | ATTORNEY'S DOCKET NUMBER<br>**SHP-PT048** |
|---|---|
| U.S DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | U.S. APPLICATION NO. (if known - see 37 CFR 1.5)<br>**09/380696**<br>Not Yet Known |

| INTERNATIONAL APPLICATION NO.<br>PCT/GB98/00690 | INTERNATIONAL FILING DATE<br>4 March 1998 | PRIORITY DATE CLAIMED<br>4 March 1997 |
|---|---|---|

| TITLE OF INVENTION | NON-INVASIVE PRENATAL DIAGNOSIS |
|---|---|

| APPLICANT(S) FOR DO/EO/US  Lo et al. |
|---|

Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information:

1.  [X]  This is a **FIRST** submission of items concerning a filing under 35 U.S.C. 371.

2.  [ ]  This is a **SECOND** or **SUBSEQUENT** submission of items concerning a filing under 35 U.S.C. 371.

3.  [ ]  This express request to begin national examination procedures (35 U.S.C. 371(f)) at any time rather than delay examination until the expiration of the applicable time limit set in 35 U.S.C. 371(b) and PCT Articles 22 and 39(1).

4.  [X]  A proper Demand for International Preliminary Examination was made by the 19th month from the earliest claimed priority date.

5.  [X]  A copy of the International Application as filed (35 U.S.C. 371(c)(2))

    a.  [X]  is transmitted herewith (required only if not transmitted by the International Bureau).

    b.  [X]  has been transmitted by the International Bureau.

    c.  [ ]  is not required, as the application was filed in the United States Receiving Office (RO/US).

6.  [ ]  A translation of the International Application into English (35 U.S.C. 371(c)(2)).

7.  [ ]  Amendments to the claims of the International Application under PCT Article 19 (35 U.S.C. 371(c)(3))

    a.  [ ]  are transmitted herewith (required only if not transmitted by the International Bureau).

    b.  [ ]  have been transmitted by the International Bureau.

    c.  [ ]  have not been made; however, the time limit for making such amendments has NOT expired.

    d.  [ ]  have not been made and will not be made.

8.  [ ]  A translation of the amendments to the claims under PCT Article 19 (35 U.S.C. 371(c)(3)).

9.  [X]  An unsigned oath or declaration of the inventor(s) (35 U.S.C. 371(c)(4)).

10.  [ ]  A translation of the annexes to the International Preliminary Examination Report under PCT Article 36 (35 U.S.C. 371(c)(5)).

**Items 11. to 16. below concern document(s) or information included:**

11.  [X]  An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

12.  [ ]  An assignment document for recording.  A separate cover sheet in compliance with 37 CFR 3.28 and 3.31 is included.

13.  [X]  A FIRST preliminary amendment.

    [ ]  A SECOND or SUBSEQUENT preliminary amendment.

14.  [ ]  A substitute specification.

15.  [ ]  A change of power of attorney and/or address letter.

16.  [X]  Other items or information:
Communication Under Rule 37 C.F.R. Section 1.53(b);
International Search Report (included with International Publication);
International Preliminary Examination Report; and
Certificate of Mailing by Express Mail.

514 Rec'd PCT/PTO 0 3 SEP 1999

| U.S. APPLICATION NO. (if known) (see 37 CFR 1.5) 09/529,696 | INTERNATIONAL APPLICATION NO. PCT/GB98/00690 | ATTORNEY'S DOCKET NUMBER SHP-PT048 |
|---|---|---|

17. [X]  The following fees are submitted:

**BASIC NATIONAL FEE ( 37 CFR 1.492 (a) (1) - (5) ) :**

Neither international preliminary examination fee (37 CFR 1.482)
nor international search fee (37 CFR 1.445(a)(2)) paid to USPTO
and International Search Report not prepared by the EPO or JPO ········· $970.00

International preliminary examination fee (37 CFR 1.482) not paid to
USPTO but International Search Report prepared by the EPO or JPO ······· $840.00

International preliminary examination fee (37 CFR 1.482) not paid to USPTO but
international search fee (37 CFR 1.445(a)(2)) paid to USPTO ·········· $760.00

International preliminary examination fee paid to USPTO (37 CFR 1.482)
but all claims did not satisfy provisions of PCT Article 33(1)-(4)·········· $670.00

International preliminary examination fee paid to USPTO (37 CFR 1.482)
and all claims satisfied provisions of PCT Article 33(1)-(4)················ $96.00

| | CALCULATIONS | PTO USE ONLY |
|---|---|---|
| **ENTER APPROPRIATE BASIC FEE AMOUNT  =** | $   840.00 | |
| Surcharge of **$130.00** for furnishing the oath or declaration later than [ ] 20  [ ] 30 months from the earliest claimed priority date (37 CFR 1.492(e)). | $ | |

| CLAIMS | NUMBER FILED | NUMBER EXTRA | RATE | | |
|---|---|---|---|---|---|
| Total claims | 26  - 20 = | 6 | X $18.00 | $   108.00 | |
| Independent claims | 3  - 3 = | 0 | X $78.00 | $ | |
| MULTIPLE DEPENDENT CLAIM(S) (if applicable) | | | + $260.00 | $ | |

| | | |
|---|---|---|
| **TOTAL OF ABOVE CALCULATIONS  =** | $   948.00 | |
| Reduction of 1/2 for filing by small entity, if applicable. A Small Entity Statement must also be filed (Note 37 CFR 1.9, 1.27, 1.28). | $ | |
| **SUBTOTAL  =** | $   948.00 | |
| Processing fee of **$130.00** for furnishing the English translation later than [ ] 20  [ ] 30 months from the earliest claimed priority date (37 CFR 1.492(f)).          + | | |
| **TOTAL NATIONAL FEE  =** | $   948.00 | |
| Fee for recording the enclosed assignment (37 CFR 3.28, 3.31). The assignment must be accompanied by an appropriate cover sheet (37 CFR 3.28, 3.31).  **$40.00** per property    + | | |
| **TOTAL FEES ENCLOSED  =** | $   948.00 | |
| | Amount to be: refunded | $ |
| | charged | $ |

a. [ ]   A check in the amount of  $_____  to cover the above fees is enclosed.

b. [X]   Please charge my Deposit Account No. ____22-0493____ in the amount of $__948.00__ to cover the above fees.
A duplicate copy of this sheet is enclosed.

c. [X]   The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any
overpayment to Deposit Account No. ___22-0493___.  A duplicate copy of this sheet is enclosed.

Our order no. is  683

NOTE:  Where an appropriate time limit under 37 CFR 1.494 or 1.495 has not been met, a petition to revive (37 CFR
1.137(a) or (b)) must be filed and granted to restore the application to pending status.

SEND ALL CORRESPONDENCE TO

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

SIGNATURE

C. Frederick Koenig III, Esquire

NAME

29,662

REGISTRATION NUMBER

09/380696



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: ASSISTANT COMMISSIONER FOR PATENTS
Box PCT
Washington, D.C. 20231

| 09/380,696 | LO | Y | SHP-PT048 |
|---|---|---|---|
| U.S. APPLICATION NO | | FIRST NAMED APPLICANT | ATTY DOCKET NO |

5071

VOLPE AND KOENIG
400 ONE PENN CENTER
1617 JOHN F KENNEDY BOULEVARD
PHILADELPHIA PA 19103

| INTERNATIONAL APPLICATION NO. | PCT/GB98/01690 |
|---|---|
| 03/04/98 | 03/04/97 |

10/28/99

DATE MAILED.

## NOTIFICATION OF MISSING REQUIREMENTS UNDER 35 U.S.C. 371 IN THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US)

1. The following items have been submitted by the applicant or the IB to the United States Patent and Trademark Office as ☐ a Designated Office (37 CFR 1.494),
   ☒ an Elected Office (37 CFR 1.495):
   ☒ U.S. Basic National Fee.
   ☒ Copy of the international application in:
     ☐ a non-English language.
     ☒ English.
   ☐ Translation of the international application into English.
   ☐ Oath or Declaration of inventors(s) for DO/EO/US.
   ☐ Copy of Article 19 amendments.
   ☐ Translation of Article 19 amendments into English.
   ☒ The International Preliminary Examination Report in English and its Annexes, if any.
   ☐ Translation of Annexes to the International Preliminary Examination Report into English.
   ☒ Preliminary amendment(s) filed 0 3 SEP 1999 and _____.
   ☒ Information Disclosure Statement(s) filed 0 3 SEP 1999 and _____.
   ☒ Assignment document.
   ☐ Power of Attorney and/or Change of Address.
   ☐ Substitute specification filed _____.
   ☐ Statement Claiming Small Entity Status.
   ☒ Priority Document.
   ☒ Copy of the International Search Report ☒ and copies of the references cited therein.
   ☐ Other:

2. The following items MUST be furnished within the period set forth below in order to complete the requirements for acceptance under 35 U.S.C. 371:
   ☐ a. Translation of the application into English. Note a processing fee will be required if submitted later than the appropriate 20 or 30 months from the priority date.
     ☐ The current translation is defective for the reasons indicated on the attached Notice of Defective Translation.
   ☐ b. Processing fee for providing the translation of the application and/or the Annexes later that the appropriate 20 or 30 months from the priority date (37 CFR 1.492(f)).
   ☒ c. Oath or declaration of the inventors, in compliance with 37 CFR 1.497(a) and (b), identifying the application by the International application number and international filing date.
     ☐ The current oath or declaration does not comply with 37 CFR 1.497(a) and (b) for the reasons indicated on the attached PCT/DO/EO/917.
   ☒ d. Surcharge for providing the oath or declaration later that the appropriate 20 or 30 months from the priority date (37 CFR 1.492(e)).

3. Additional claim fees of $_____ as a ☐ large entity ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due (37 CFR 1.492(g)). See attached PTO-875.

**ALL OF THE ITEMS SET FORTH IN 2(a)-2(d) AND 3 ABOVE MUST BE SUBMITTED WITHIN ONE MONTH FROM THE DATE OF THIS NOTICE OR BY ☐ 21 OR ☒ 31 MONTHS FROM THE PRIORITY DATE FOR THE APPLICATION, WHICHEVER IS LATER. FAILURE TO PROPERLY RESPOND WILL RESULT IN ABANDONMENT.**

The time period set above may be extended by filing a petition and fee for extension of time under the provisions of 37 CFR 1.136(a).

4. Translation of the Annexes MUST be submitted no later that the time period set above or the annexes will be cancelled. Note processing fee will be required if submitted later than 30 months from the priority date.

5. ☐ The Article 19 amendments are cancelled since a translation was not provided by the appropriate 20 (37 CFR 1.494(d)) or 30 (37 CFR 1.495(d)) months from the priority date.

Applicant is reminded that any communication to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U.S. application no. shown above. (37 CFR 1.5)

## *A copy of this notice MUST be returned with this response.*

Enclosed: ☐ PCT/DO/EO/917     ☐ Notice of Defective Translation
          ☐ PTO-875

FORM PCT/DO/EO/905 (December 1997)                    Telephone: (703)

PTO/PCT Rec'd 2 9 NOV 1999                            PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In the **PATENT APPLICATION** of: | | |
|---|---|---|
| | Lo et al. | Our File: SHP-PT048 |
| **Application No.:** | 09/380,696 | Date:  November 23, 1999 |
| **Filed:** | Not Yet Known | |
| For:   NON-INVASIVE PRENATAL DIAGNOSIS | | |
| Group: | Not Yet Known | |
| Examiner: | Not Yet Known | |

## COMMUNICATION IN RESPONSE TO NOTIFICATION OF MISSING REQUIREMENTS UNDER 35 U.S.C. 371 IN THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US)

Box PCT
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

In response to the Notification of Missing Requirements Under 35 U.S.C. 371 in the United States Designated/Elected Office (DO/EO/US) dated October 28, 1999, enclosed herewith are the following:

1.     Copy of the Notification of Missing Requirements Under 35 U.S.C. 371 in the United States Designated/Elected Office (DO/EO/US);

2.     A fully executed Declaration and Power of Attorney for Patent Application; and

3.     A check in the amount of $65 as payment of the surcharge for a small entity.

**Applicant:** Lo et al.
**Application No.:** 09/380,696

Small entity verification has been submitted in conjunction with a Request for Refund filed November 2, 1999.

In the event that any additional fees are required with respect to this Communication, or in the event of an overpayment, please charge such additional fees or credit such overpayments to the Deposit Account of the undersigned, No. 22-0493, under our Order No. 1353. Two copies of this Communication are enclosed.

In accordance with the above, applicant awaits receipt of the Notification of Acceptance in this matter.

                    Respectfully submitted,

                    Lo et al.

                    By_____
                    C. Frederick Koenig III, Esquire
                    Registration No. 29,662
                    (215) 568-6400

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/ras
Enclosures (5)

-2-

Please type a plus sign (+) inside this box → [+]

PTO/SB/01 (12-97)
Approved for use through 9/30/00. OMB 0651-0032
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (37 CFR 1.63) | Attorney Docket Number | SHP-PT048 |
|---|---|---|
| | First Named Inventor | Lo et al. |
| | *COMPLETE IF KNOWN* | |
| | Application Number | 09/380,696 |
| | Int'l. Filing Date | March 4, 1998 |
| ☐ Declaration Submitted with Initial Filing   OR   ☒ Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16 (e)) required) | Group Art Unit | Not Yet Known |
| | Examiner Name | Not Yet Known |

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### NON-INVASIVE PRENATAL DIAGNOSIS

the specification of which                      *(Title of the Invention)*
☐ is attached hereto
OR
☒ was filed on (MM/DD/YYYY)   03/04/1998   as United States Application Number or PCT International

Application Number [ PCT/GB98/00690 ] and was amended on (MM/DD/YYYY) [ 09/03/99 ] (if applicable).
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56.

I hereby claim foreign priority benefits under 35 U.S.C. 119(a)-(d) or 365(b) of any foreign application(s) for patent or inventor's certificate, or 365(a) of any PCT international application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or of any PCT international application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Not Claimed | Certified Copy Attached? YES | NO |
|---|---|---|---|---|---|
| 9704444.0 | Great Britian | 03/04/1997 | ☐ ☐ ☐ ☐ | ☐ ☐ ☐ ☐ | ☒ ☐ ☐ ☐ |

☐ Additional foreign application numbers are listed on a supplemental priority data sheet PTO/SB/02B attached hereto.

I hereby claim the benefit under 35 U.S.C. 119(e) of any United States provisional application(s) listed below.

| Application Number(s) | Filing Date (MM/DD/YYYY) | |
|---|---|---|
| | | ☐ Additional provisional application numbers are listed on a supplemental priority data sheet PTO/SB/02B attached hereto. |

[Page 1 of 2]
Burden Hour Statement: This form is estimated to take 0.4 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

09/380696 s 112999

PTO/SB/01 (12-97)
Approved for use through 9/30/00. OMB 0651-0032
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Please type a plus sign (+) inside this box → ☐ +

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# DECLARATION — Utility or Design Patent Application

I hereby claim the benefit under 35 U.S.C. 120 of any United States application(s), or 365(c) of any PCT international application designating the United States of America, listed below, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT international application in the manner provided by the first paragraph of 35 U.S.C. 112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application.

| U.S. Parent Application or PCT Parent Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|
| PCT/GB98/00690 | 03/04/1998 | |

☐ Additional U.S. or PCT International application numbers are listed on a supplemental priority data sheet PTO/SB/02B attached hereto.

As a named inventor, I hereby appoint the following registered practitioner(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith: ☐ Customer Number
OR
☒ Registered practitioner(s) name/registration number listed below

Place Customer Number Bar Code Label here

| Name | Registration Number | Name | Registration Number |
|---|---|---|---|
| Alfred Stapler | 18,875 | Glenn M. Massina | 40,081 |
| Anthony S. Volpe | 26,377 | Marilou E. Watson | 42,343 |
| C. Frederick Koenig III | 29,882 | Jeffrey M. Glabicki | 42,584 |
| Gerald B. Halt, Jr. | 37,633 | | |

☐ Additional registered practitioner(s) named on supplemental Registered Practitioner Information sheet PTO/SB/02C attached hereto.

