Michael J. Malecek (State Bar No. 171034)
Email address: michael.malecek@kayescholer.com
Peter E. Root (State Bar No. 142348)
Email address: peter.root@kayescholer.com
Stephen C. Holmes (State Bar No. 200727)
Email address: stephen.holmes@kayescholer.com
KAYE SCHOLER LLP
Two Palo Square, Suite 400
3000 El Camino Real
Palo Alto, California 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700

Attorneys for Defendant and
Counterclaim-Plaintiff Sequenom, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIA DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEQUENOM, INC., <br><br> Defendant/ <br> Counterclaim-Plaintiff, <br><br> v. <br><br> ARIA DIAGNOSTICS, INC., <br><br> Counterclaim-Defendant, <br><br> and <br><br> ISIS INNOVATION LIMITED, <br><br> Nominal Counterclaim-Defendant. | Case No. 3:11–cv–06391-SI <br><br> **SUPPLEMENTAL DECLARATION OF WILLIAM WELCH IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: June 22, 2012 <br> Time: 9:00 a.m. <br> Place: Courtroom 10, 19th Floor <br> Judge: Hon. Susan Illston |

I, William Welch, declare:

1. I am Senior Vice President of Diagnostics at Sequenom, Inc. ("Sequenom"). I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently thereto. This supplemental declaration is made in support of Sequenom's Reply In Support Of Motion for Preliminary Injunction filed concurrently herewith.

2. I previously made a declaration in support of Sequenom's motion for preliminary injunction in this case, which was dated March 8, 2012 ("March 8 Declaration") and filed that same day with the Court together with Sequenom's motion for preliminary injunction and other moving papers.

3. When my previous declaration was submitted, Ariosa Diagnostics, Inc. (then known as Aria Diagnostics, Inc.) ("Ariosa") had announced plans to commercially launch its Harmony Prenatal Test ("Harmony test"). *See* March 8 Declaration ¶¶ 44-47. As far as I am aware, Ariosa did not at that time announce a specific timetable for the commercial launch of its Harmony test, but stated that it expected to launch its test sometime in the coming months.

4. In late March and early April 2012, through news reports from the media, general industry "buzz," and reports from my sales managers, I became aware that Ariosa had begun making its Harmony test commercially available at a few clinical sites. This was described in the industry media as a "soft launch." Ariosa's launch of its Harmony test at these clinical sites has resulted in lost sales and slowed adoption of Sequenom's MaterniT21 test.

5. [REDACTED]

6. Northside Hospital issued a press release on March 26, 2012, announcing that it had partnered with Ariosa to offer the Harmony test to pregnant women under its care. A true and correct copy of this press release is attached hereto as Exhibit 1. The press release states that

2

SUPPLEMENTAL DECLARATION OF WELCH IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION                     Case No. 3:11-cv-06391-SI

"Northside Hospital, an undisputed leader in maternity services, delivers more than 17,000 babies a year, more than any other hospital in the United States." In this press release, Northside Hospital and Atlanta Perinatal Consultants announced the availability of "the Harmony Prenatal Test, developed and offered by Ariosa Diagnostics." The press release further states: "Atlanta Perinatal Consultants at Northside Hospital is the first to offer this test and it will become more broadly available in the near future."

7. 

8. This has slowed the adoption of the MaterniT21 test at this early growth phase of the marketplace, when Sequenom is striving to expand its customer base and establish its reputation and leadership position in the market for non-invasive prenatal tests for fetal aneuploidies, based on Sequenom's innovative and patent-protected technology.

9. Sequenom's reputation as a technology leader is already being harmed by Ariosa's so far limited launch of its Harmony test. For instance, Northside Hospital, the largest birthing center in the United States and a significant leader in maternity services, made statements in its March 26, 2012, press release that diminish Sequenom's reputation by promoting Ariosa's

SUPPLEMENTAL DECLARATION OF WELCH IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION                           Case No. 3:11-cv-06391-SI

Harmony test as "a novel testing platform to analyze DNA in maternal blood" and a "new test which represents a significant technological advancement." *See* Exhibit 1.