Direct all correspondence to: ☐ Customer Number or Bar Code Label [____] OR ☒ Correspondence address below

| Name | C. Frederick Koenig III, Esquire VOLPE and KOENIG, P.C. | | | | |
|---|---|---|---|---|---|
| Address | 400 One Penn Center | | | | |
| Address | 1617 John F. Kennedy Blvd. | | | | |
| City | Philadelphia | State | PA | ZIP | 19103 |
| Country | U.S.A. | Telephone | (215) 568-6400 | Fax | (215) 568-6499 |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Name of Sole or First Inventor: | ☐ A petition has been filed for this unsigned inventor |
|---|---|

| Given Name (first and middle (if any)) | Family Name or Surname |
|---|---|
| Yuk-Ming Dennis | Lo |

| Inventor's Signature | | | | | Date | 23 Nov |
|---|---|---|---|---|---|---|
| Residence: City | Homantin, Kowloon | State | Hong Kong | Country | China | Citizenship | British |
| Post Office Address | Department of Chemical Pathology | | | | | |
| Post Office Address | The Chinese University of Hong Kong, Prince of Wales Hospital | | | | | |
| City | Shatin, New Ter. | State | Hong Kong | ZIP | Country | China |

☒ Additional inventors are being named on the _1_ supplemental Additional Inventor(s) sheet(s) PTO/SB/02A attached hereto

[Page 2 of 2]

0938696 * 112999

Please type a plus sign (+) inside this box → [ + ]

PTO/SB/02A (3-97)
Approved for use through 9/30/98.  OMB 0651-0032
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| DECLARATION | ADDITIONAL INVENTOR(S) Supplemental Sheet Page _1_ of _1_ |
|---|---|

| Name of Additional Joint Inventor, if any: | ☐ A petition has been filed for this unsigned inventor |
|---|---|
| Given Name (first and middle [if any]) | Family Name or Surname |
| James Stephen | Wainscoat |

| Inventor's Signature | *Wainscoat* | Date 23/11/99 |
|---|---|---|
| Residence: City Oxford *GBX* | State | Country United Kingdom | Citizenship British |
| Post Office Address 14 Woodlands Close | | | |
| Post Office Address | | | |
| City Oxford | State | ZIP OX3 7RY | Country United Kingdom |

| Name of Additional Joint Inventor, if any: | ☐ A petition has been filed for this unsigned inventor |
|---|---|
| Given Name (first and middle [if any]) | Family Name or Surname |

| Inventor's Signature | | Date |
|---|---|---|
| Residence: City | State | Country | Citizenship |
| Post Office Address | | | |
| Post Office Address | | | |
| City | State | ZIP | Country |

| Name of Additional Joint Inventor, if any: | ☐ A petition has been filed for this unsigned inventor |
|---|---|
| Given Name (first and middle [if any]) | Family Name or Surname |

| Inventor's Signature | | Date |
|---|---|---|
| Residence: City | State | Country | Citizenship |
| Post Office Address | | | |
| Post Office Address | | | |
| City | State | ZIP | Country |

Burden Hour Statement: This form is estimated to take 0.4 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

09380699 . 1112999

# File History Report

☐    Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history.  No additional information is available.

☒    The following page(s) **Copy of Notification of missing Requirements** of paper number _____ is/are missing from the United States Patent and Trademark Office's original copy of the file history.  No additional information is available

Additional comments: _____

520 Rec'd PCT/PTO   2 9 NOV 1999

Please type a plus sign (+) inside this box → [+]

PTO/SB/21 (6-98)
Approved for use through 09/30/2000. OMB 0651-0031
Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| **Application Number** | 09/380,696 |
| **Filing Date** | Not Yet Known |
| **First Named Inventor** | Lo et al. |
| **Group Art Unit** | Not Yet Known |
| **Examiner Name** | Not Yet Known |

| Total Number of Pages in This Submission | 8 | Attorney Docket Number | SHP-PT048 |
|---|---|---|---|

## ENCLOSURES   *(check all that apply)*

| | | |
|---|---|---|
| [X] Fee Transmittal Form | [ ] Assignment Papers *(for an Application)* | [ ] After Allowance Communication to Group |
| [X] Fee Attached | [ ] Drawing(s) | [ ] Appeal Communication to Board of Appeals and Interferences |
| [ ] Amendment / Response | [ ] Licensing-related Papers | [ ] Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)* |
| [ ] After Final | [ ] Petition Routing Slip (PTO/SB/69) and Accompanying Petition | [ ] Proprietary Information |
| [ ] Affidavit(s)/Declaration(s) | [ ] Petition to Convert to a Provisional Application | [ ] Status Letter |
| [ ] Extension of Time Request | [ ] Power of Attorney, Revocation Change of Correspondence Address | [X] Additional Enclosure(s) *(please identify below)* |
| [ ] Express Abandonment Request | [ ] Terminal Disclaimer | Copy of Notification of Missing Requirements; and Fully Executed Declaration for Patent Application. |
| [ ] Information Disclosure Statement | [ ] Small Entity Statement | |
| [ ] Certified Copy of Priority Document(s) | [ ] Request for Refund | |
| [X] Response to Missing Parts/ Incomplete Application | Remarks | |
| [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53 | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | C. Frederick Koenig III, Esquire            Reg. No.  29,662 |
|---|---|
| | VOLPE and KOENIG, P.C. |
| Signature | *[signature]* |
| Date | 11/23/99 |

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Box PCT, Assistant Commissioner for Patents, Washington, D.C. 20231 on this date:   | November 23, 1999 |

| Typed or printed name | C. Frederick Koenig III, Esquire |
|---|---|
| Signature | *[signature]*   | Date | 11/23/99 |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be send to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS  SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PTO/PCT Rec'd 2 9 NOV 1999

61/380696

Volpe and Koenig, P.C. Revision of PTO/SB/17 (12-98)
Approved for use through 09/30/2000. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 1999

Patent fees are subject to annual revision.
Small Entity payments must be supported by a small entity statement, otherwise large entity fees must be paid. See Forms PTO/SB/09-12.

| | Complete if Known |
|---|---|
| Application Number | 09/380,696 |
| Filing Date | Not Yet Known |
| First Named Inventor | Lo et al. |
| Examiner Name | Not Yet Known |
| Group / Art Unit | Not Yet Known |
| Attorney Docket No. | SHP-PT048 |

| TOTAL AMOUNT OF PAYMENT | $65 |
|---|---|

## METHOD OF PAYMENT (check one)

1. The Commissioner is hereby authorized to:
☐ charge the fees indicated hereon

Deposit Account Number: 22-0493

Deposit Account Name: VOLPE and KOENIG, P.C.

☒ Charge Any Deficiency or Credit Any Overpayment in the Total Fees Associated with this Communication    Our Order No. 1353

2. ☒ Payment Enclosed:
☒ Check   ☐ Money Order   ☐ Other

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 101 | 760 | 201 | 380 | Utility filing fee | |
| 106 | 310 | 206 | 155 | Design filing fee | |
| 107 | 480 | 207 | 240 | Plant filing fee | |
| 108 | 760 | 208 | 380 | Reissue filing fee | |
| 114 | 150 | 214 | 75 | Provisional filing fee | |

SUBTOTAL (1)

### 2. EXTRA CLAIM FEES

| | Extra Claims | | Fee from below | Fee Paid |
|---|---|---|---|---|
| Total Claims | | - **= | X | |
| Independent Claims | | - **= | X | |
| Multiple Dependent | | | | |

*or number previously paid, if greater; For Reissues, see below

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 103 | 18 | 203 | 9 | Claims in excess of 20 |
| 102 | 78 | 202 | 39 | Independent claims in excess of 3 |
| 104 | 260 | 204 | 130 | Multiple dependent claim, if not paid |
| 109 | 78 | 209 | 39 | ** Reissue independent claims over original patent |
| 110 | 18 | 210 | 9 | **Reissue claims in excess of 20 and over original patent |

SUBTOTAL (2)

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 105 | 130 | 205 | 65 | Surcharge - late filing fee or oath | $65 |
| 127 | 50 | 227 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 139 | 130 | 139 | 130 | Non-English specification | |
| 147 | 2,520 | 147 | 2,520 | For filing a request for reexamination | |
| 112 | 920* | 112 | 920* | Requesting publication of SIR prior to Examiner action | |
| 113 | 1,840* | 113 | 1,840* | Requesting publication of SIR after Examiner action | |
| 115 | 110 | 215 | 55 | Extension for reply within first month | |
| 116 | 380 | 216 | 190 | Extension for reply within second month | |
| 117 | 870 | 217 | 435 | Extension for reply within third month | |
| 118 | 1,360 | 218 | 680 | Extension for reply within fourth month | |
| 128 | 1,850 | 228 | 925 | Extension for reply within fifth month | |
| 119 | 300 | 219 | 150 | Notice of Appeal | |
| 120 | 300 | 220 | 150 | Filing a brief in support of an appeal | |
| 121 | 260 | 221 | 130 | Request for oral hearing | |
| 138 | 1,510 | 138 | 1,510 | Petition to institute a public use proceeding | |
| 140 | 110 | 240 | 55 | Petition to revive - unavoidable | |
| 141 | 1,210 | 241 | 605 | Petition to revive - unintentional | |
| 142 | 1,210 | 242 | 605 | Utility issue fee (or reissue) | |
| 143 | 430 | 243 | 215 | Design issue fee | |
| 144 | 580 | 244 | 290 | Plant issue fee | |
| 122 | 130 | 122 | 130 | Petitions to the Commissioner | |
| 123 | 50 | 123 | 50 | Petitions related to provisional applications | |
| 126 | 240 | 126 | 240 | Submission of Information Disclosure Stmt | |
| 581 | 40 | 581 | 40 | Recording each patent assignment per property (times number of properties) | |
| 146 | 760 | 246 | 380 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 149 | 760 | 249 | 380 | For each additional invention to be examined (37 CFR 1.129(b)) | |

Other fee (specify) _____

Other fee (specify) _____

* Reduced by Basic Filing Fee Paid

| SUBTOTAL (3) | $65 |
|---|---|

## SUBMITTED BY

| | | Complete (if applicable) |
|---|---|---|
| Typed or Printed Name | C. Frederick Koenig III, Esquire | Reg. Number  29,662 |
| Signature | | Deposit Account User ID  22-0493  VOLPE and KOENIG, P.C. |
| | Date 11/23/99 | |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

Adjustment date:
12/02/1999 PVOLPE 00000001 093806696
01 FC:254    -65.00 OP

12/02/1999 PVOLPE 00000001 09380696
01 FC:254

12/20/1999 PVOLPE 00000375 09380696
01 FC:254    65.00 CH
02 FC:056    65.00 OP

09/380696



**UNITED STATES DEP. /MENT OF COMMERCE**
Patent and Trademark Office
Address. ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C 20231

| U.S. APPLICATION NO 598 | LO | FIRST NAMED APPLICANT | ATTY DOCKET NO PT048 |

VOLPE AND KOENIG              5071
400 ONE PENN CENTER
1617 JOHN F KENNEDY BOULEVARD
PHILADELPHIA PA 19103

INTERNATIONAL APPLICATION NO
PCT/GB98/00690

| I.A. FILING DATE | PRIORITY DATE |
| 03/04/98 | 03/04/97 |

12/20/99

DATE MAILED

## NOTIFICATION OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C. 371
## AND 37 CFR 1.494 OR 1.495

1. The applicant is hereby advised that the United States Patent and Trademark Office in its capacity as ☐ a Designated Office (37 CFR 1.494), ☒ an Elected Office (37 CFR 1.495), has determined that the above identified international application has met the requirements of 35 U.S.C. 371, and is **ACCEPTED** for national patentability examination in the United States Patent and Trademark Office.

2. The United States Application Number assigned to the application is shown above and the relevant dates are:

| **2 9 NOV 1999** | **2 9 NOV 1999** |
| 35 U.S.C. 102(e) DATE | DATE OF RECEIPT OF 35 U.S.C. 371 REQUIREMENTS |

A Filing Receipt (PTO-103X) will be issued for the present application in due course. **THE DATE APPEARING ON THE FILING RECEIPT AS THE "FILING DATE" IS THE DATE ON WHICH THE LAST OF THE 35 U.S.C. 371(C) REQUIREMENTS HAS BEEN RECEIVED IN THE OFFICE. THIS DATE IS SHOWN ABOVE.** *The filing date of the above identified application is the international filing date of the international application (Article 11(3) and 35 U.S.C. 363).* Once the Filing Receipt has been received, send all correspondence to the Group Art Unit designated thereon.

3. ☐ A request for immediate examination under 35 U.S.C. 371(f) was received on _____ and the application will be examined in turn.

4. The following items have been received:
   ☒ U.S. Basic National Fee.
   ☒ Copy of the international application in:
      ☐ a non-English language.
      ☒ English.
   ☐ Translation of the international application into English.
   ☒ Oath or Declaration of inventors(s) for DO/EO/US.
   ☒ Copy of Article 19 amendments. ☐ Translation of Article 19 amendments into English.
      The Article 19 amendments ☐ have ☐ have not been entered.
   ☒ The International Preliminary Examination Report in English and its Annexes, if any.
   ☒ Copy of the Annexes to the International Preliminary Examination Report (IPER).
      ☐ Translation of Annexes to the IPER into English.
      The Annexes ☐ have ☐ have not been entered.
   ☒ Preliminary amendment(s) filed **0 3 SEP 1999** and _____.
   ☒ Information Disclosure Statement(s) filed **0 3 SEP 1999** and _____.
   ☒ Assignment document.
   ☐ Power of Attorney and/or Change of Address.
   ☐ Substitute specification filed _____.
   ☐ Statement Claiming Small Entity Status.
   ☒ Priority Document
   ☒ Copy of the International Search Report ☒ and copies of the references cited therein.
   ☐ Other:

Applicant is reminded that any communication to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U S application no shown above (37 CFR 1 5)

Vonda Wallace
PCT Legal Administration
Telephone (703) 305-3116

FORM PCT/DO/EO/903 (December 1997)

# ')/ EO WORKSHEET

U.S. Appl. No. 09/380690      International Appl. No. GB98/00690

Application filed by : ☐ 20 months ☒ 30 months

## WIPO PUBLICATION INFORMATION

Publication No.: WO98/39474    Publication Language : English     Screening Done by : V,W

Publication Date : 11 SEPT 98     Not Published :   ☐ U.S. only designated
                                              ☐ EP request

## INTERNATIONAL APPLICATION PAPERS IN THE APPLICATION FILE :

☒ International Application *(RECORD COPY)*      ☐ International Appl. on Double Sided Paper *(COPIES MADE.*

☒ Article 19 Amendments                     ☐ Request form PCT/RO/101

☒ PCT/IB/331                                   ☐ PCT/ISA/210 - Search Report

☒ PCT/IPEA/409 IPER (PCT/IPEA/416 on front)      ☐ Search Report References

☐ Annexes to 409                         ☐ Other : _____

☒ Priority Document (s) No. _1_

## RECEIPTS FROM THE APPLICANT *(other than checked above)* :

☒ Baisc National Fee *(paid or authorized to charge)*      ☒ Preliminary Amendment(s) Filed on :

    ☒ Description                           ☒ Information Disclosure Statement(s) Filed on :

    ☒ Claims

    ☐ Words in the Drawing Figure(s)          ☐ Assignment Document

    ☐ Article 19 Amendments              ☐ Power of Attorney/ Change of Address

    ☐ Annexes to 409                       ☐ Substitute Specification Filed on :
        ☐ entered    ☐ not entered