10. ████████████████████████████████████████████████████████████ Three weeks ago, on May 7, 2012, Ariosa announced that it had partnered with Laboratory Corporation of America Holdings ("LabCorp") and that the Harmony test "will be offered through LabCorp and will be available at its 1,000+ patient service centers." A true and correct copy of Ariosa's May 7, 2012, press release is attached hereto as Exhibit 2.

11. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ LabCorp is a well-known heavyweight in the clinical laboratory testing industry. Attached hereto as Exhibit 3 is a true and correct copy of the cover page and selected pages of LabCorp's 2011 annual report on Form 10-K.

12. According to its 2011 annual report, LabCorp is the "second largest independent clinical laboratory company in the United States based on 2010 net revenues." Exhibit 3 at 4. LabCorp is a public company with a market capitalization of over $8 billion. LabCorp had net sales of over $5 billion from clinical laboratory testing in 2010. *Id.* at 39. LabCorp has "a national network of 51 primary laboratories and over 1,700 patient service centers ("PSCs") along with a network of branches and STAT laboratories. . . . " *Id.* at 4. LabCorp's clients include, among others, "physicians, hospitals, managed care organizations, [and] government agencies." *Id.* LabCorp has a substantial portfolio of tests: "Several hundred of the Company's tests are frequently used in general patient care by physicians to establish or support a diagnosis, to monitor treatment or to search for an otherwise undiagnosed condition." *Id.*

13. By offering the Harmony test through LabCorp, Ariosa has a ready-made distribution network and an established client base. LabCorp is already marketing the Harmony test: Integrated Genetics, a LabCorp Specialty Testing Group, has a posting on its web site "Introducing the NEW Harmony™ Prenatal Test" with links to a page describing the test. A true and correct copy of these web site pages are attached hereto as Exhibit 4.

1   14.   ████████████████████████████████████████████
2   ████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████
4   ████████ In addition to its national sales force, LabCorp's 2011 annual report states that it has
a "national network of over 160 genetic counselors" whose jobs include offering "prenatal genetic
counseling expertise to physicians and patients."  Exhibit 3 at 7, 9.  ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████  In this email exchange, a true and correct copy of which is
attached hereto as Exhibit 5, Dr. Hamner expressed interest in using Sequenom's MaterniT21
test, but that interest was derailed by "new developments" as explained in his email dated today,
June 5, 2012.  As Dr. Hamner's email today makes plain, his group "will not be able to offer
Sequenon [sic] testing as an option" as a result of LabCorp/Integrated Genetics' "partnership with
Ariosa Diagnostics to offer" the Harmony test.

15.   If Ariosa and LabCorp are allowed to offer and sell the Harmony test during the
remainder of this litigation, Sequenom will not be able to fully recover losses in sales, market
share, and reputation, even if Ariosa is subsequently enjoined from offering and selling its
infringing test after trial.

16.   ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████ Moreover, when I submitted my previous declaration, the publicly available
information was that Ariosa's Harmony test would be priced at $900.  March 8 Declaration ¶ 47.
Recently, Ariosa publicly announced that the Harmony test's list price is $795.  This even lower
price only increases the pressure on Sequenom to accept lower prices for its MaterniT21 test to
remain price-competitive with Ariosa's infringing test.

5

17. In my previous declaration, I explained that insurance reimbursement rates for novel tests like the MaterniT21 test are a matter of negotiation between the technology provider and the health insurance payors. *See* March 8 Declaration ¶¶ 27-35. Sequenom has successfully completed negotiation with one payor, MultiPlan, Inc., and entered into a contract with MultiPlan as of April 1, 2012, ███████████████████████████████ The negotiation of this contract occurred before Ariosa's soft launch of its Harmony test, and the soft launch was barely underway when the contract was entered. The dynamics of negotiation with other payors is certain to change once Ariosa commences its full-blown launch through its partner LabCorp. Sequenom already is encountering resistance from payors to engage in contract negotiations, as these payors are taking a wait-and-see approach.

18. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Verinata Health publicly announced on May 31, 2012, that its CEO, Caren Mason, is stepping down from her role as leader of Verinata Health. The other competitor of which I am aware, Natera, Inc., has not commercially launched any test for fetal aneuploidies to date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on June 5, 2012, in Miami, Florida.

                                                  */s/ William Welch*
                                                  William Welch

I, Michael J. Malecek, the ECF filer of this document hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.