                                        ☐ Verified Small Status Claim

☐ Oath/ Declaration (executed)              *(if submitted after Receipt Date - Is it timely ? Y/N)*

☐ DNA Diskette                                ☐ Other : _____

NOTES : *11 SEPT IB FROM IB*
*PAPR COPY double SIDED*

| | |
|---|---|
| 35 U.S.C. 371 - Receipt of Request (PTO-1390) | 03 SEP 1999 |
| Date Acceptable Oath/ Declaration Received | 29 NOV 1999 |
| Date Complete 35 U.S.C. 371 | 29 NOV 1999 |
| 102(e) Date | 29 NOV 1999 |
| Date of Completion of DO/ EO 906 - Notification of Missing 102(e) Requirements | |
| Date of Completion of DO/ EO 907 - Notification of Acceptance for 102(e) Date | |
| Date of Completion of DO/ EO 911 - Application Accepted Under 35 U.S.C. 111 | |
| Date of Completion of DO/ EO 905 - Notification of Missing Requirements | 11/81/99 |
| Date of Completion of DO/ EO 916 - Notification of Defective Response | |
| Date of Completion of DO/ EO 903 - Notification of Acceptance | 12/15/99 |
| Date of Completion of DO/ EO 909 - Notification of Abandonment | |

DO/EO BIBLIOGRAPHIC DATA ENTRY

| | | |
|---|---|---|
| SERIAL NUMBER:    09 / 380696 | RECEIPT DATE:      09 / 03 / 99 |
| IA NUMBER:  PCT/  GB98 /  00690 | IA FILING DATE:    03 / 04 / 98 |
| FAMILY NAME:      LO | DELAY WAIVED (Y/N):           N |
| GIVEN NAME:      YUK-MING DENNIS | DEMAND RECEIVED (Y/N):        Y |
| PRIORITY CLAIMED (Y/N):     Y | PRIORITY DATE:     03 / 04 / 97 |
| NO BASIC FEE (Y/N):      N | US DESIGNATED ONLY (Y/N):     N |
| ATTORNEY DOCKET NUMBER:    SHP~PT048 | COUNTRY:          GBX |
| CORRESPONDENCE NAME/ADDRESS:  CUSTOMER NUMBER: | TELEPHONE |
| | FAX |

NAME:    VOLPE AND KOENIG

STREET:   400 ONE PENN CENTER
          1617 JOHN F KENNEDY BOULEVARD
CITY:      PHILADELPHIA
STATE/COUNTRY:  PA     ZIP:  19103
MAIL:
APPLICATION TITLES:
   NON-INVASIVE PRENATAL DIAGNOSIS

TAB TO LAST POSITION,PUSH SEND

09/380696

514 Rec'r 'CT/PTO  0 3 SEP 1999
Express Mail Labe._ _..:  EL375088070US
PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

--------------------------------------------------------X

In the **PATENT APPLICATION** of:           :
                                            :
                    Lo et al.               :
                                            :           Our File:  SHP-PT048
**Application No.**:   Not Yet Known          :
                                            :           Date:  September 3, 1999
**Filed:**            Not Yet Known           :
                                            :
For:          NON-INVASIVE                  :
              PRENATAL DIAGNOSIS            :
                                            :
Group:        Not Yet Known                 :
                                            :
Examiner:     Not Yet Known                 :
--------------------------------------------------------X

### PRELIMINARY AMENDMENT

Box PCT
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

        Prior to examination and before the calculation of the filing fee, please amend the

application as follows:

### IN THE CLAIMS

        Please amend the claims as follows:

        3    (Amended)    The method according to claim 1 [or claim 3], wherein at least

one foetal sequence specific oligonucleotide primer is used in the amplification.


        4    (Amended)    The method according to [any one of claims 1 to 4] claim 1

wherein the foetal nucleic acid is detected by means of a sequence specific probe.

44

**Applicants:**  Lo et al.
**Application No.:**  Not Yet Known

Early consideration and allowance of this application are respectfully requested.

Respectfully submitted,

Lo et al.

By_____
C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/tc
Enclosures

-2-

Applicant: Lo et al.
Application No.: Not Yet Known

16
17. (Amended)   The method according to [any one of claims 14 to 16] claim 13, wherein the pattern of variation of foetal DNA concentration in the maternal serum or plasma at particular stages of gestation is different from normal.

17
18. (Amended)   The method according to [claim 16 or claim 17] claim 13, for detection of pre-eclampsia.

18
19. (Amended)   The method according to [claim 16 or claim 17] claim 13, for detection of a foetal chromosomal aneuploidy.

19
20. (Amended)   The method according to [any one of claims 1 to 19] claim 1, wherein the sample contains foetal DNA at a fractional concentration of total DNA of at least about 0.14%, without subjecting it to a foetal DNA enrichment step.

21
22. (Amended)   A method of performing a prenatal diagnosis, which method comprises the steps of:

(i)     providing a maternal blood sample;

(ii)    separating the sample into a cellular and a non-cellular fraction;

(iii)   detecting the presence of a nucleic acid of foetal origin in the non-cellular fraction according to the method of [any one of claims 1 to 21] claim 1.

-3-

**Applicant**: Lo et al.
**Application No.**: Not Yet Known

(iv)   providing a diagnosis based on the presence and/or quantity
and/or sequence of the foetal nucleic acid.

## REMARKS

This Preliminary Amendment amends the claims as set forth in the PCT application,

filed on March 4, 1998 to delete reference to multiple dependant claims.

Early consideration and allowance of claims 1-26 are respectfully requested.

Respectfully submitted,

Lo et al.

By

C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/tc

-4-

09/380696

514 Rec'd PC. TO 0 3 SEP 1999
Express Mail Label .o.: EL375088070US

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

```
---------------------------------------------------------X
In the PATENT APPLICATION of:                     :
                                                  :
                    Lo et al.                     :
                                                  :        Our File:  SHP-PT048
Application No.:    Not Yet Known                  :
                                                  :        Date:  September 2, 1999
Filed:             Not Yet Known                  :
                                                  :
For:        NON-INVASIVE                          :
            PRENATAL DIAGNOSIS                     :
                                                  :
Group:             Not Yet Known                  :
                                                  :
Examiner:          Not Yet Known                  :
---------------------------------------------------------X
```

## INFORMATION DISCLOSURE STATEMENT

Box PCT
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Further to Applicants' duty of disclosure pursuant to 37 C.F.R. § 1.56, Applicants

wish to bring to the Examiner's attention the material cited on the enclosed form PTO-1449.

It is respectfully requested that the Examiner initial the form PTO-1449 upon consideration

of the cited references and return an initialed copy with the next correspondence.

The references listed on the enclosed form PTO-1449 were cited in the International

Search Report dated July 3, 1998.  A copy of the Search Report showing the relevancy of

each cited reference is also enclosed.

Ei ∻ Rec'\  T/PTO  0 3 SEP 1999

Express Mail Label No.: EL375088070US

| FORM PTO-1449<br><br>U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE<br><br>INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT<br><br>(Use several sheets if necessary) | ATTY. DOCKET NO.<br>SHP-PT048 | SERIAL NO.<br>Not Yet Known 09/383.696 |
|---|---|---|
| | APPLICANT<br>Lo et al. | |
| | FILING DATE<br>Not Yet Known | GROUP<br>Not Yet Known |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | | | | | | | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

## FOREIGN PATENT DOCUMENTS

| EXAMINER | | DOCUMENT NUMBER | | | | | | | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ✗ | AA | 9 | 1 | 0 | 8 | 3 | 0 | 4 | 06/91 | PCT | C12Q | 1/68 | | |
| ✗ | AB | 9 | 5 | 0 | 6 | 1 | 3 | 7 | 03/95 | PCT | C12Q | 1/68 | | |
| ✗ | AC | 2 | 2 | 9 | 9 | 1 | 6 | 6 | 09/96 | GB | C12Q | 1/68 | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| ✗ | AD | Journal of Immunological Methods; Vol. 180, No. 1; Fowke et al.; "Genetic Analysis Of Human DNA Recovered From Minute Amounts Of Serum Or Plasma"; March 1995; pp 45-51; XP004021069 |
| ✗ | AE | Database Medline; US National Library of Medicine (NLM); Bethesda, MD, US; Lo et al.; "Presence Of Fetal DNA In Maternal Plasma And Serum"; AN (NLM) 97420079; XP002070361; See also Lancet, August 1997; 350 (9076) pp 485-487, England |
| ✗ | AF | Tsitologia; Vol. 37, No. 3; Kazakov et al.; "Extracellular DNA In The Blood Of Pregnant Women"; 1995; Institute of Cytology, Russian Academy Of Sciences, and Medical Academy Of Post Graduate Education, St. Petersburg; pp 1-8 |

| EXAMINER   *Jeanine Enwold* | DATE CONSIDERED   *March 10, 2000.* |
|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*# 9*

| | |
|---|---|
| In the **PATENT APPLICATION** of: | |
| | Lo et al. |
| **Application No.:** | 09/380,696 |
| **Filed:** | September 3, 1999 |
| **For:** | NON-INVASIVE PRENATAL DIAGNOSIS |
| **Group:** | Not Yet Known |
| **Examiner:** | Not Yet Known |

Our File: SHP-PT048

Date:  November 2, 1999

### REFUND REQUEST

Box 17
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Pursuant to 37 C.F.R. § 1.28(a) a refund of Four Hundred Seventy Four Dollars ($474) for the filing fee is respectfully requested.  Enclosed herewith is a Declaration Supporting Claim for Small Entity Status By Small Business Concern.

This Refund Request is timely, being made prior to the first business day of the two month anniversary of the filing date on which the full filing was paid, 37 C.F.R. § 1.7.

**Applicant:** Lo et al.
**Application No.:**  09/380,696

Please credit the refund to Deposit Account No. 22-0493 under our Order No. 725.

Two copies of this communication are enclosed.

Respectfully submitted,

Lo et al.

By_____
C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

VOLPE and KOENIG, P.C.
400 One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/ras
Enclosures

-2-

March 6, 2000



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
United States Receiving Office
United States International Searching Authority
United States International Preliminary Examining
Authority
United States Designated Office
United States Elected Office

Address: Commissioner of Patents and Trademarks
Box PCT
Washington, D.C. 20231

C Frederick Koenig
Volpe and Koenig
400 One Penn Center
1617 John F Kennedy Boulevard
Philadelphia PA  19103


Dear Sir:


We regret to inform you that your request for refund dated
11/08/99 in the amount of $474.00 covering a fee for application serial
number 09380696 cannot be authorized. Please refer to the box checked
below.

(X)   Small entity status fee not refundable. The time has
      expired for refund of this fee. A refund based on establishment of
      small entity status may only be obtained if a verified statement
      under 37 CFR 1.27 and a request for refund of the excess amount
      are filed within two months of timely payment of the full fee (37
      CFR 1.28).


( )   Application or petition fee not refundable.. Money paid by actual
      mistake or in excess, such as payment not required by law, will be
      refunded; but a mere change of purpose after payment of money, as
      when a party desires to withdraw an application, an appeal or a
      request for oral hearing does not entitle the party to a refund
      37 CFR 1.26). If any application is filed without the
      specification or drawing and the omission is not corrected within
      the period set, the application will be returned or otherwise
      disposed of. The fee, if submitted should include the $_____
      handling fee (37 CFR 1.53).



( )   No refund is due. The charge of $ 260.00, is correct as filed for
      multiple dependent claims. PCT DO/EO does not use the substitute
      specification to change claims.


      Any further questions concerning this refund, should be directed
      To PCT Tamala Holland at 703-305-5483.


Sincerely,

Catherine Short
National Stage Supervisor



**UNITED STAT[ DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 09/380,696 | 11/29/99 | LO | Y      SHP-PT048 |

HM22/0418

C FREDERICK KOENIG III
VOLPE & KOENIG
400 ONE PENN CENTER
1617 JOHN F KENNEDY BOULEVARD
PHILADELPHIA PA 19103

| EXAMINER |
|---|
| ENEWOLD, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1655 | 9 |

**DATE MAILED:** 04/18/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| ***Office Action Summary*** | 09/380,696 | LO ET AL. |  |
|  | Examiner | Art Unit |  |
|  | Jeanine A Enewold | 1655 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

1)☒   Responsive to communication(s) filed on *November 29,1999, November 8, 1999* .

2a)☐ This action is FINAL.         2b)☒   This action is non-final.

3)☐   Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒   Claim(s) *1-26* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐   Claim(s) _____ is/are allowed.

6)☐   Claim(s) *1-26* is/are rejected.

7)☐   Claim(s) _____ is/are objected to.

8)☐   Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐   The specification is objected to by the Examiner.

10)☐   The drawing(s) filed on _____ is/are objected to by the Examiner.

11)☐   The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved.

12)☐   The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13)☒   ·Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a)☐ All  b)☐ Some * c)☐ None of the CERTIFIED copies of the priority documents have been:

        1.☐ received.

        2.☐ received in Application No. (Series Code / Serial Number) _____ .

        3.☐ received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐   Acknowledgement is made of a claim for domestic priority under 35 U.S.C. & 119(e).

**Attachment(s)**

14) ☒ Notice of References Cited (PTO-892)

15) ☒ Notice of Draftsperson's Patent Drawing Review (PTO-948)

16) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) *6* .

17) ☐ Interview Summary (PTO-413) Paper No(s). _____ .

18) ☐ Notice of Informal Patent Application (PTO-152)

19) ☐ Other: .

Application/Control Number: 09/380,696                                    Page 2

Art Unit: 1655

## DETAILED ACTION

### *Priority*

1.      This application is a 371 of GB98/00690, filed March 4, 1998.  This application also
claims priority to GB9704444, filed March 4, 1997.  However, claims 7-8, 17, 20-21, and 24
are not supported by GB9704444.  Claims 7-8 are not supported by the GB9704444
document because although the document discloses sex determination and other
polymorphisms which are present in the father, but not the mother, the disclosure does not
describe either detecting DYS14 locus nor the SRY gene.  Claim 17 is directed to
variations of fetal DNA concentrations over the different stages of gestation, however, no
mention of this difference was disclosed in the Great Britain document.  Claims 20-21 are
directed to specific concentrations of fetal DNA, which were not disclosed in the foreign
priority document.  Although the document discloses that "another potential application is
the quantification of fetal nucleic acid in maternal serum or plasma", no specifics were
provided (pg. 5).  Finally, Claim 24 is not supported by the foreign document because no
mention of clotting to extract serum and plasma is provided.  Therefore, Claims 7-8, 17,
20-21, and 24 receive benefit of the GB98/00690 application filed March 4, 1999.

### *Drawings*

2.      The drawings are objected by the draftsman (see PTO 948).

Application/Control Number: 09/380,696                                    Page 3

Art Unit: 1655

### Specification

3.      This application does not contain an abstract of the disclosure as required by 37

CFR 1.72(b).  An abstract on a separate sheet is required.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of
making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art
to which it pertains, or with which it is most nearly connected, to make and use the same and shall set
forth the best mode contemplated by the inventor of carrying out his invention.

4.      Claims 1-5, 9-11 are rejected under 35 U.S.C. 112, first paragraph, as containing

subject matter which was not described in the specification in such a way as to reasonably

convey to one skilled in the relevant art that the inventor(s), at the time the application was

filed, had possession of the claimed invention.

The essential limitations of the claimed invention are directed to a method for

detecting the presence of fetal DNA in maternal plasma in paternally-inherited non-Y

sequences.

The specification teaches the detection of one paternally-inherited non-Y sequence,

Rh-D gene.  The specification teaches Rh-D genotyping from plasma from RhD negative

pregnant women (pg. 20).

The art describes the detection of an expanded CGT trinucleotide repeats, in the

DM kinase gene on chromosome 19, in the range of 50-4000 repeats in maternal serum of

a pregnant women (Amicucci et al, February 2000, Clinical Chemistry, Vol 46, No. 2,

Application/Control Number: 09/380,696                                    Page 4

Art Unit: 1655

pages 301-302).  Amicucci teaches sampling of plasma from pregnant women at 10 weeks

of gestation to detect the expanded repeat present only in the father.

There is not adequate description for detection of the large genus of paternally-

inherited non-Y sequences.  The specification and the art only disclose two species within

the scope of the genus: paternally inherited non-Y sequences.  The general knowledge in

the art concerning paternally inherited non-Y sequences does not provide any indication of

how to detect any paternally inherited non-Y sequences based upon the teaches of two

paternally inherited non-Y sequences. The two gene described are not representative of

the genus of paternally inherited non-Y sequences.  There is substantial variability among

the species of nucleic acids encompassed in the scope of the claim because detection of

paternally inherited non-Y sequences may include the detection of huge repeat

expansions, like in the DM kinase gene, single gene mutations, deletions, and

translocations.  The specification has also not defined a structural feature for the detection

of the paternally inherited non-Y sequences  which would be common to all members of

the genus that constitutes a substantial portion of the genus.  Therefore, one of skill in the

art would conclude that applicant was not in possession of the claimed detection of fetal

DNA from a paternally inherited non-Y sequences because the description of only two

members of this genus is not representative of the variable species within the genus and is

insufficient to support the claims.  Thus, the specification does not adequately provide a

written description for a method for detecting paternally-inherited non-Y sequences.

Application/Control Number: 09/380,696                                    Page 5

Art Unit: 1655


### Claim Rejections - 35 USC § 112

      The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

5.     Claims 1-26 are rejected under 35 U.S.C. 112, first paragraph, because the specification, while being enabling for a method for detecting the presence of paternally inherited fetal DNA in maternal plasma after 15 weeks of gestation wherein the fetal DNA is from the Y chromosome and for detecting the presence of the RhD gene in maternal plasma from an RhD negative pregnant women after 15 weeks gestation, does not reasonably provide enablement for a detection method performed on serum or plasma for detecting fetal nucleic acid in general at any time during pregnancy or associated with desiease phenotype in serum. The specification does not enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to us the invention commensurate in scope with these claims.

      The claims are broadly drawn to a detection method performed on serum or plasma of a pregnant woman to detect any fetal DNA at any point in pregnancy.

      The specification teaches fetal DNA has been detected in both serum and plasma. Table 2 and 3 show the quantification of fetal DNA in maternal serum and plasma in relation to the gestational age (pg. 33). The specifications teaches the detection of the Y-chromosome by markers to DYS14 locus and SRY gene. The specification teaches that plasma and serum samples were collected from 43 pregnant women with gestational ages

Application/Control Number: 09/380,696                                    Page 6

Art Unit: 1655

from 12 to 40 weeks (pg. 9, para. 1).  Of the 30 male fetuses, detection of a Y-positive

signal occurred in 24 plasma samples and only 21 serum samples (pg. 9,para. 1).  The

specification also teaches a RhD status determination from plasma of RhD-negative

pregnant women (pg. 15 and Table 1, pg. 20).

   The art teaches unpredictability in detecting fetal DNA in plasma before the 15th

week of gestation, of detecting paternally inherited non-Y sequences, and the

unpredictability of detecting fetal DNA in serum samples.  Specifically, Lo et al (New

England J. of Med. , Vol 339, No. 24, pages 1734-8, December 1998) teaches reliable

results for fetal RhD status determination were obtainable from the 15th week of gestation

and beyond in RhD negative women.  Lo teaches that 7 of 9 fetus were positive on PCR

testing for RhD genotyping (Table 1, pg. 1736).  Lo teaches that two women with gestation

ages of eight and nine weeks yielded false negative results (pg. 1735, col. 2, para. 6).  Lo

explicitly states "our data suggests that results of the RhD PCR test are reliable beginning

in the second trimester" (pg. 1736, col. 2, para. 2).  Additionally, Lo (Annals of Medicine,

Vol. 31, NO. 5, pg. 308-312, Oct 1999) teaches "it is likely that future improvements in

technology may allow more accurate diagnosis to be made and potentially extend the

applicability of this method to the first trimester of pregnancy" (pg. 310, col. 2, para. 1)

suggesting that the technology does not currently exist and may not have been conceived

of as of yet what would be required to diagnose in the first trimester.

   Moreover, the art teaches the detection of fetal DNA in maternal plasma for an

expanded CGT trinucleotide repeats, in the DM kinase gene on chromosome 19, in the

range of 50-4000 repeats (Amicucci et al, February 2000, Clinical Chemistry, Vol. 46, No.

2, pages 301-302). Amicucci teaches sampling of plasma from pregnant women at 10

weeks of gestation to detect the expanded repeat present only in the father. Amicucci

states "at present, this test seems appropriate only for monitoring paternally inherited

expanded alleles" (pg. 302, para. 2). Additionally, Lo (Annals of Medicine, Vol 31, NO. 5,

pg. 308-312, Oct 1999) states "the success of the detection of fetal-derived RhD gene in

the plasma and serum of pregnant women opens up the possibility that a similar approach

may be used for other single-gene disorders" (pg. 310, col. 2, para. 3). However, Lo has

not taught single gene disorders other than RhD which may in fact use this technique.

Furthermore, the RhD analysis was only shown to be succesful on RhD-negative women.

The language of the paper is that of suggestion, and hypothesis rather than of evidence

that this method works for these suggested single-gene disorders.

Furthermore, Lo (Annals of Medicine, Vol 31, NO. 5, pg. 308-312, Oct 1999)

teaches increase amount of maternal DNA have been found in serum when compared with

plasma (pg. 310, col. 1, para. 3). Further, the results "indicated that a higher maternal

background is present when serum is used which may be detrimental for the detection of

fetal DNA, especially when less sensitive detection methods are used"(pg. 310, col. 1,

para. 3). Bianchi (Am. J. Hum. Genetics, Vol. 62, pg. 763-764, April 1998) teaches that

the fractional concentration of fetal nucleic acid in serum was significantly less because of

the increased amount of total DNA in serum (pg. 763, col. 1, para. 3). Bianchi moreover

teaches that these results validate the results of Lo which showed that fetal DNA would be

Application/Control Number: 09/380,696                                Page 8

Art Unit: 1655

reliably detected in as little of 10 microliters of maternal plasma.  Furthermore, Bianchi

states that "although fetal aneuploidy might be suggested by increased amounts of fetal

DNA present in maternal plasma, cytogenetic confirmation using intact nuclei will ultimately

be necessary (pg. 764, col. 1, para. 3).  Bischoff et al (J. of the Society for Gynecologic

Investigation, Vol. 6, No. 2, pages 64-69, Mar-April 1999) teaches detection of RhD in

serum.  However, Bischoff teaches that "our less than 100% detection efficiency probably

reflects serum DNA purity, variable fetal DNA concentration in maternal serum, and DNA

degradation caused by freezing and thawing of the serum samples" (pg. 67, col. 1).

    Neither the specification nor the art provide guidance to overcome the

unpredictability of detecting fetal DNA in plasma before the 15th week of gestation, of

detecting paternally inherited non-Y sequences, and the unpredictability of detecting fetal

DNA in serum samples.  It would require undue experimentation for the ordinary artisan to

practice the invention as broadly as claimed.  The concentration of fetal DNA in maternal

plasma at early stages of gestation appears to be low.  Thus predictably detecting fetal

DNA in maternal plasma samples before the 15th week of gestation is unpredictable and

would require the ordinary artisan to enrich the fetal DNA in some manner which have not

been described.  In addition clinical studies would be required to determine the level of

sensitivity of detection of paternally inherited sequences.   Since, Amicucci explicitly states

in his work as of February 2000, "at present, this test seems appropriate only for

monitoring paternally inherited expanded alleles" (pg. 302, para. 2), it appears the

sensitivity of the method can only detect huge expansions. Thus, detection of all paternally

Application/Control Number: 09/380,696                                    Page 9

Art Unit: 1655

inherited non-Y sequences would be unpredictable. While, the detection of paternally

inherited non-Y sequences includes huge expansions, detection of single gene mutations

which differed from mother to father, translocations, deletions would be unpredictable.

Finally, the detection of fetal DNA in serum appears unpredictable based upon the

teachings by Lo that the results "indicated that a higher maternal background is present

when serum is used which may be detrimental for the detection of fetal DNA, especially

when less sensitive detection methods are used"(pg. 310, col. 1, para. 3). Thus, the above

analsysi demonstrates that the skilled artisan would be required to perform undue

experimentation to make and use the invention as claimed.


### Claim Rejections - 35 USC § 112

The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming
> the subject matter which the applicant regards as his invention.

6.      Claims 10 and 11 rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

A) Claims 10 and 11 are indefinite over the recitation "such as", the phrase "such

as" renders the claim indefinite because it is unclear whether the limitations following the

phrase are part of the claimed invention. See MPEP § 2173.05(d).

Application/Control Number: 09/380,696                                    Page 10

Art Unit: 1655

### *Claim Rejections - 35 USC § 102*

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

7.     Claims 7 and 17 are rejected under 35 U.S.C. 102(a) as being anticipated by Lo

(Lancet, August 1997).

     It is noted that the authorship of the Lo et al. reference is distinct from the

inventorship of the instant application and that this rejection may be overcome by the filing

of a 132 Katz-type declaration.  This rejection applies to the claims because as discussed

previously these claims do not have foreign priority to the March 4, 1997 British patent

application.

     Lo et al. (herein referred to as Lo) teaches the detection of fetal DNA in maternal

plasma and serum (abstract).  Lo further teaches the detection of DYS14 from the Y

chromosome (pg. 486, col. 1, para. 2)(limitations of Claim 7).  Lo teaches that fetal DNA

increases as gestation progresses (pg. 487, col. 1, para. 3)(limitations of Claim 17).

### *Conclusion*

8.     Any inquiry concerning this communication or earlier communications from the
examiner should be directed to examiner Jeanine Enewold whose telephone number is
(703) 306-5817. The examiner can normally be reached Monday-Thursday from 7:00AM to
4:30 PM.
     If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Gary Jones, can be reached on (703) 308-1152.  The fax number for this
Group is (703) 305- 3014.

Application/Control Number: 09/380,696                                    Page 11

Art Unit: 1655


      Any inquiry of a general nature should be directed to the Group receptionist whose telephone number is (703) 308-0196.

Jeanine Enewold
April 12, 2000

LISA B. ARTHUR
PRIMARY EXAMINER
GROUP 1800 1600

| *Notice of References Cited* | Application/Control No. 09/380,696 | Applicant(s)/Patent Under Reexamination LO ET AL. | |
|---|---|---|---|
| | Examiner Jeanine A Enewold | Art Unit 1655 | Page 1 of 2 |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|
| ☐ | A | | | | | | ☐ | ☐ |
| ☐ | B | | | | | | ☐ | ☐ |
| ☐ | C | | | | | | ☐ | ☐ |
| ☐ | D | | | | | | ☐ | ☐ |
| ☐ | E | | | | | | ☐ | ☐ |
| ☐ | F | | | | | | ☐ | ☐ |
| ☐ | G | | | | | | ☐ | ☐ |
| ☐ | H | | | | | | ☐ | ☐ |
| ☐ | I | | | | | | ☐ | ☐ |
| ☐ | J | | | | | | ☐ | ☐ |
| ☐ | K | | | | | | ☐ | ☐ |
| ☐ | L | | | | | | ☐ | ☐ |
| ☐ | M | | | | | | ☐ | ☐ |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | N | | | | | | | ☐ | ☐ |
| ☐ | O | | | | | | | ☐ | ☐ |
| ☐ | P | | | | | | | ☐ | ☐ |
| ☐ | Q | | | | | | | ☐ | ☐ |
| ☐ | R | | | | | | | ☐ | ☐ |
| ☐ | S | | | | | | | ☐ | ☐ |
| ☐ | T | | | | | | | ☐ | ☐ |

### NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title Date, Source, and Pertinent Pages) | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|
| ☐ | U | Lo et al "Presence of fetal DNA in maternal plasma and serum" Lancet, Vol 350, pages 485-487, August 1997. | ☐ | ☐ |
| ☐ | V | Lo "Fetal RhD genotyping from maternal plasma" Annals of Medicine, Vol 31, No. 5, pages 308-3012, Oct 1999. | ☐ | ☐ |
| ☐ | W | Bianchi "Fetal DNA in Maternal Plasma: The plot thickens and the placental barrier thins" Am. J. Hum. Genet. Vol 62, pages 763-764, April 1998. | ☐ | ☐ |
| ☐ | X | Lo et al "Prenatal Diagnosis of Fetal RhD status by molecular analysis of maternal plasma" New England J. of Med. Vol 339, No. 24, pages 1734-1738, Dec 1998. | ☐ | ☐ |

*A copy of this reference is not being furnished with this Office action. (See Manual of Patent Examining Procedure, Section 707.05(a) )
**APS encompasses any electronic search i.e. text, image, and Commercial Databases.
U S  Patent and Trademark Office

| | | | | | | | DOCUMENT SOURCE ** | |
|---|---|---|---|---|---|---|---|---|

<table>
<tr><td colspan="2"></td><td><strong>Notice of References Cited</strong></td><td colspan="2"><strong>Application/Control No.</strong><br>09/380,696</td><td colspan="3"><strong>Applicant(s)/Patent Under Reexamination</strong><br>LO ET AL.</td></tr>
<tr><td colspan="2"></td><td></td><td colspan="2"><strong>Examiner</strong><br>Jeanine A Enewold</td><td colspan="2"><strong>Art Unit</strong><br>1655</td><td><strong>Page 2 of 2</strong></td></tr>
</table>

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|
| ☐ | A | | | | | | ☐ | ☐ |
| ☐ | B | | | | | | ☐ | ☐ |
| ☐ | C | | | | | | ☐ | ☐ |
| ☐ | D | | | | | | ☐ | ☐ |
| ☐ | E | | | | | | ☐ | ☐ |
| ☐ | F | | | | | | ☐ | ☐ |
| ☐ | G | | | | | | ☐ | ☐ |
| ☐ | H | | | | | | ☐ | ☐ |
| ☐ | I | | | | | | ☐ | ☐ |
| ☐ | J | | | | | | ☐ | ☐ |
| ☐ | K | | | | | | ☐ | ☐ |
| ☐ | L | | | | | | ☐ | ☐ |
| ☐ | M | | | | | | ☐ | ☐ |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | N | | | | | | | ☐ | ☐ |
| ☐ | O | | | | | | | ☐ | ☐ |
| ☐ | P | | | | | | | ☐ | ☐ |
| ☐ | Q | | | | | | | ☐ | ☐ |
| ☐ | R | | | | | | | ☐ | ☐ |
| ☐ | S | | | | | | | ☐ | ☐ |
| ☐ | T | | | | | | | ☐ | ☐ |

## NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title Date, Source, and Pertinent Pages) | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|
| ☐ | U | Anucucci et al "Prenatl diagnosis of Myotonic Dystrophy using fetal DNA obtained from maternal plasma" Clinical Chemistry, VOl 46, No. 2, pages 301-302, February 2000. | ☐ | ☐ |
| ☐ | V | Bischoff et al "Noninvasive Determination of Fetal RhD status using fetal DNA in Maternal Serum and PCR" J. of the Society for gynecologic investigation, Vol 6, NO. 2, apges 64-69, Mar-April 2000. | ☐ | ☐ |
| ☐ | W | | ☐ | ☐ |
| ☐ | X | | ☐ | ☐ |

*A copy of this reference is not being furnished with this Office action. (See Manual of Patent Examining Procedure, Section 707.05(a) )
**APS encompasses any electronic search i.e. text, image, and Commercial Databases
U S Patent and Trademark Office

PTO-892 (Rev. 03-98)   **Notice of References Cited**   Part of Paper No. 9

Form PTO 948 (Rev. 8-98)     U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office     Application No. *9/380,696*

# NOTICE OF DRAFTSPERSON'S
## PATENT DRAWING REVIEW

The drawing(s) filed (insert date) *11·29·99* are:
A. ☐ Approved by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ☑ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 for the reasons indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawing must be sumitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   ____ Color drawings are not acceptable until petiton is granted.
   Fig(s) _____
   ____ Pencil and non black ink not permitted. Fig(s) _____
2. PHOTOGRAPHS. 37 CFR 1.84 (b)
   ____ 1 full-tone set is required. Fig(s) _____
   ____ Photographs not properly mounted (must use brystol board or photographic double-weight paper). Fig(s) _____
   ____ Poor quality (half-tone). Fig(s) _____
3. TYPE OF PAPER. 37 CFR 1.84(e)
   ____ Paper not flexible, strong, white, and durable.
   Fig(s) _____
   ____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not accepted. Fig(s) _____
   ____ Mylar, velum paper is not acceptable (too thin).
   Fig(s) _____
4. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
   ____ 21.0 cm by 29.7 cm (DIN size A4)
   ____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   ____ All drawing sheets not the same size.
   Sheet(s) _____
   ____ Drawings sheets not an acceptable size. Fig(s) _____
5. MARGINS. 37 CFR 1.84(g): Acceptable margins:

   Top 2.5 cm  Left 2.5cm  Right 1.5 cm  Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm  Left 2.5 cm  Right 1.5 cm  Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   Margins not acceptable. Fig(s) _____
   _____ Top (T)     _____ Left (L)
   _____ Right (R)     _____ Bottom (B)
6. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   Partial views. 37 CFR 1.84(h)(2)
   ____ Brackets needed to show figure as one entity.
   Fig(s) _____
   ✓ Views not labeled separately or properly.
   Fig(s) _____
   ____ Enlarged view not labeled separetely or properly.
   Fig(s) _____
7. SECTIONAL VIEWS. 37 CFR 1.84 (h)(3)
   ____ Hatching not indicated for sectional portions of an object.
   Fig(s) _____
   ____ Sectional designation should be noted with Arabic or Roman numbers. Fig(s) _____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   ____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s) _____
9. SCALE. 37 CFR 1.84(k)
   ____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig(s) _____
10. CHARACTER OF LINES, NUMBERS, & LETTERS.
   37 CFR 1.84(l)
   ____ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (poor line quality).
   Fig(s) _____
11. SHADING. 37 CFR 1.84(m)
   ____ Solid black areas pale. Fig(s) _____
   ____ Solid black shading not permitted. Fig(s) _____
   ____ Shade lines, pale, rough and blurred. Fig(s) _____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
   37 CFR 1.84(p)
   ____ Numbers and reference characters not plain and legible.
   Fig(s) _____
   ____ Figure legends are poor. Fig(s) _____
   ____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(1)
   Fig(s) _____
   ____ English alphabet not used. 37 CFR 1.84(p)(2)
   Figs _____
   ____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3)
   Fig(s) _____
13. LEAD LINES. 37 CFR 1.84(q)
   ____ Lead lines cross each other. Fig(s) _____
   ____ Lead lines missing. Fig(s) _____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
   ____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Sheet(s) _____
15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
   ____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s) _____
16. CORRECTIONS. 37 CFR 1.84(w)
   ____ Corrections not made from prior PTO-948 dated _____
17. DESIGN DRAWINGS. 37 CFR 1.152
   ____ Surface shading shown not appropriate. Fig(s) _____
   ____ Solid black shading not used for color contrast.
   Fig(s) _____

COMMENTS

REVIEWER *JC*     DATE *1-3·00*     TELEPHONE NO. *703 305 8420*

ATTACHMENT TO PAPER NO. *9*

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the **PATENT APPLICATION** of:

Lo et al.

| | | |
|---|---|---|
| **Application No.:** | 09/380,696 | Our File: SHP-PT048 |
| **Filed:** | November 29, 1999 | Date:  September 15, 2000 |

For: NON-INVASIVE PRENATAL DIAGNOSIS

| | |
|---|---|
| Group: | 1655 |
| Examiner: | J. Enewold |

## REPLY PURSUANT TO 37 C.F.R. § 1.111

Commissioner for Patents
Washington, D.C.  20231

Sir:

This Reply is responsive to the Examiner's Action dated April 18, 2000.  The Applicants respectfully request that the Application be amended as follows:

### IN THE ABSTRACT

Please delete the abstract from the face sheet of the PCT published application and substitute therefor the ABSTRACT submitted herewith on a separate sheet.

### IN THE DRAWINGS

A proposed revision to separately identify the individual graphs of Figure 4 as indicated in red on the attached sheet is submitted herewith.

09/25/2000 NPRASASD 00000103 09380696
02 FC:103                    18.00 OP

Applicant: Lo et al.
Application No.: 09/380,696

## IN THE SPECIFICATION

On page 8, line 14, please delete "Figure 4 shows" and insert -- Figures 4a-4l

show --.

On page 29, line 2, please delete "fig. 4" and insert -- Figures 4a-4l --.

On page 31, line 14, please delete "fig. 4" and insert -- Figures 4a-4l --.

On page 34, line 19, please delete "Figure 4" and insert -- Figures 4a-4l --.

## IN THE CLAIMS

Please amend the following claims:

9 10. (Amended)  The method according to claim 8 wherein the non-Y sequence is

a blood group antigen gene [such as the Rhesus D gene].

10 11. (Amended)  The method according to claim 8 wherein the non-Y sequence is

a gene which confers a disease phenotype in the foetus [, such as the Rhesus D gene].

Please add the following new claims:

26 27.  The method according to claim 10 wherein the blood group antigen gene is

the rhesus D gene.



-2-

**Applicant:** Lo et al.
**Application No.:** 09/380,696

2̶8̶. 27 The method according to claim 1̶1̶ 10, wherein the gene is the rhesus D gene.--

## REMARKS

The drawings have been objected to because the views of Figure 4 were not labeled separately. Approval of the proposed drawing changes as indicated on the attached sheet is requested. No new matter has been added.

Applicants have amended the specification to conform with the drawing amendment. An abstract on a separate sheet has been provided as required. No new matter has been added.

Claims 1-26 are pending in the application. A priority claim to GB9704444 (hereinafter "the priority document"), filed March 4, 1997, was objected to with respect to Claims 7-8, 17, 20-21 and 24. Claims 1-26 were rejected under the first paragraph of 35 U.S.C. §112. Claims 10-11were rejected under the second paragraph of 35 U.S.C. §112. Claims 7 and 17 were rejected under 35 U.S.C. §102(a) as being anticipated by Lo (Lancet, August 1997).

Applicants respectfully traverse the Examiner's priority objection and anticipation rejection of claims 7 and 17 over Lo (Lancet, August 1997). With respect to claims 8, 20-21 and 24, the objection is not ripe since no rejection over intervening art has been made. With

-3-

respect to the Examiner's assertion that claim 7 is not supported by the priority document because it includes no reference to detecting DYS14, Applicants respectfully disagree. Page 8, lines 2-5 of the priority document explicitly refer to amplification of a single copy of Y sequence DYS14.

With respect to claim 17, the Examiner asserts that the priority document does not disclose variations of fetal DNA concentrations over the different stages of gestation. Applicants respectfully disagree. Applicants submit that the priority document clearly describes that variations in the quantity of foetal DNA may occur in some pregnancy-associated conditions such as pre-eclampsia. Specifically, page 2, lines 24-27, specifically refers to differing amounts of foetal DNA being present in the maternal serum or plasma. One skilled in the art would readily understand that this would refer to a variation of foetal DNA concentration at a particular stage of gestation. Further, at the priority filing date, one skilled in the art would have also been aware that foetal DNA generally shows a variation over the course of a pregnancy. In order to monitor whether there is a higher or lower level of foetal DNA compared to normal, it would be desirable to make a comparison with a sample from a similar stage of gestation.

-4-

**Applicant:** Lo et al.
**Application No.:** 09/380,696

Although the priority document does not include identical claims as now on file, Applicants respectfully submit that the disclosure of the priority document, as read by one skilled in the art, clearly encompasses rejected claims 7 and 17. Accordingly, the §102 rejection based on Lo (Lancet, August 1997) is traversed as not being prior art to these claims.

The rejection of Claims 1-5 and 9-11 under the first paragraph of 35 U.S.C. §112, as containing subject matter which was not adequately described in the specification, is respectfully traversed. The Examiner contends that there is not adequate description for the detection of the large genus of paternally-inherited non-Y sequences. Although, as noted by the Examiner, there is substantial variability among the species of nucleic acids encompassed in the scope of the claim, Applicants submit that one skilled in the art is aware of a variety of techniques which might be used to detect different nucleic acid species. For example, there are numerous techniques which might be used to detect repeat expansions, single gene mutations, deletions or translocations. These techniques are a matter of routine for one skilled in the art for the analysis of DNA.

Further, the invention does not rely on the identification of any specific paternally-inherited non-Y sequences. The invention resides in the identification of foetal DNA in a serum or plasma sample. One skilled in the art could take advantage of the present

-5-

application describing the presence of foetal DNA in the plasma or serum and apply it to the

detection of paternally-inherited non-Y sequences in addition to those which are described.

For example, the Examiner has referred to an article by Amicucci et al. which clearly

describes detection of an expanded repeat. The Amicucci et al. article clearly demonstrates

that the technique as described in the present application may be readily applied to the

detection of repeat sequences.

Additionally, Applicants refer the Examiner to a number of other documents which

describe analysis of foetal DNA in maternal plasma or serum. Attached herewith are copies

of Pertl et al. *Human Genetics* 106(1) - 45-49, 2000 (Abstract), Tang et al. *Clinical*

*Chemistry* 45, 11;1999; 2033-2035, Smid et al. *Clinical Chemistry* 45, 8; 1999; 1570-1572

and Chen et al. *Prenat Diagn* 2000, 20; 355-357. Each of these articles provides an example

of the application of the general technique described in the present application to specific

sequences. Each of these articles refers to the work done by the inventors of the present

application disclosed in Lo et al. In particular, these articles refer to Lo et al. where it

describes detection of foetal DNA in maternal plasma and serum and describes the technique

to a variety of different sequences. Moreover, the articles cited above demonstrate that

microsatellite alleles which differ by a very small number of nucleotides between the mother

and baby, that is by 2 base pairs, are detectable using the technology described in the present

-6-

Applicant: Lo et al.
Application No.: 09/380,696

application. Microsatellites are essentially polymorphic pieces of DNA, which are different between different individuals by virtue of insertions or deletions of a small number of base pairs. The paper by Chen et al. describes the successful diagnosis of a paternally-inherited reciprocal translocation.

Additionally, there are numerous types of mutations that might be detected, in accordance with the present invention. The Examiner has discussed whether the technique is applicable for detecting small differences between the mother and foetus and has highlighted three categories, namely, single gene mutations, deletions, and translocations. The attached articles clearly demonstrate that a wide variety of different polymorphisms may be detected in accordance with present application. Applicants submit that there is sufficient description in that the key features of the claimed technique have been described in the Application, and, in particular, one skilled in the art is instructed to use maternal plasma or serum for the detection of foetal DNA. Although there are a wide variety of different types of polymorphisms which could be detected in connection with the present application, such polymorphisms and techniques for analysis of DNA are simply a matter of routine for one skilled in the art. Therefore, it is not necessary for the Applicants to set out each of the many ways in which DNA might be analyzed. The description is sufficient simply by instructing one skilled in the art to carry out a suitable analysis. The additional documents, attached

-7-

hereto, clearly demonstrate that one skilled in the art is readily able to apply the teachings of the present application to any one of the well known techniques for detection of DNA with a view to analysis of foetal DNA in paternal plasma or serum.

Applicants respectfully traverse the rejection of Claims 1-26 under the first paragraph 35 U.S.C. §112, on the basis of lack of enablement for a general detection method performed on serum or plasma for detecting fetal nucleic acid at any time during pregnancy or associated with disease phenotype and serum. The Examiner refers to Lo et al. (*New England J. of Med.*, Vol. 339, No. 24, pages 1734-8) and suggests that the claims are only enabled with respect to detecting the presence of paternally-inherited foetal DNA in maternal plasma after 15 weeks of gestation. The Examiner has indicated that there is unpredictability in detecting foetal DNA in plasma before the fifteenth week of gestation. However, Applicants respectfully submit that the specification is enabled across the scope of the breadth of the claim for a detection method performed on serum or plasma of pregnant women to detect any foetal DNA during the course of pregnancy. Although the article cited by Examiner suggests that reliable results for foetal RHD status can be determined from the fifteenth week of gestation, the paper nevertheless demonstrates that testing prior to 15 weeks of gestation is already useful.

-8-

**Applicant:** Lo et al.
**Application No.:** 09/380,696

The Examiner has cited some of the Applicants' own comments in the article of Lo et al., *Annals of Medicine*, Volume 31, 5: 1999; 308-312. As with all technologies, it can be expected that improvements in the technology may arise. For example, it is likely that improvements will be made to enhance sensitivity of the techniques. However, this is not to say that the techniques can not be used as a diagnostic method across the scope of the claims. Clearly, the statements quoted by the Examiner in the *Annals of Medicine* cannot be seen as a suggestion that the technique does not in itself work effectively.

With respect to the dividing line of 15 weeks, the article by Lo et al. referred to by the Examiner merely states that for RHD, PCR tests are reliable beginning in the second trimester. This is not to say that such tests can not be useful when carried out before the second trimester. For example, if a potential problem were highlighted in a test carried out before the second trimester, this problem could be used as part of a diagnosis such as to identify women who require close monitoring in later stages, for example to confirm a provisional diagnosis. Thus, it may be possible to identify such things as a foetus at risk of foetal hemolytic disease before 15 weeks of pregnancy and highlight that pregnancy for enhanced surveillance.

There are also numerous papers showing that the technology can be used prior to the 15th week of gestation. In Lo et al., *American Journal of Human Genetics* of 1998, 62; 768-

-9-

**Applicant:** Lo et al.
**Application No.:** 09/380,696

775, the authors show that foetal DNA can be detected from maternal serum at the seventh week of gestation. Amicucci et al. demonstrates that the technology can be used at the tenth week of gestation. Smid et al., *Clinical Chemistry* 1999, 45;1570-1572 demonstrates that the method is applicable between the seventh and fourteenth weeks of gestation.

Additionally, the Examiner also refers to a number of papers as suggesting that there are potential problems with the technique and that to a certain extent the claims are based on hypothesis. As highlighted above, the present invention results in the new identification that foetal DNA is present in maternal plasma or serum. Many of the points highlighted by the Examiner would be considered to be a matter of routine experimentation to one skilled in the art of DNA detection, to identify the most appropriate technique for a particular required diagnosis. The person skilled in the art has a broad range of techniques available for the detection of DNA in a sample. Thus, one skilled in the art, equipped with the teaching of the present patent application, would be readily able to overcome any such potential problems mentioned by the Examiner. Indeed, there is much literature, such as the articles referred to above, which demonstrates that the technique has been successfully applied to other sequences.

-10-

The Examiner further suggests that there may be a problem in connection with using material serum and that increased amount of maternal DNA can be found.  The Examiner quotes Lo et al.:

> The results indicated that a higher maternal background is present when serum is used which may be detrimental for the detection of foetal DNA, especially when less sensitive detection methods are used.

Applicants submit that one skilled in the art would understand simply that a higher maternal background may be present where serum is used, and that it may be preferable to use a more sensitive detection method.  However, as highlighted above, this statement does not in any way suggest that the technique can not be used.  The statement merely suggests that the technique should be optimized given the particular circumstances.  This is simply a straightforward matter of application of an appropriate DNA detection method.

The Examiner has highlighted some problems in using serum samples, highlighted by Bischoff et al.  However, one skilled in the art would simply take appropriate action to avoid the specific problems highlighted in this article.  The article does not suggest that the method would in any way not work simply because serum DNA was being used.  In any event, there are a number of papers which have used maternal serum reliability for detection of foetal DNA, namely,  Lo et al. *American Journal of Human Genetics* Supra, Lo et al., *Clinical Chemistry* 1999, 45;184-188 (abstract attached).

-11-

In summary, the, various documents cited by the Examiner do not suggest that the present technique would not be successful.  Improvement of the process or selection of the most appropriate of DNA analysis is simply a matter of routine experimentation which would be carried out by one skilled in the art based on the readily available techniques of DNA detection.

With respect to the rejection of Claims 10 and 11 under 35 U.S.C. §112, Applicants have amended these claims to delete the phrase "such as" objected to by the Examiner.  New dependent claims 27 and 28 have been added.  Applicants believe these claims are now in condition for allowance.

It is respectfully submitted that the pending claims as amended are now in condition for allowance.  Reconsideration, approval of the drawing amendment, and allowance are respectfully requested.

-12-



**Applicant:** Lo et al.
**Application No.:** 09/380,696

Respectfully submitted,

Lo et al.

By_____

C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

Volpe and Koenig, P.C.
Suite 400, One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/JMO/dag

Attachments:  Pertl et al. *Human Genetics*
Tang et al. *Clinical Chemistry*
Smid et al. *Clinical Chemistry*
Chen et al. *Prenat Diagn*
Lo et al., *American Journal of Human Genetics*
Lo et al., *Clinical Chemistry*

Enclosures (2)

-13-



# ABSTRACT



The invention relates to a detection method performed on a maternal serum or plasma sample from a pregnant female, which method comprises detecting the presence of a nucleic acid of foetal origin in the sample.  The invention enables non-invasive prenatal diagnosis including for example sex determination, blood typing and other genotyping, and detection of pre-eclampsia in the mother.

Volpe and Koenig, P.C. Revision of    PTO/SB/17 (12/99)

Approved for use through 09/30/2000. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2000

Patent fees are subject to annual revision.
Small Entity payments **must** be supported by a small entity statement,
otherwise large entity fees must be paid.  See Forms PTO/SB/09-12.
See 37 C.F.R. §§ 1.27 and 1.28.

**TOTAL AMOUNT OF PAYMENT** ($) $208.00

**Complete if Known**

| | |
|---|---|
| Application Number | 09/380,696 |
| Filing Date | November 29, 1999 |
| First Named Inventor | Lo et al. |
| Examiner Name | Enewold, J. |
| Group / Art Unit | 1655 |
| Attorney Docket No. | SHP-PT048 |

## METHOD OF PAYMENT (check one)

1. ☐ The Commissioner is hereby authorized to charge the fees indicated hereon:

Deposit Account Number  22-0493

Deposit Account Name  **Volpe and Koenig, P.C.**

☒ Charge Any Deficiency or Credit Any Overpayment in the Total Fees Associated with this Communication    Our Order No. 1822

2. ☒ Payment Enclosed:
☒ Check   ☐ Money Order   ☐ Other

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 101 | 690 | 201 | 345 | Utility filing fee | |
| 106 | 310 | 206 | 155 | Design filing fee | |
| 107 | 480 | 207 | 240 | Plant filing fee | |
| 108 | 690 | 208 | 345 | Reissue filing fee | |
| 114 | 150 | 214 | 75 | Provisional filing fee | |

SUBTOTAL (1) ($)

### 2. EXTRA CLAIM FEES

| | Extra Claims | | Fee from below | Fee Paid |
|---|---|---|---|---|
| Total Claims 28 | -20** = 2 | X | $9.00 | = $18.00 |
| Independent Claims 3 | -3 = 0 | X | $39.00 | = 0 |
| Multiple Dependent | | | | |

**or number previously paid, if greater; For Reissues, see below

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 103 | 18 | 203 | 9 | Claims in excess of 20 |
| 102 | 78 | 202 | 39 | Independent claims in excess of 3 |
| 104 | 260 | 204 | 130 | Multiple dependent claim, if not paid |
| 109 | 78 | 209 | 39 | ** Reissue independent claims over original patent |
| 110 | 18 | 210 | 9 | ** Reissue claims in excess of 20 and over original patent |

SUBTOTAL (2) ($) $18.00

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 105 | 130 | 205 | 65 | Surcharge - late filing fee or oath | |
| 127 | 50 | 227 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 139 | 130 | 139 | 130 | Non-English specification | |
| 147 | 2,520 | 147 | 2,520 | For filing a request for reexamination | |
| 112 | 920* | 112 | 920* | Requesting publication of SIR prior to Examiner action | |
| 113 | 1,840* | 113 | 1,840* | Requesting publication of SIR after Examiner action | |
| 115 | 110 | 215 | 55 | Extension for reply within first month | |
| 116 | 380 | 216 | 190 | Extension for reply within second month | $190 |
| 117 | 870 | 217 | 435 | Extension for reply within third month | |
| 118 | 1,360 | 218 | 680 | Extension for reply within fourth month | |
| 128 | 1,850 | 228 | 925 | Extension for reply within fifth month | |
| 119 | 300 | 219 | 150 | Notice of Appeal | |
| 120 | 300 | 220 | 150 | Filing a brief in support of an appeal | |
| 121 | 260 | 221 | 130 | Request for oral hearing | |
| 138 | 1,510 | 138 | 1,510 | Petition to institute a public use proceeding | |
| 140 | 110 | 240 | 55 | Petition to revive - unavoidable | |
| 141 | 1,210 | 241 | 605 | Petition to revive - unintentional | |
| 142 | 1,210 | 242 | 605 | Utility issue fee (or reissue) | |
| 143 | 430 | 243 | 215 | Design issue fee | |
| 144 | 580 | 244 | 290 | Plant issue fee | |
| 122 | 130 | 122 | 130 | Petitions to the Commissioner | |
| 123 | 50 | 123 | 50 | Petitions related to provisional applications | |
| 126 | 240 | 126 | 240 | Submission of Information Disclosure Stmt | |
| 581 | 40 | 581 | 40 | Recording each patent assignment per property (times number of properties) | |
| 146 | 690 | 246 | 345 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 149 | 690 | 249 | 345 | For each additional invention to be examined (37 CFR § 1.129(b)) | |

Other fee (specify) _____

Other fee (specify) _____

* Reduced by Basic Filing Fee    SUBTOTAL (3) ($)$190

## SUBMITTED BY

**Complete (if applicable)**

| | | |
|---|---|---|
| Name (Print/Type) C. Frederick Koenig III, Esquire | Registration No. (Attorney/Agent) 29,662 | Telephone 215-568-6400 |
| Signature | | Date 9/15/00 |

**WARNING:**

Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

OIPE

SEP 2 2 2000

PATENT & TRADEMARK OFFICE

Please type a plus sign (+) inside this box → [ + ]

PTO/SB/21 (6-98)
Approved for use through 09/30/2000. OMB 0651-0031
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| **Application Number** | 09/380,696 |
| **Filing Date** | November 29, 1999 |
| **First Named Inventor** | Lo et al. |
| **Group Art Unit** | 1655 |
| **Examiner Name** | Enewold, J. |

| Total Number of Pages in This Submission | 20 | Attorney Docket Number | SHP-PT048 |
|---|---|---|---|

## ENCLOSURES   *(check all that apply)*

| | | |
|---|---|---|
| [x] Fee Transmittal Form | [ ] Assignment Papers *(for an Application)* | [ ] After Allowance Communication to Group |
|     [x] Fee Attached | [ ] Drawing(s) | [ ] Appeal Communication to Board of Appeals and Interferences |
| [x] Amendment / Response | [ ] Licensing-related Papers | [ ] Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)* |
|     [ ] After Final | [ ] Petition Routing Slip (PTO/SB/69) and Accompanying Petition | [ ] Proprietary Information |
|     [ ] Affidavits/declaration(s) | [ ] Petition to Convert to a Provisional Application | [ ] Status Letter |
| [x] Extension of Time Request | [ ] Power of Attorney, Revocation Change of Correspondence Address | [x] Additional Enclosure(s) *(please identify below):* |
| [ ] Express Abandonment Request | [ ] Terminal Disclaimer | Attachments (6 Articles); Marked Up Drawing sheets (2 pgs.); Abstract (1 pg.) |
| [ ] Information Disclosure Statement | [ ] Small Entity Statement | |
| [ ] Certified Copy of Priority Document(s) | [ ] Request for Refund | |
| [ ] Response to Missing Parts/ Incomplete Application | **Remarks** | |
|     [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53 | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | C. Frederick Koenig III, Esquire VOLPE and KOENIG, P.C. | Reg. No.   29,662 |
|---|---|---|
| Signature | | |
| Date | 9/15/00 | |

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to:  Assistant Commissioner for Patents, Washington, D.C. 20231 on this date:  | Sept. 15, 2000 |

| Typed or printed name | C. Frederick Koenig III, Esquire | | |
|---|---|---|---|
| Signature | | Date | 9/15/00 |

Burden Hour Statement. This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be send to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS   SEND TO: Assistant Commissioner for Patents, Washington, DC 20231

WO 98/39474                                               PCT/GB98/00898

3/4

# Fig.4.

# 11



Fig. 4a

Fig. 4b

Fig. 4c

Fig. 4d

Fig. 4e

Fig. 4f

# Fig.4(Cont.)



### CASE S-15

Fig. 4g

### CASE S-17

Fig. 4h



### CASE S-51

Fig. 4i

### CASE S-52

Fig. 4j



### CASE S-56

Fig. 4k

### CASE S-65

Fig. 4l



**UNITED STATES D. ?ARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/380,696 | 11/29/99 | LO | Y | SHP-PT048 |

HM22/1102

C FREDERICK KOENIG III
VOLPE & KOENIG
400 ONE PENN CENTER
1617 JOHN F KENNEDY BOULEVARD
PHILADELPHIA PA 19103

| | EXAMINER |
|---|---|
| | GOLDBERG, T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1655 | |

DATE MAILED:   11/02/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 09/380,696 | LO ET AL. |
| | Examiner | Art Unit | |
| | Jeanine A Enewold Goldberg | 1655 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will
  be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this
  communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

1)☒ Responsive to communication(s) filed on <u>22 September 2000</u> .

2a)☒ This action is FINAL.      2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-28</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-28</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11)☐ The proposed drawing correction filed on _____ is: a)☐ approved  b)☐ disapproved.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a)☐ All  b)☐ Some * c)☐ None of the CERTIFIED copies of the priority documents have been:

        1.☐ received.

        2.☐ received in Application No. (Series Code / Serial Number) _____ .

        3.☐ received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. & 119(e).

**Attachment(s)**

15)☐ Notice of References Cited (PTO-892)

16)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

17)☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .

18)☐ Interview Summary (PTO-413) Paper No(s). _____

19)☐ Notice of Informal Patent Application (PTO-152)

20)☐ Other: .

Application/Control Number: 09/380,696                                    Page 2
Art Unit: 1655

## DETAILED ACTION

1.      This action is in response to the papers filed September 22, 2000.  Currently, claims

1-28 are pending.  All arguments have been thoroughly reviewed but are deemed non-

persuasive for the reasons which follow. This action is made FINAL.

2.      Any objections and rejections not reiterated below are hereby withdrawn.

### *Maintained Rejections*

### *Priority*

3.      This application is a 371 of GB98/00690, filed March 4, 1998.  This application

also claims priority to GB9704444, filed March 4, 1997.  However, claims 7-8, 17, 20-21,

and 24 are not supported by GB9704444.  Claims 7-8 are not supported by the

GB9704444 document because although the document discloses sex determination

and other polymorphisms which are present in the father, but not the mother, the

disclosure does not describe either detecting DYS14 locus nor the SRY gene.  Claim 17

is directed to variations of fetal DNA concentrations over the different stages of

gestation, however, no mention of this difference was disclosed in the Great Britain

document.  Claims 20-21 are directed to specific concentrations of fetal DNA, which

were not disclosed in the foreign priority document.  Although the document discloses

that "another potential application is the quantification of fetal nucleic acid in maternal

serum or plasma", no specifics were provided (pg. 5).  Finally, Claim 24 is not supported

by the foreign document because no mention of clotting to extract serum and plasma is

Application/Control Number: 09/380,696                                    Page 3
Art Unit: 1655

provided.  Therefore, Claims 7-8, 17, 20-21, and 24 receive benefit of the GB98/00690

application filed March 4, 1999.

**Response to Arguments**

The response traverses the rejection.  The response asserts that Claim 7 and 17

are supported by the specification of GB9704444, filed March 4, 1997, and thus should

receive priority.  This argument has been reviewed.  With respect to Claim 7, the

examiner acknowledges the document does refer to DYS14 and agrees that Claim 7

should receive benefit of March 1997.

However, with regards to Claim 17, the response asserts that the GB9704444,

filed March 4, 1997 supports variations of fetal DNA concentrations over the different

stages of gestation.  The response states that "on skilled in the art would have also

been aware that fetal DNA generally shows a variation over the course of a pregnancy.

Further, the response states that "it would be desirable to make a comparison with a

sample from a similar stage of gestation".  This argument has been reviewed, but is not

convincing because the priority document states "detection and monitoring of

pregnancy-associated conditions such as pre-eclampsia which may result in differing

amounts of foetal DNA being present in the maternal serum or plasma" (pg. 2, lines 24-

27).  This statement while proposing that variation occurs, does not provide any specific

evidence that variations in fact exist, nor provides the variations from normal as stated

in Claim 17.  Secondly, based upon the inventive nature presumed for the invention, the

skilled artisan would not have been aware that fetal DNA existed in the serum/plasma,

and thus would not have "been aware that foetal DNA shows a variation over the course

Application/Control Number: 09/380,696                                    Page 4
Art Unit: 1655

of pregnancy". Finally, it is acknowledged that "a comparison" would be desirable,

however, the comparison was not performed in the foreign document.


### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of
making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the
art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
set forth the best mode contemplated by the inventor of carrying out his invention.

4.      Claims 1-26 are rejected under 35 U.S.C. 112, first paragraph, because the

specification, while being enabling for a method for detecting the presence of paternally

inherited fetal DNA in maternal plasma after 15 weeks of gestation wherein the fetal

DNA is from the Y chromosome and for detecting the presence of the RhD gene in

maternal plasma from an RhD negative pregnant women after 15 weeks gestation, does

not reasonably provide enablement for a detection method performed on serum or

plasma for detecting fetal nucleic acid in general at any time during pregnancy or

associated with disease phenotype in serum.  The specification does not enable any

person skilled in the art to which it pertains, or with which it is most nearly connected, to

us the invention commensurate in scope with these claims.

The claims are broadly drawn to a detection method performed on serum or

plasma of a pregnant woman to detect any fetal DNA at any point in pregnancy.

The specification teaches fetal DNA has been detected in both serum and

plasma.  Table 2 and 3 show the quantification of fetal DNA in maternal serum and

plasma in relation to the gestational age (pg. 33).  The specifications teaches the

Application/Control Number: 09/380,696                                    Page 5
Art Unit: 1655

detection of the Y-chromosome by markers to DYS14 locus and SRY gene.  The

specification teaches that plasma and serum samples were collected from 43 pregnant

women with gestational ages from 12 to 40 weeks (pg. 9, para. 1).  Of the 30 male

fetuses, detection of a Y-positive signal occurred in 24 plasma samples and only 21

serum samples (pg. 9,para. 1).  The specification also teaches a RhD status

determination from plasma of RhD-negative pregnant women (pg. 15 and Table 1, pg.

20).

        The art teaches unpredictability in detecting fetal DNA in plasma before the 15th

week of gestation, of detecting paternally inherited non-Y sequences, and the

unpredictability of detecting fetal DNA in serum samples.  Specifically, Lo et al (New

England J. of Med. , Vol. 339, No. 24, pages 1734-8, December 1998) teaches reliable

results for fetal RhD status determination were obtainable from the 15th week of

gestation and beyond in RhD negative women.  Lo teaches that 7 of 9 fetus were

positive on PCR testing for RhD genotyping (Table 1, pg. 1736).  Lo teaches that two

women with gestation ages of eight and nine weeks yielded false negative results (pg.

1735, col. 2, para. 6).  Lo explicitly states "our data suggests that results of the RhD

PCR test are reliable beginning in the second trimester" (pg. 1736, col. 2, para. 2).

Additionally, Lo (Annals of Medicine, Vol. 31, NO. 5, pg. 308-312, Oct 1999) teaches "it

is likely that future improvements in technology may allow more accurate diagnosis to

be made and potentially extend the applicability of this method to the first trimester of

pregnancy" (pg. 310, col. 2, para. 1) suggesting that the technology does not currently

Application/Control Number: 09/380,696                                    Page 6
Art Unit: 1655

exist and may not have been conceived of as of yet what would be required to diagnose

in the first trimester.

Moreover, the art teaches the detection of fetal DNA in maternal plasma for an

expanded CGT trinucleotide repeats, in the DM kinase gene on chromosome 19, in the

range of 50-4000 repeats (Amicucci et al, February 2000, Clinical Chemistry, Vol. 46,

No. 2, pages 301-302).  Amicucci teaches sampling of plasma from pregnant women at

10 weeks of gestation to detect the expanded repeat present only in the father.

Amicucci states "at present, this test seems appropriate only for monitoring paternally

inherited expanded alleles" (pg. 302, para. 2).  Additionally, Lo (Annals of Medicine, Vol.

31, NO. 5, pg. 308-312, Oct 1999) states "the success of the detection of fetal-derived

RhD gene in the plasma and serum of pregnant women opens up the possibility that a

similar approach may be used for other single-gene disorders" (pg. 310, col. 2, para. 3).

However, Lo has not taught single gene disorders other than RhD which may in fact use

this technique. Furthermore, the RhD analysis was only shown to be successful on

RhD-negative women.  The language of the paper is that of suggestion, and hypothesis

rather than evidence that this method works for these suggested single-gene

disorders.

Furthermore, Lo (Annals of Medicine, Vol. 31, NO. 5, pg. 308-312, Oct 1999)

teaches increase amount of maternal DNA have been found in serum when compared

with plasma (pg. 310, col. 1, para. 3).  Further, the results "indicated that a higher

maternal background is present when serum is used which may be detrimental for the

detection of fetal DNA, especially when less sensitive detection methods are used"(pg.

Application/Control Number: 09/380,696                                Page 7
Art Unit: 1655

310, col. 1, para. 3).  Bianchi (Am. J. Hum. Genetics, Vol. 62, pg. 763-764, April 1998)

teaches that the fractional concentration of fetal nucleic acid in serum was significantly

less because of the increased amount of total DNA in serum (pg. 763, col. 1, para. 3).

Bianchi moreover teaches that these results validate the results of Lo which showed

that fetal DNA would be reliably detected in as little of 10 microliters of maternal plasma.

Furthermore, Bianchi states that "although fetal aneuploidy might be suggested by

increased amounts of fetal DNA present in maternal plasma, cytogenetic confirmation

using intact nuclei will ultimately be necessary (pg. 764, col. 1, para. 3).  Bischoff et al

(J. of the Society for Gynecologic Investigation, Vol. 6, No. 2, pages 64-69, Mar-April

1999) teaches detection of RhD in serum.  However, Bischoff teaches that "our less

than 100% detection efficiency probably reflects serum DNA purity, variable fetal DNA

concentration in maternal serum, and DNA degradation caused by freezing and thawing

of the serum samples" (pg. 67, col. 1).

Neither the specification nor the art provide guidance to overcome the

unpredictability of detecting fetal DNA in plasma before the 15th week of gestation, of

detecting paternally inherited non-Y sequences, and the unpredictability of detecting

fetal DNA in serum samples.  It would require undue experimentation for the ordinary

artisan to practice the invention as broadly as claimed.  The concentration of fetal DNA

in maternal plasma at early stages of gestation appears to be low.  Thus predictably

detecting fetal DNA in maternal plasma samples before the 15th week of gestation is

unpredictable and would require the ordinary artisan to enrich the fetal DNA in some

manner which have not been described.  In addition clinical studies would be required to

Application/Control Number: 09/380,696                                                    Page 8
Art Unit: 1655

determine the level of sensitivity of detection of paternally inherited sequences. Since,

Amicucci explicitly states in his work as of February 2000, "at present, this test seems

appropriate only for monitoring paternally inherited expanded alleles" (pg. 302, para. 2),

it appears the sensitivity of the method can only detect huge expansions. Thus,

detection of all paternally inherited non-Y sequences would be unpredictable. While,

the detection of paternally inherited non-Y sequences includes huge expansions,

detection of single gene mutations which differed from mother to father, translocations,

deletions would be unpredictable. Finally, the detection of fetal DNA in serum appears

unpredictable based upon the teachings by Lo that the results "indicated that a higher

maternal background is present when serum is used which may be detrimental for the

detection of fetal DNA, especially when less sensitive detection methods are used"(pg.

310, col. 1, para. 3). Thus, the above analysis demonstrates that the skilled artisan

would be required to perform undue experimentation to make and use the invention as

claimed.

**Response to Arguments**

The response traverses the rejection. The response asserts that specification is

enabling across the scope of the breadth of the claim for detection method over the

course of pregnancy. The response asserts that "the paper demonstrates that testing

prior to 15 weeks of gestation is already useful". This argument has been reviewed but

is not convincing because the art teaches that "noninvasive fetal RhD genotyping can

be performed rapidly and reliably with the use of maternal plasma beginning in the

second trimester of pregnancy" (abstract). The paper teaches that "plasma samples

Application/Control Number: 09/380,696                    Page 9
Art Unit: 1655

from two women in the first trimester of pregnancy who were carrying RhD-positive

fetuses, with gestational ages of eight and nine weeks, yielded false negative results".

The paper explains "the results for the two first-trimester samples which were false

negative, presumably because of the low concentration of fetal DNA in maternal plasma

at that time" (pg. 1736, col. 2).  The paper illustrates that amplification is required for

sensitivity of the PCR analysis for the detection of RhD DNA, such that with 25 or fewer

amplification cycles showed no intensity of fluorescence of study (Figure 1).  The paper

also illustrates that different weeks of gestation are detectable after different numbers of

cycling (Figure 2). The teachings in the specification support these results such that the

concentration of SRY in early pregnancy and late pregnancy differ substantially.  For

example, in early pregnancy plasma an average of 25.4 copies/ml are found while 292.2

copies/ml are found in late pregnancy.  Similarly, in early pregnancy serum an average

of 28.7 copies/ml are found while 342.1 copies/ml are found in late pregnancy.  Which

adds to the unpredictability of detecting fetal DNA in maternal serum/plasma prior 15

weeks of gestation and without any amplification.

        Secondly, the response asserts that the comments found in Lo et al (Annals of

Medicine, Vol. 31, No. 5, pg. 308-312, 1999) regarding applicability of the method for

the first trimester, is not to say that the techniques can not be sued as a diagnostic

method across the scope of the claims.  This argument has been reviewed but is not

convincing because the reference was cited to support the position that predictable

detection prior to 15 weeks of gestation is unpredictable.  The statement by Lo "it is

likely that future improvements in technology may allow more accurate diagnosis to be

made and potentially extend the applicability of this method to the first trimester of

pregnancy" indicates that currently the method is not applicable for the first trimester

and even with the technological improvements, the accurate detection within the first

trimester is unpredictable.

Thirdly, the response asserts that the statement that PCR tests are reliable

beginning in the second trimester does not say that such tests can not be useful when

carried out before the second trimester.  This argument has been reviewed but is not

convincing because the problem of detection prior to the second trimester appears to be

sensitivity.  The instant claims are not directed to a PCR or amplification method such

that this step is required.  Nevertheless, if the problem as stated by Lo et al (New

England J. of Medicine) is detection of low concentration, it is likely that method

contains false negatives.  The response appears to be discussing false positives in

which a "potential problem" may be highlighted.  However, it seems as though the lack

of detection of the nucleic acid would present more of a problem leading to the

unpredictability.  With regard to the three articles cited in the response that support the

detection in the first trimester, each of these articles require that an amplification step is

performed such that this detection is plausible, such that it appears that an amplification

step is a critical feature of the invention.  Smid provides different amplifications and

illustrates that false-positive results occur.

In conclusion, based upon the remarks and arguments presented, it remains

unpredictable to detect the presence of a nucleic acid of foetal origin in the sample prior

to 15 weeks of gestation as provided above.  Further, the claims remain broadly drawn

Application/Control Number: 09/380,696                                    Page 11
Art Unit: 1655

to the detection of nucleic acids of fetal origin, however, the detection of a maternally

inherited nucleic acid from the fetus is unpredictable.  The specification explicitly states

that "the method of the invention can be applied to the detection of any paternally-

inherited sequences which are not possessed by the mother" (pg. 4, lines 5-7).  As

stated in numerous of the papers the concentrations of fetal DNA in maternal plasma

may reach 3.4% in early pregnancy and 6.2% in late pregnancy, however, there is a

much higher percentage of maternal DNA in the plasma.  Provided that the skilled

artisan obtained a positive result for detection of the nucleic acid, it would require undue

experimentation determine whether the nucleic acid was a results of the maternal DNA

found in the maternal plasma or whether in fact the nucleic acid was from the fetus.

Thus, detection of a maternally inherited nucleic acid would be unpredictable and

require undue experimentation.

Thus for the reasons above and those already of record, the rejection is

maintained.

### Claim Rejections - 35 USC § 102

(a) the invention was known or used by others in this country, or patented or described in a printed
publication in this or a foreign country, before the invention thereof by the applicant for a patent.

(e) the invention was described in a patent granted on an application for patent by another filed in the
United States before the invention thereof by the applicant for patent, or on an international application
by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this
title before the invention thereof by the applicant for patent.

5.     Claim 17 is rejected under 35 U.S.C. 102(a) as being anticipated by Lo (Lancet,

August 1997).

Application/Control Number: 09/380,696                                    Page 12
Art Unit: 1655

It is noted that the authorship of the Lo et al. reference is distinct from the

inventorship of the instant application and that this rejection may be overcome by the

filing of a 132 Katz-type declaration. This rejection applies to the claims because as

discussed previously this claim does not have foreign priority to the March 4, 1997

British patent application.

Lo et al. (herein referred to as Lo) teaches the detection of fetal DNA in maternal

plasma and serum (abstract). Lo further teaches the detection of DYS14 from the Y

chromosome (pg. 486, col. 1, para. 2)(limitations of Claim 7). Lo teaches that fetal DNA

increases as gestation progresses (pg. 487, col. 1, para. 3)(limitations of Claim 17).

**Response to Arguments**

The response traverses the rejection. The response asserts that priority

should be granted a discussed above in the priority section and thus the rejection is not

applicable. This argument has been reviewed but is not convincing because the priority

document does not support all of the claims. The priority document states "detection

and monitoring of pregnancy-associated conditions such as pre-eclampsia which may

result in differing amounts of foetal DNA being present in the maternal serum or plasma"

(pg. 2, lines 24-27). This statement which proposing that variation occurs, does not

provide any specific evidence that variations in fact exist, nor provides the variations

from normal as stated in Claim 17. Secondly, based upon the inventive nature

presumed for the invention, the skilled artisan would not have been aware that fetal

DNA existed in the serum/plasma, and thus would not have "been aware that foetal

DNA shows a variation over the course of pregnancy". Finally, it is acknowledged that

Application/Control Number: 09/380,696                                    Page 13
Art Unit: 1655

"a comparison" would be desirable, however, the comparison was not performed in the

foreign document.

Thus for the reasons above and those already of record, the rejection is

maintained.

### Conclusion

6.      **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

7.      **No Claims allowable.**

8.      Any inquiry concerning this communication or earlier communications from the
examiner should be directed to examiner Jeanine Enewold Goldberg whose telephone
number is (703) 306-5817. The examiner can normally be reached Monday-Thursday
from 7:00AM to 4:30 PM.
        If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Gary Jones, can be reached on (703) 308-1152.  The fax number for this
Group is (703) 305- 3014.
        Any inquiry of a general nature should be directed to the Group receptionist
whose telephone number is (703) 308-0196.

Application/Control Number: 09/380,696                    Page 14
Art Unit: 1655


Jeanine Enewold Goldberg
November 1, 2000


W. Gary Jones
Supervisory Patent Examiner
Technology Center 1600
11/1/00

*16 c I*



**Volpe**
**and**
**Koenig** ᴾ.ᶜ. ˢᴹ

Suite 400, One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
**INTELLECTUAL PROPERTY LAW**

**FAᴧ RECEIVED**

**DEC 2 7 2000**

**GROUP 1600**
Telephone: +1-215-568-6400
Facsimile: +1-215-568-6499
www.volpe-koenig.com

mail@volpe-koenig.com

## FACSIMILE COVER SHEET      **OFFICIAL**

TO: Examiner J. Enewold Goldberg, Group 1655          FAX NO.: 703-305-3014

FROM: C. Frederick Koenig III, Esquire; Registration No. 29,662

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In the **PATENT APPLICATION** of: | |
|---|---|
| | Lo et al. |
| **Application No.:** | 09/380,696 |
| **Filed:** | November 29, 1999 |
| For: | NON-INVASIVE PRENATAL DIAGNOSIS |
| Group: | 1655 |
| Examiner: | J. Enewold Goldberg |

Our File: JAK-PT001
Formerly SHP-PT048

Date: December 27, 2000

COMMENTS: AFTER FINAL AMENDMENT

NUMBER OF PAGES INCLUDING THIS COVER SHEET: 7

NOTIFY AMY MCSHEA IF TRANSMISSION IS NOT COMPLETE OR LEGIBLE.

I hereby certify that this paper is being facsimile transmitted to the United States Patent and Trademark Office on December 27, 2000.

_____          _____
Amy F. McShea                                                Date

*Patents      Trademarks      Copyrights      Trade Secrets      Litigation      Licensing*

12/27/00   15:27 FAX 215 568 6499        VOLPE AND KOENIG, P.C.                    Ø003

Volpe and Koenig, P.C. Revision of   PTO/SB/17 (11-00)
Approved for use through 10/31/2002. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
# for FY 2001

*Patent fees are subject to annual revision.*

| Complete if Known | |
|---|---|
| Application Number | 09/380,696 |
| Filing Date | November 29, 1999 |
| First Named Inventor | Lo et al. |
| Examiner Name | J. Enewold Goldberg |
| Group Art Unit | 1655 |
| Attorney Docket No. | JAK-PT001 (Formerly SHP-PT048) |

**TOTAL AMOUNT OF PAYMENT**   ($) 0.00

## METHOD OF PAYMENT

1. ☐ The Commissioner is hereby authorized to charge indicated fees and credit any overpayments to:

Deposit Account Number    **22-0493**

Deposit Account Name    **Volpe and Koenig, P.C.**

☒ Charge Any Deficiency or Credit any Overpayment in the Total Fees Associated with this Communication

☒ Applicant claims small entity status. See 37 CFR 1.27

2. ☐ **Payment Enclosed:**
   ☐ Check   ☐ Credit card   ☐ Money Order   ☐ Other

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 101 | 710 | 201 | 355 | Utility filing fee | |
| 106 | 320 | 206 | 160 | Design filing fee | |
| 107 | 490 | 207 | 245 | Plant filing fee | |
| 108 | 710 | 208 | 355 | Reissue filing fee | |
| 114 | 150 | 214 | 75 | Provisional filing fee | |

**SUBTOTAL (1)** ($) 0.00

### 2. EXTRA CLAIM FEES

| | | Extra Claims | | Fee from below | Fee Paid | |
|---|---|---|---|---|---|---|
| Total Claims | 28 | - 28 | *0 | x | 9 = | 0 |
| Independent Claims | 3 | - 3 | *0 | x | 40 = | 0 |
| Multiple Dependent | | | | = | | |

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description |
|---|---|---|---|---|
| 103 | 18 | 203 | 9 | Claims in excess of 20 |
| 102 | 80 | 202 | 40 | Independent claims in excess of 3 |
| 104 | 270 | 204 | 135 | Multiple dependent claim, if not paid |
| 109 | 80 | 209 | 40 | ** Reissue independent claims over original patent |
| 110 | 18 | 210 | 9 | ** Reissue claims in excess of 20 and over original patent |

**SUBTOTAL (2)** ($) 0.00

*or number previously paid, if greater; For Reissues, see above

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity Fee Code | Fee ($) | Small Entity Fee Code | Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 105 | 130 | 205 | 65 | Surcharge - late filing fee or oath | |
| 127 | 50 | 227 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 139 | 130 | 139 | 130 | Non-English specification | |
| 147 | 2,520 | 147 | 2,520 | For filing a request for ex parte reexamination | |
| 112 | 920* | 112 | 920* | Requesting publication of SIR prior to Examiner action | |
| 113 | 1,840* | 113 | 1,840* | Requesting publication of SIR after Examiner action | |
| 115 | 110 | 215 | 55 | Extension for reply within first month | |
| 116 | 390 | 216 | 195 | Extension for reply within second month | |
| 117 | 890 | 217 | 445 | Extension for reply within third month | |
| 118 | 1,390 | 218 | 695 | Extension for reply within fourth month | |
| 128 | 1,890 | 228 | 945 | Extension for reply within fifth month | |
| 119 | 310 | 219 | 155 | Notice of Appeal | |
| 120 | 310 | 220 | 155 | Filing a brief in support of an appeal | |
| 121 | 270 | 221 | 135 | Request for oral hearing | |
| 138 | 1,510 | 138 | 1,510 | Petition to institute a public use proceeding | |
| 140 | 110 | 240 | 55 | Petition to revive - unavoidable | |
| 141 | 1,240 | 241 | 620 | Petition to revive - unintentional | |
| 142 | 1,240 | 242 | 620 | Utility issue fee (or reissue) | |
| 143 | 440 | 243 | 220 | Design issue fee | |
| 144 | 600 | 244 | 300 | Plant issue fee | |
| 122 | 130 | 122 | 130 | Petitions to the Commissioner | |
| 123 | 50 | 123 | 50 | Processing fee under 37 CFR 1.17(q) | |
| 126 | 180 | 126 | 180 | Submission of Information Disclosure Stmt | |
| 581 | 40 | 581 | 40 | Recording each patent assignment per property (times number of properties) | |
| 146 | 710 | 246 | 355 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 149 | 710 | 249 | 355 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 179 | 710 | 279 | 355 | Request for Continued Examination (RCE) | |
| 169 | 900 | 169 | 900 | Request for expedited examination of a design application | |

Other fee (specify) _____

*Reduced by Basic Filing Fee Paid    **SUBTOTAL (3)** ($) 0.00

## SUBMITTED BY

| | | Complete (if applicable) |
|---|---|---|
| Name (Print/Type) C. Frederick Koenig III, Esquire | Registration No. (Attorney/Agent) 29,662 | Telephone 215-568-6400 |
| Signature | | Date |

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

12/27/00   15:27 FAX 215 568 6499        VOLPE AND KOENIG,P.C.                    ☒002

PTO/SB/21 (8-98)
Approved for use through 09/30/2000. OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Please type a plus sign (+) inside this box → [+]

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| Application Number | 09/380,696 |
|---|---|
| Filing Date | November 29, 1999 |
| First Named Inventor | Lo et al. |
| Group Art Unit | 1655 |
| Examiner Name | J. Enewold Goldberg |

| Total Number of Pages in This Submission | 6 | Attorney Docket Number | JAK-PT001 (Formerly SHP-PT048) |
|---|---|---|---|

## ENCLOSURES   *(check all that apply)*

- [x] Fee Transmittal Form
  - [ ] Fee Attached
- [x] Amendment / Response
  - [x] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [ ] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Response to Missing Parts/ Incomplete Application
  - [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Assignment Papers *(for an Application)*
- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [ ] Petition Routing Slip (PTO/SB/69) and Accompanying Petition
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Small Entity Status Claimed
- [ ] Request for Refund

- [ ] After Allowance Communication to Group
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)*
- [ ] Proprietary Information
- [ ] Status Letter
- [ ] Additional Enclosure(s) *(please identify below):*

Remarks

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | C. Frederick Koenig III, Esquire Volpe and Koenig, P.C. | Reg. No.   29,662 |
|---|---|---|
| Signature | | |
| Date | 12/27/00 | |

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Box AF, Commissioner for Patents, Washington, D.C. 20231 on this date: | December 27, 2000 |

| Typed or printed name | C. Frederick Koenig III, Esquire |
|---|---|
| Signature | | Date | 12/27/00 |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In the **PATENT APPLICATION** of: | |
| | Lo et al. |
| **Application No.:** | 09/380,696 |
| **Filed:** | November 29, 1999 |
| For:   NON-INVASIVE<br>          PRENATAL DIAGNOSIS | |
| Group: | 1655 |
| Examiner: | J. Enewold Goldberg |

Our File: JAK-PT001
Formerly SHP-PT048

Date: December 27, 2000

## AMENDMENT AFTER FINAL PURSUANT TO 37 C.F.R. § 1.116

Box AF
Commissioner for Patents
Washington, D.C. 20231

Sir:

This Reply is responsive to the Action dated November 2, 2000 and the telephone conference with the Examiner on October 26, 2000.  Please amend the application as follows:

### IN THE SPECIFICATION

On page 1, between lines 6 and 7, please insert the heading:  --BACKGROUND OF THE INVENTION--.

On page 2, between lines 4 and 5, please insert the heading:  --SUMMARY AND OBJECTS OF THE INVENTION--.

**Applicant:** Lo et al.
**Application No.:**  09/380,696

On page 6, between lines 6 and 7, please insert the heading: --BRIEF DESCRIPTION

OF THE DRAWINGS--,

On page 6, line 12, please delete "Figure 3 shows" and insert therefor --Figures 3A

and 3B show--.

On page 6, between lines 15 and 16, please insert the heading:  --DETAILED

DESCRIPTION OF THE PREFERRED EMBODIMENTS--.

On page 34, line 11, please delete "Figure 3" and insert therefor --Figures 3A and

3B--.

On page 39, line 1, please delete "CLAIMS" and substitute therefor --What is claimed

is:--.


## IN THE CLAIMS

In claim 1, line 1, after "A", please insert --nucleic acid--.

In claim 1, line 3, after "a", please insert --paternally inherited--.

In claim 5 as amended, line 1, please delete "1" and insert therefor --2--.

In claim 25, line 4, after "for", please insert --paternally inherited--.

Please amend claim 26 as follows:

26. (Amended)      A method of performing a prenatal diagnosis on a maternal blood

sample, which method comprises obtaining a non-cellular fraction of the blood sample and



-2-

Applicant: Lo et al.
Application No.: 09/380,696

Cont performing nucleic acid analysis on the fraction <u>to detect paternally inherited fetal nucleic acid</u>.

## REMARKS

Applicants wish to thank Examiner Enewold Goldberg for the courtesy extended during the telephone interview on October 26, 2000. At that time, the Examiner advised that the claims would be allowable if limited to "paternally inherited" nucleic acid, since the specification is enabling for detecting paternally inherited nucleic acid in maternal serum or plasma. Such enablement is also indicated in the outstanding Action.

Applicants have amended the claims in accordance with the Examiner's suggestions made on October 26, 2000 and believe that the amendments to the claims place them in condition for allowance. Since these issues were previously discussed during the prosecution of this application, it is respectfully submitted that it is proper to enter the claim amendments at this time, since they eliminate issues and should place this case in condition for allowance.

While the Examiner had made specific suggestions for amending claim 1, which Applicants have adopted, the Examiner did not make specific suggestions with respect to claims 25 and 26. Applicants have attempted to amend claims 25 and 26 in the spirit of claim 1 to be in allowable form. If however, the Examiner has additional suggestions for

-3-

**Applicant:** Lo et al.
**Application No.:** 09/380,696

amendments to claims 25 and 26, Applicants respectfully request the Examiner to telephone

Applicants' undersigned attorney with respect to any suggestions.

Although the outstanding Action does not reference objections to the specification,

Examiner Enewold Goldberg did note that standard headings were missing and Figure 3 is

illustrated in two parts, i.e. Figure 3A and 3B during the October 26, 2000 telephone

discussion.  Appropriate amendment to the specification has been made to address these

issues.  Accordingly, it is believed that this Amendment places this case in condition for

allowance.

Reconsideration, entry of the Amendment and allowance are respectfully requested.

Respectfully submitted,

Lo et al.

By_____
C. Frederick Koenig III, Esquire
Registration No. 29,662
(215) 568-6400

Volpe and Koenig, P.C.
Suite 400, One Penn Center
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

CFK/amc

-4-

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/380,696 | LO ET AL. |
| | Examiner | Art Unit |
| | Jeanine A Enewold Goldberg | 1655 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Jeanine A Enewold Goldberg*.                    (3)_____.

(2) *Frederick Koenig*.                               (4)_____.

Date of Interview: *11 January 2001* .

Type:   a)☒ Telephonic   b)☐ Video Conference
        c)☐ Personal [copy given to:  1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes      e)☐ No.
If Yes, brief description:                .

Claim(s) discussed: _____ .

Identification of prior art discussed:            .

Agreement with respect to the claims f)☐ was reached.  g)☐ was not reached.  h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *The examiner called to discuss the after final amendment. While the applicants have provided the necessary changes, the examiner upon further consideration believes that an amplification step is a necessity for the claimed invention. The examiner indicated that prosecution would be reopened* .

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

   i)☐  It is not necessary for applicant to provide a separate record of the substance of the interview(if box is checked).

Unless the paragraph above has been checked, THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MEPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.                     Examiner's signature, if required

U.S Patent and Trademark Office
PTO-413 (Rev. 03- 98)                     Interview Summary                     Paper No 14.



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In the **PATENT APPLICATION** of: | |
| | Lo et al. |
| **Application No.:** | 09/380,696 |
| **Filed:** | November 29, 1999 |
| **For:** | NON-INVASIVE PRENATAL DIAGNOSIS |
| **Group:** | 1655 |
| **Examiner:** | Jeanine Enewold Goldberg |

Our File: JAK-PT001

Date: January 24, 2001

### SUPPLEMENTAL REPLY AFTER FINAL PURSUANT TO 37 C.F.R. §1.116

Box AF
Commissioner for Patents
Washington, D.C. 20231

Sir:

  A Final Action was issued November 2, 2000. This Supplemental Reply is responsive to the Examiner's telephone request of January 23, 2001 for the submission of an appropriate sequence listing per 37 C.F.R. §§1.821-1.825. Please amend the application as follows:

### IN THE SPECIFICATION

  Please amend the specification by entering the enclosed paper copy of a Sequence Listing (3 pages.).

  On page 17, line 20, after "CAG-3'", please insert -- [SEQ ID NO: 10] --.

  On page 17, line 23, please delete "10" and substitute therefor -- 11 --.

**Applicant:** Lo et al.
**Application No.:** 09/380,696

## REMARKS

Applicants wish to thank the Examiner for the courtesy extended in conjunction with arriving at allowable claims and the several telephone discussions conducted during the prosecution of this application.

Pursuant to the Examiner's telephone request, submitted herewith are paper and computer-readable copies of an appropriate "Sequence Listing". The content of the paper and computer-readable copies are the same and include no new matter. An appropriate amendment has been made regarding Sequence ID Nos. 10 and 11 on page 17. No new matter has been added.

Since an agreement has been reached with respect to the allowability of all pending claims per the Examiner's fax of January 16, 2001, it is respectfully submitted that this case is now in condition for allowance. Reconsideration, entry of this amendment and allowance of the claims is respectfully requested.

Respectfully submitted,

Lo et al.

Volpe and Koenig, P.C.                     By _____
Suite 400, One Penn Center                 C. Frederick Koenig III, Esquire
1617 John F. Kennedy Boulevard             Registration No. 29,662
Philadelphia, PA  19103                    (215) 568-6400

CFK/fap

-2-

SEQUENCE LISTING

<110> LO, YUK-MING DENNIS
      WAINSCOAT, JAMES STEPHEN

<120> NON-INVASIVE PRENATAL DIAGNOSIS

<130> JAK PT001

<140> US 09/380,696
<141> 1998-03-04

<150> GB9621367.3
<151> 1997-03-04

<160> 11

<170> WordPad

<210> 1
<211> 21
<212> DNA
<213> Artificial Sequence

<220>
<223> GeneAmp DNA Amplification Primer Y1.7

<400> 1
catccagagcgtccctggctt                                              21


<210> 2
<211> 21
<212> DNA
<213> Artificial Sequence

<220>
<223> GeneAmp DNA Amplification Primer Y1.8

<400> 2
ctttccacagccacatttgtc                                              21

<210> 3
<211> 21
<212> DNA
<213> Artificial Sequence

<220>
<223> TaqMan Amplification Primer SRY-109F

<400> 3
tggcgattaagtcaaattcgc                                              21

<210> 4
<211> 25
<212> DNA
<213> Artificial Sequence

```
<220>
<223> TaqMan Amplification Primer SRY-245R

<400> 4
cccactagtaccctgacaatgtatt                                    25

<210> 5
<211> 26
<212> DNA
<213> Artificial Sequence

<220>
<223> Dual Labeled Fluorescent TaqMan Probe SRY-142T

<400> 5
agcagtagagcactcagggaggcaga                                   26

<210> 6
<211> 21
<212> DNA
<213> Artificial Sequence

<220>
<223> RhD TaqMan Amplification Primer RD-A

<400> 6
cctctcactgttgcctgcatt                                        21

<210> 7
<211> 18
<212> DNA
<213> Artificial Sequence

<220>
<223> RhD TaqMan Amplification Primer RD-B

<400> 7
agtgcctgcgcgaccatt                                           18

<210> 8
<211> 31
<212> DNA
<213> Artificial Sequence

<220>
<223> Dual Labelled Fluorescent TaqMan Probe RD-T

<400> 8
tacgtgagaaacgctcatgacagcaaagtct                              31

<210> 9
<211> 24
<212> DNA
<213> Artificial Sequence

<220>
```

```
<223> TaqMan Amplification Primer beta-globin-354F

<400> 9
gtgcacctga ctcctgagga ga                                    22

<210> 10
<211> 21
<212> DNA
<213> Artificial Sequence

<220>
<223> TaqMan Amplification Primer beta-globin-455R

<400> 10
ccttgatacc aacctgccca g                                     21

<210> 11
<211> 26
<212> DNA
<213> Artificial Sequence

<220>
<223> Dual Labelled Fluorescent TaqMan Probe beta-globin-402T

<400> 11
aaggtgaacg tggatgaagt tggtgg                                26
```