1  IRELL & MANELLA LLP
   David I. Gindler (117824) (dgindler@irell.com)
2  Andrei Iancu (184973) (aiancu@irell.com)
   Amir Naini (226627) (anaini@irell.com)
3  Lina F. Somait (263876) (lsomait@irell.com)
4  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
5  Telephone: (310) 277-1010
   Facsimile: (310) 203-7199
6
7  Attorneys for Plaintiff and Counterclaim Defendant
   Ariosa Diagnostics, Inc.

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11 ARIOSA DIAGNOSTICS, INC.,          )  Case No. 3:11-cv-06391-SI
                                      )
12         Plaintiff,                 )  **ARIOSA DIAGNOSTICS, INC.'S**
                                      )  **OPPOSITION TO SEQUENOM, INC.'S**
13     vs.                            )  **MOTION TO CLARIFY OR,**
                                      )  **ALTERNATIVELY, MODIFY**
14 SEQUENOM, INC.,                    )  **PROTECTIVE ORDER**
                                      )
15                                    )
                                      )
16         Defendant.                 )  Date of Hearing:  June 14, 2013
                                      )  Time of Hearing:  9:00 a.m.
17 _____  )  Location:         Courtroom 10
                                      )                    19th Floor
18 SEQUENOM, INC.,                    )
                                      )
19         Counterclaim Plaintiff,    )  Judge:  Hon. Susan Illston
                                      )
20     vs.                            )
                                      )
21 ARIOSA DIAGNOSTICS, INC.,          )
                                      )
22         Counterclaim Defendant,    )
                                      )
23     and                            )
                                      )
24 ISIS INNOVATION LIMITED,           )
                                      )
25         Nominal Counterclaim       )
           Defendant.                 )
26 _____  )

27

28

ARIOSA DIAGNOSTICS, INC.'S OPPOSITION TO
SEQUENOM, INC.'S MOTION TO CLARIFY OR,
ALTERNATIVELY, MODIFY PROTECTIVE ORDER                    Case No. 3:11-cv-06391-SI

1

# TABLE OF CONTENTS

2

**Page**

3

4  I.     INTRODUCTION ............................................................................................ 1

5  II.    FACTUAL BACKGROUND ......................................................................... 2

6  III.   ARGUMENT ................................................................................................. 4

7         A.    The Stipulated Protective Order Prohibits Sequenom's Litigation
               Counsel From Participating In The IPR ............................................... 4

8
               1.    The Leahy-Smith America Invents Act Replaced *Inter*
9                    *Partes* Reexamination With IPR ............................................... 5

10              2.    "Prosecution" As Defined In The Prosecution Bar Includes
                     Sequenom's Proposed Involvement In The IPR ......................... 7

11              3.    The PTAB Decisions Cited By Sequenom Are Inapposite ...................... 13

12        B.    Sequenom Has Not Carried Its Burden For Modifying The
13              Protective Order ................................................................................ 15

14              1.    The Nature Of The Protective Order Favors Ariosa ................................ 16

15              2.    Ariosa's Decision To Petition For IPR Was Foreseeable ....................... 16

16              3.    Ariosa Relied On The Prosecution Bar In Producing Its
17                    Confidential Technical Information To Sequenom ................................... 17

18              4.    Sequenom Has Not Shown Good Cause For Modifying The
                     Protective Order ................................................................................ 17

19 IV.    CONCLUSION ............................................................................................ 20

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*55 Brake, LLC v. Audi of Am.*,
    1:CV 08-177-BLW, 2011 WL 2747523 (D. Idaho July 13, 2011) ........................... 17, 18

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
    637 F.3d 1324 (Fed. Cir. 2011) ....................................................................... 12

*Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics, Inc.*,
    C 10-CV-02863 (EJD) (PSG), Docket No. 221 (N.D. Cal. Jan. 2, 2013)...................... 11

*Avaya Inc. v. Network-1 Security Solutions, Inc.*,
    IPR2013-00071, Paper 15 (PTAB Feb. 22, 2013) ...................................... 13, 14

*Bayer A.G. v. Elan Pharm. Research Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000) ....................................................................... 12

*Chicago Mercantile Exch., Inc. v. Tech. Research Group, LLC*,
    276 F.R.D. 237 (N.D. Ill. 2011) ............................................................... 15, 16

*CIAS, Inc. v. Alliance Gaming Corp.*,
    504 F.3d 1356 (Fed. Cir. 2007) ....................................................................... 12

*Edwards Lifesciences AG v. Corevalve, Inc.*,
    No. 08-91-GMS, 2011 WL 10565589 (D. Del. Feb. 23, 2011) ................................ 9, 18

*FTC v. Exxon Corp.*,
    636 F.2d 1336 (D.C. Cir. 1980) ....................................................................... 13

*Garmin International Inc. v. Cuozzo Speed Technologies LLC*,
    IPR2012-00001, Paper 26 (PTAB March 5, 2013) ............................................. 6

*In re Deutsche Bank Trust Co. Americas*,
    605 F.3d 1373 (Fed. Cir. 2010) ................................................................ passim

*Kelora Systems, LLC v. Target Corporation*,
    C 11-02284 CW LB, 2011 WL 6000759 (N.D. Cal. Aug. 29, 2011) ......................... 7, 8

*Kyles v. J.K. Guardian Sec. Servs.*,
    97 C 8311, 2006 WL 2349238 (N.D. Ill. Aug. 15, 2006) .................................... 15

*MasterObjects, Inc. v. Google Inc.*,
    C 11-01054 LB, 2012 WL 2958227 (N.D. Cal. July 19, 2012)........................... 17

*Microunity Systems Engineering, Inc. v. Dell, Inc.*,
    No. 2-04-CV-120 (TJW), 2005 WL 2299440 (E.D. Tex. July 18, 2005).................... 9

*Microunity Systems Engineering, Inc. v. Dell, Inc.*,
    No. 2-04-CV-120 (TJW), 2005 WL 6768251 (E.D. Tex. Aug. 17, 2005)................... 9

*Murata Mfg. Co. v. Bel Fuse, Inc.*,
    234 F.R.D. 175 (N.D. Ill. 2006) ..................................................................... 15

1

**Page(s)**

2

3   *ScentAir Technologies, Inc. v. Prolitec, Inc.*,
        IPR2013-00179, Paper 9 (PTAB April 16, 2013) ...................................................... 14, 15

4

5   *Xerox Corporation v. Google, Inc.*,
        270 F.R.D. 182 (D. Del. 2010) .................................................................................. 17, 18

6   **Statutes**

7   35 U.S.C. § 315 ................................................................................................................. 6

8   35 U.S.C. §102 ........................................................................................................... 2, 5, 11

9   35 U.S.C. §103 ........................................................................................................... 2, 5, 11

10  **Rules**

11  37 C.F.R. § 42.100 ......................................................................................................... 12

12  37 C.F.R. § 42.104 ........................................................................................................... 5

13  37 C.F.R. § 42.108 ........................................................................................................... 5

14  37 C.F.R. § 42.121 ........................................................................................................... 6

15  Patent L.R. 2-2 ................................................................................................................ 4

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Sequenom, Inc. ("Sequenom") moves this Court to "clarify" a protective order that does not require clarification. Individuals who have had access to "OUTSIDE ATTORNEYS' EYES ONLY" information are barred from being involved in "directly or indirectly drafting, amending, advising, or otherwise affecting the ***scope or maintenance*** of patent claims" before the Patent and Trademark Office ("PTO"). This is precisely what Sequenom's litigation counsel asks this Court to allow them to do. And this is the second time that Sequenom has sought to modify the protective order to allow its litigation counsel to participate in *inter partes* review ("IPR") of U.S. Patent No. 6,258,540 ("the '540 patent") on behalf of Isis Innovation Limited ("Isis"). This Court rejected Sequenom's first request, filed in a letter brief, that the Court heard at the April 19, 2013 case management conference. Sequenom's second request likewise should be rejected. The protective order was agreed to by all parties. Ariosa Diagnostics, Inc. ("Ariosa") has produced hundreds of thousands of pages of its most sensitive technical information in reliance on its provisions. Sequenom is not entitled to change the rules in the middle of the game.

Sequenom's motion, like its letter brief, fails to show good cause to alter the parties' agreement. In contrast, there is ample evidence that the requested modification of the protective order would result in severe prejudice to Ariosa. The parties adopted the prosecution bar from this district's model protective order, which governs all patent infringement cases in this district unless a different protective order is entered. The parties agreed that the restrictions placed on their choice of counsel by the prosecution bar were appropriate given the nature of the case. This district has endorsed these restrictions. Sequenom's litigation counsel, who have never before represented Isis before the PTO, or even in this (or any other) litigation, argue that it is imperative for this Court to allow them to participate in the IPR on behalf of Isis. Isis, the technology transfer arm of the University of Oxford, is already represented in the IPR by experienced prosecution counsel, Sterne, Kessler, Goldstein & Fox ("Sterne Kessler"). Sequenom does not offer any evidence to suggest that Isis will not be adequately represented by Sterne Kessler absent participation by Sequenom's litigation counsel. Indeed, Sequenom has provided no evidence that *any* harm would result from requiring its litigation counsel to abide by the prosecution bar to

which they voluntarily bound themselves.

IPR is a new procedure at the PTO for challenging an issued patent under 35 U.S.C. §§ 102 and 103. IPR is limited to challenges based on patents and printed publications. The patent owner has the opportunity to amend existing claims and draft new claims during the IPR to overcome the prior art challenges. Sequenom's litigation counsel seeks to participate substantively in the IPR, including by drafting responses to validity challenges. This creates an unacceptable risk of disclosure of Ariosa's confidential information and is expressly prohibited by the agreed-upon prosecution bar in this case. Sequenom's litigation counsel would inevitably choose ways to distinguish the prior art at issue in the IPR that preserve Sequenom's litigation options with respect to Ariosa's accused Harmony Prenatal Test ("Harmony Test"), an outcome that would not have been possible but for litigation counsel's access to Ariosa's confidential information regarding the Harmony Test. Moreover, in the unlikely event that the '540 patent survives with no claim amendments during the IPR, Sequenom's litigation counsel would seek to characterize the prior art in a way that does not disclaim coverage of Ariosa's Harmony Test. This prohibited use of Ariosa's most sensitive technical information would be extremely harmful to Ariosa. The parties agreed to the prosecution bar in this case to guard against such a result.

## II.    FACTUAL BACKGROUND

On April 12, 2012, after two weeks of negotiation, Ariosa and Sequenom filed a Stipulated Protective Order ("PO") in this case. (Dkt. 61.) The Court entered the PO on April 13. (Dkt. 62.) The PO contains a prosecution bar that, *inter alia*, prohibits counsel with access to confidential information of the opposing party from participating in prosecution "before any foreign or domestic agency, including the United States Patent and Trademark Office ('the Patent Office')." (Dkt. 62 at ¶ 10.) The prosecution bar defines "prosecution" to include "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims (for example, original prosecution, reissue and reexamination proceedings)." (*Id.*) To date, Ariosa has produced over four-hundred-thousand pages of confidential information in reliance on the protections in the PO.

1    On September 16, 2012, five months after the PO was entered, IPR, a new post-grant

2   procedure for challenging the validity of a patent, became available at the PTO. Congress created

3   IPR to replace *inter partes* reexamination, which was widely criticized as inefficient and

4   ineffective. (Ex. 4,[1] 77 Fed. Reg. 157 (August 14, 2012) at 48721.) On September 17, 2012, one

5   day after IPR first became available, Ariosa filed a petition for IPR of the '540 patent to take

6   advantage of this new, expedited procedure for challenging validity that would simplify this

7   litigation by eliminating any need for this Court to consider technical issues of anticipation or

8   obviousness raised by the prior art in the IPR. (Somait Decl. ¶ 2.) Ariosa promptly moved for a

9   stay after the IPR was instituted in order to minimize the burden on the parties. (Dkt. 166.)

10  Sequenom opposed Ariosa's motion to stay. (Dkt. 171.) Ariosa's motion is pending and is

11  scheduled for oral argument on June 14, 2013. A second petition for IPR of the '540 patent was

12  filed by Ariosa on April 19, 2013. (Somait Decl. ¶ 3.) Ariosa submitted declarations from four

13  declarants in support of its petitions for IPR. (*Id.* ¶ 4.) None of these four declarants has provided

14  any testimony in this litigation. (*Id.*)

15   Sequenom's litigation counsel notified Ariosa of their intention to participate in the IPR on

16  April 4, 2013. (Ex. 2.) Ariosa objected, and informed Sequenom that such participation would

17  violate the provisions of the prosecution bar. (*Id.*) The parties met and conferred, and one day

18  later, Sequenom filed a separate statement with this Court requesting "clarification" of the PO

19  rather than allowing Ariosa a reasonable amount of time to provide its portion of a joint statement

20  as required by this Court's standing order. (Somait Decl. ¶ 7.) That same day, without bothering to

21  wait for a ruling from this Court, Sequenom's lead litigation counsel, Michael Malecek, filed an

22  expedited motion for *pro hac vice* admission in the IPR. (Ex. 3.) At the case management

23  conference on April 19, 2013, this Court denied Sequenom's request to participate in the IPR.

24  Undaunted, Sequenom brought this motion.

25

26

27

28
_____
    [1] All exhibits referenced as "Ex. __" are attached to the Declaration of Lina F. Somait.

III.    ARGUMENT

A.    **The Stipulated Protective Order Prohibits Sequenom's Litigation Counsel From Participating In The IPR**

The express purpose of the PO is to limit disclosure and prevent use of confidential information revealed during the course of this litigation for purposes other than the current litigation. (Dkt. 62 at 1.) "Courts have recognized, however, that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). In patent infringement cases, the Federal Circuit has found that there is a high risk of inadvertent disclosure of confidential information when litigation counsel also represents the same client before the PTO. *Id.* at 1379. To mitigate this risk, protective orders in patent infringement cases often contain a "prosecution bar" that expressly prohibits individuals who have received the accused infringer's confidential information from participating in activities before the PTO. Indeed, the "Patent Local Rule 2-2 Interim Model Protective Order" in this district, which "govern[s] discovery unless the Court enters a different protective order," Patent L.R. 2-2, contains a prosecution bar essentially identical to the prosecution bar in this case.

The Federal Circuit has recognized that the danger of inadvertent disclosure arises when prosecution activities involve "competitive decisionmaking." *Deutsche Bank*, 605 F.3d at 1379. The Federal Circuit in *Deutsche Bank* identified the types of prosecution activities that do and do not rise to the level of competitive decisionmaking, and those that pose a closer question. Prosecution activities that do not rise to the level of competitive decisionmaking include reporting office actions, coordinating client meetings, and staffing projects. *Id.* at 1379-80. In contrast, "investigating prior art," "making strategic decisions on the type and scope of patent protection," and "writing, reviewing, or approving new applications or continuations-in-part of applications" likely involve competitive decisionmaking and should not be exempted from a prosecution bar. *Id.* at 1380. On the borderline are activities such as junior level attorneys primarily taking instructions from more senior level attorneys but still having the opportunity to shape the content of a patent

1  application. *Id.* at 1380.

2      The risk of inadvertent disclosure of confidential information is balanced against potential

3  harm to the opposing party from restricting its choice of counsel. *Id.* at 1380. In balancing these

4  interests "the court should consider such things as the extent and duration of counsel's past history

5  in representing the client before the PTO, the degree of the client's reliance and dependence on

6  that past history, and the potential difficulty the client might face if forced to rely on other counsel

7  for the pending litigation or engage other counsel to represent it before the PTO." *Id.* at 1381. In

8  this case, the parties agreed that a prosecution bar was necessary and agreed on the scope of

9  activities that should be included in the bar. Now Sequenom claims that IPR, a procedure that

10  replaced *inter partes* reexamination at the PTO, is not within the scope of the bar. Sequenom is

11  wrong.

### 1.    The Leahy-Smith America Invents Act Replaced *Inter Partes* Reexamination With IPR

13      An overview of IPR is helpful in understanding why there is no question that it is included

14  in the prosecution bar. The Leahy-Smith America Invents Act replaced *inter partes* reexamination

15  with IPR, which became available on September 16, 2012. Congress designed IPR to overcome

16  the inefficiencies of *inter partes* reexamination. "[B]y providing shorter timelines for *inter partes*

17  review compared with reexamination, it is anticipated that the current high level of duplication

18  between litigation and reexamination will be reduced." (Ex. 4, 77 Fed. Reg. 157 (August 14, 2012)

19  at 48721.) To institute IPR, the Patent Trial and Appeal Board ("PTAB") issues an order

20  describing which claims are subject to IPR, which statutory invalidity grounds are at issue, and

21  which pieces of prior art support those statutory invalidity grounds. 37 C.F.R. § 42.108. The IPR

22  is limited to the claims and grounds identified by the PTAB. *Id.* No additional prior art can be

23  raised in the IPR. *Id.* Thus, the scope of review is more narrow than the scope of review during

24  *inter partes* reexamination, which did not place any limits on the third-party challenger's response

25  to examiner rejections and patent owner responses.

26      Both *inter partes* reexamination and IPR are limited to §§ 102 and 103 challenges to

27  validity based on patents and printed publications. 37 C.F.R. § 42.104. Both allow the third-party

28

1    challenger to participate in the proceedings. (Ex. 1, 77 Fed. Reg. 157 (August 14, 2012) at 48765,

2    48767-68.) Both create estoppel in the PTO and in civil actions. 35 U.S.C. § 315. Both permit the

3    patent owner to amend claims or propose new ones, so long as they do not broaden the scope of

4    protection. 37 C.F.R. § 42.121.

5         Sequenom incorrectly states that the PTO "made it clear that Review would emulate

6    litigation with respect to the availability of discovery." (Motion at 10:19-20.) Far from it. The

7    PTAB explained in *Garmin International Inc. v. Cuozzo Speed Technologies LLC*, IPR2012-

8    00001, Paper 26 (PTAB March 5, 2013) (Ex. 5), that in "*inter partes* review, discovery is limited

9    as compared to that available in district court litigation. Limited discovery lowers the cost,

10   minimizes the complexity, and shortens the period required for dispute resolution. There is a one-

11   year statutory deadline for completion of *inter partes* review, subject to limited exceptions. What

12   constitutes permissible discovery must be considered with that constraint in mind." *Id.* at 5-6

13   (internal citations omitted). Discovery is "focused on what the parties reasonably need to respond

14   to the grounds raised by an opponent." (Ex. 1, 77 Fed. Reg. 157 (August 14, 2012) at 48761.) The

15   PTO has explained that the parties to IPR will be entitled to "routine" discovery. "Routine"

16   discovery is (1) "any exhibit cited in a paper or testimony," (2) "cross-examination of the other

17   sides' declarants," and (3) "relevant information that is inconsistent with a position advanced

18   during the proceeding." (*Id.*) All other discovery is considered "additional" discovery and is only

19   available if it is shown to be in the "interests of justice." (*Id.*) This is a difficult standard to meet.

20   The PTAB explained that with respect to "additional" discovery, "[a]sking for the other party's

21   litigation positions and the underlying basis for those positions is not necessary in the interest of

22   justice. The Board has established rules for the presentation of arguments and evidence. There is a

23   proper time and place for each party to make its presentation. A party may not attempt to alter the

24   Board's trial procedures under the pretext of discovery." *Garmin Int'l*, IPR2012-00001 at 6

25   (Ex. 5).

26        Sequenom indicates that in the IPR it "will take depositions of key witnesses that will also

27   be deposed in the litigation." (Motion at 16:6-7.) The parties to IPR generally can only depose the

28   other side's declarants. Ariosa has four declarants in the IPRs. (Somait Decl. ¶ 4.) None of these

ARIOSA DIAGNOSTICS, INC.'S OPPOSITION TO
SEQUENOM, INC.'S MOTION TO CLARIFY OR,
ALTERNATIVELY, MODIFY PROTECTIVE ORDER                    - 6 -                    Case No. 3:11-cv-06391-SI

1   declarants has provided testimony in this litigation (*id.*), and thus Sequenom's statement appears

2   to be baseless. Sequenom suggests in its brief that inventor depositions are a necessary part of IPR

3   proceedings. It is not clear that this is the case here, because Isis has not yet stated whether it will

4   choose to rely on inventor testimony in support of its arguments. (*See* Ex. 1, 77 Fed. Reg. 157

5   (August 14, 2012) at 48761.)

6
7   **2.   "Prosecution" As Defined In The Prosecution Bar Includes Sequenom's Proposed Involvement In The IPR**

8          In negotiating the protective order in this case, the parties agreed that a prosecution bar was

9   necessary to guard against the risk of inadvertent disclosure of their confidential information

10  outside of this litigation. The parties adopted the provisions of the prosecution bar in the model

11  protective order in this district regarding the scope of prohibited activities, and negotiated the

12  subject matter to be covered by the bar. The prosecution bar provides that "[a]bsent written

13  consent from the Producing Party, any attorney, patent agent, paralegal, expert, or consultant of,

14  for, or representing the Receiving Party that gains access to 'OUTSIDE ATTORNEYS' EYES

15  ONLY INFORMATION' shall not be involved in the prosecution of . . . the patents asserted in

16  this Litigation . . . before any foreign or domestic agency, including the United States Patent and

17  Trademark Office ('the Patent Office')." (Dkt. 62 at ¶ 10.) "Prosecution" as defined in the

18  prosecution bar is not limited to drafting or amending claims. It is much broader, in recognition of

19  the fact that the risk of inadvertent disclosure of confidential information is not implicated solely

20  when existing claims are amended or new claims are drafted. The prosecution bar defines

21  "prosecution" to include "directly or indirectly drafting, amending, advising, or otherwise

22  affecting the ***scope or maintenance*** of patent claims (for example, original prosecution, reissue

23  and reexamination proceedings)." (*Id.* (emphasis added).) But "prosecution" as defined in the

24  prosecution bar "does not include representing a party ***challenging*** a patent before a domestic or

25  foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or *inter*

26  *partes* reexamination)." (*Id.* (emphasis added).)

27         The scope of activities prohibited by the prosecution bar in the model protective order, and

28  consequently by the prosecution bar in this case, was addressed in *Kelora Systems, LLC v. Target*

1   *Corporation*, C 11-02284 CW LB, 2011 WL 6000759 (N.D. Cal. Aug. 29, 2011). In *Kelora*, the

2   parties disagreed on the provisions that should be included in the prosecution bar. The patent

3   owner proposed changes to this district's model protective order; the accused infringers resisted

4   any changes to the model order. *Id.* at *1. The court found that the provisions of the model order

5   should apply.

6        In particular, the parties disputed whether "prosecution" as used in the model order

7   "includes distinguishing prior art or advising and/or consulting regarding the same with persons

8   who may be involved in 'prosecution' as defined in the protective order." *Id.* at *8. The patent

9   owner argued that there was no threat of inadvertent disclosure of confidential information in

10  distinguishing prior art, and barring litigation counsel from doing so would unfairly prejudice the

11  patent owner's ability to defend its patents with consistency. *Id.* The court disagreed, explaining

12  that in *Deutsche Bank*, the Federal Circuit indicated that "investigating prior art relating to those

13  inventions" likely constituted competitive decisionmaking. *Id.* (quoting *Deutsche Bank*, 605 F.3d

14  at 1380). Accordingly, the court rejected the patent owner's proposed "clarification" to exclude

15  distinguishing prior art, and advising and/or consulting regarding that prior art, from the scope of

16  "prosecution" activities prohibited by the model protective order. *Id.*

17       There is no dispute that the prosecution bar in this case applies to reexaminations. Indeed,

18  this district has recognized the risk of inadvertent disclosure of confidential information during

19  reexamination and has therefore included reexaminations within the scope of the prosecution bar

20  in the model protective order.[2]

21  _____

22  [2] Not only does Sequenom advocate that this Court ignore the actual language of the mutually agreed-upon prosecution bar, but it also appears that Sequenom did not even bother to read the prosecution bar. Sequenom argues that the prosecution bar should not prohibit its

23  litigation counsel from participating in IPR proceedings initiated by Ariosa, citing two cases that involve reexamination rather than IPR. (Motion at 8:21-9:2.) These two cases are directly contrary

24  to the express provisions of the prosecution bar, which states: "to avoid any doubt, 'prosecution' as used in this paragraph does not include representing a party challenging a patent before a

25  domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination)." The prosecution bar thus specifically anticipates Ariosa's filing a

26  petition for reexamination of the '540 patent during litigation and allows Ariosa's litigation counsel that has had access to confidential information from Sequenom or Isis to participate in the

27  reexamination. This properly recognizes that the danger lies in the patent owner's use of confidential information about the alleged infringer's products when defending its patents in front

28  of the PTO, but that there is no similar danger as a result of the alleged infringer's exposure to confidential information from the patent owner when challenging a patent. This reasoning applies

1    Other courts have also recognized that it is appropriate for reexaminations to be within the

2    scope of a prosecution bar, even though claims may only be narrowed, because a patent owner

3    may choose to rewrite claims in a manner informed by the alleged infringer's confidential

4    information acquired through litigation. For example, in *Microunity Systems Engineering, Inc. v.*

5    *Dell, Inc.*, No. 2-04-CV-120 (TJW), 2005 WL 6768251 (E.D. Tex. Aug. 17, 2005), the patent

6    owner moved to "clarify" the protective order to allow its litigation counsel to take part in

7    reexamination proceedings of the patents-in-suit "limited to providing insight and analysis of the

8    scope and content of the relevant prior art of record." *Microunity Systems Engineering, Inc. v.*

9    *Dell, Inc.*, No. 2-04-CV-120 (TJW), 2005 WL 2299440, at 3 (E.D. Tex. July 18, 2005). The court

10   denied the motion, finding that the prosecution bar, which provided that individuals with access to

11   confidential information "shall not prosecute or prepare any patent application" and "shall not

12   have any substantive involvement in the prosecution of any applications filed, or claiming priority

13   to any application filed" *id.* at 2, applied to reexaminations. *Microunity Sys.*, 2005 WL 6768251, at

14   *1. The court found unpersuasive the patent owner's argument that the only benefit of having

15   litigation counsel provide explanation and insight with regard to the prior art was in the form of

16   efficiency and avoiding waste, since these tasks were comparable to the ones litigation counsel

17   would perform during litigation and trial. *Microunity Sys.*, 2005 WL 2299440, at 4.

18   Similarly, in *Edwards Lifesciences AG v. Corevalve, Inc.*, No. 08-91-GMS, 2011 WL

19   10565589 (D. Del. Feb. 23, 2011), plaintiffs requested an order allowing trial counsel and its

20   technical expert to participate in two patent reexaminations initiated by defendants. *Id.* at *1. The

21   court denied the request, finding that "the risk of the use of confidential information and the harm

22   that the defendants might suffer as a result far outweighs the potential harm to [plaintiffs] of

23   enforcing the prosecution bar in the reexamination." *Id.*

24   Sequenom makes much of the fact that IPR is not one of the ***non-exclusive examples*** of

25   PTO proceedings listed in the prosecution bar (even though IPR did not become available until

26   September 16, 2012, about five months after the entry of the PO in this case). Of course, a non-

27   _____

28   equally in the case of IPR, which is limited to the same validity challenges as is *inter partes*
     reexamination.

1    exclusive list is precisely that, non-exclusive. The non-exclusive examples include both pre- and

2    post-grant proceedings before the PTO. IPR is a post-grant proceeding before the PTO that was

3    expressly created as a replacement for *inter partes* reexamination, which is one of the non-

4    exclusive examples listed in the prosecution bar. Whether participation in IPR is prohibited by the

5    prosecution bar is not a close call. If Sequenom had any doubt as to whether participating in IPR

6    was prohibited by the prosecution bar, it had ample opportunity to raise this concern during the PO

7    negotiations. It did not.

8          Nor is it persuasive when Sequenom argues that "[w]hen a contract lists specific examples

9    to illustrate a general statement, the general statement is construed to embrace only things similar

10   in nature to those enumerated by the specific examples." (Motion at 4:9-11, *see also* 13:1-14.)

11   While it is true that *inter partes* reexamination and IPR are different procedures, they are similar

12   with respect to all characteristics pertinent to the need for a prosecution bar. In both IPR and *inter*

13   *partes* reexamination, the patent owner is responding to §§ 102 and 103 validity challenges based

14   on patents and printed publications, trying to preserve the validity of the patent through argument

15   and/or amendment. The risk of inadvertent disclosure that arises in both situations stems from the

16   opportunity to distinguish the prior art in a way that preserves the patent owner's infringement

17   position, which is made possible by having access to the confidential information of the alleged

18   infringer. That there are different procedures for IPR and *inter partes* reexamination, and that one

19   is done by patent examiners and the other by the PTAB, is irrelevant for purposes of the

20   prosecution bar.

21         Sequenom argues that "activities that are wholly unrelated to claim amendment" should

22   not be included within the scope of the prosecution bar. (Motion at 18:18.) But the prosecution bar

23   is not limited to activities related to amending claims. Instead, the prosecution bar prohibits

24   "directly or indirectly drafting, amending, advising, or otherwise affecting **the scope or**

25   **maintenance** of patent claims"[3] "before any foreign or domestic agency." (Emphasis added.) IPR

26

27         [3] Sequenom now describes the provisions of the prosecution bar it voluntarily agreed to as
     "ambiguous." (Motion at 11:22.) Sequenom, of course, never voiced any concern about ambiguity
28   during the course of the negotiations. It is incredulous for Sequenom now to suggest that it agreed
     to a prosecution bar that it found to be ambiguous. Nor is Sequenom in any position to complain
     about the breadth of the prosecution bar to which it previously agreed. As the Court aptly observed

1    is a procedure for challenging the validity of an issued patent under §§ 102 and 103 before the

2    PTO, a domestic agency, based on patents or printed publication. To survive IPR, the patent owner

3    must rely on arguments and/or amendments to distinguish the claims of the patent under review

4    from the prior art identified in the IPR. Arguments and amendments made to distinguish prior art

5    necessarily affect the "scope" of the patent claims (if not directly then at least indirectly), as well

6    as their "maintenance" in light of that prior art. Sequenom's argument that Ariosa's reading of the

7    prosecution bar would "bar litigation counsel from participating in numerous activities in this

8    litigation" (Motion at 12:10-11) ignores the stated purpose of the PO—to prevent the use of

9    confidential information *outside of this litigation*. Furthermore, the prosecution bar is expressly

10   limited to proceedings "before any foreign or domestic agency . . . ." (Dkt. 62 at ¶ 10.) This Court

11   is not a foreign or domestic agency.

12        All of the activities in which Sequenom's litigation counsel seeks to participate are for the

13   purpose of crafting arguments to distinguish the prior art to the '540 patent:

14        • preparing Isis's declarants for depositions

15        • taking the depositions of Ariosa's declarants

16        • reviewing the inventor documents relating to conception and reduction to practice

17        • discussing discovery in, and the status of, the IPR with Sequenom, Isis, the

18          inventors of the '540 patent, and Isis's post-grant counsel

19        • discussing responses to the arguments advanced by Ariosa regarding the validity of

20          the '540 patent in the IPR and litigation

21        • drafting Isis's patent owner's response to the first petition for IPR and Isis's patent

22          owner's preliminary response to the second petition for IPR

23        • drafting declarations in support of Isis's patent owner's response

24

25

26   in *Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics, Inc.*, C 10-CV-02863 (EJD)
     (PSG) (N.D. Cal. Jan. 2, 2013) (Dkt. 349) (Ex. 6.), when plaintiff sought to modify the
27   prosecution bar in the protective order on the ground that it was overbroad, "[i]f [plaintiff] is
     unhappy with the consequences of the language it agreed upon, those consequences are of its own
28   making, and there is no reason to alter it at this late stage." *Id.* at 2.

1   There can be no dispute that these activities have any other aim than finding a way to overcome

2   the prior art that Ariosa has submitted to the PTO, whether by argument or claim amendment. The

3   Federal Circuit has unambiguously placed this kind of activity in the "competitive

4   decisionmaking" category that should not be exempt from a prosecution bar. The way prior art is

5   distinguished inevitably influences and controls the way claims are interpreted or amended. This is

6   squarely within the prosecution bar's prohibition against "directly or indirectly drafting,

7   amending, advising, or otherwise affecting the scope or maintenance of patent claims."

8        Even if Isis does not amend its claims, Isis's arguments during the IPR and declarations

9   submitted to support those arguments can alter the scope of its claims and the proper constructions

10  of its claim language. *See e.g., Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336

11  (Fed. Cir. 2011) (finding that the patent owner disclaimed claim scope based on arguments it made

12  during reexamination); *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1362 (Fed. Cir.

13  2007) (holding that argument to the PTO on reexamination constituted disavowal of claim scope

14  even though "no amendments were made"); *Bayer A.G. v. Elan Pharm. Research Corp.*, 212 F.3d

15  1241, 1253 (Fed. Cir. 2000) (finding that statements Bayer made and declarations it submitted to

16  the PTO resulted in surrender of subject matter). Sequenom tacitly acknowledges this when

17  bringing Ariosa's claim construction positions in the IPR to the Court's attention in a footnote in

18  its brief. Sequenom misleadingly states that "[a]ttacking the validity of the '540 Patent in two

19  different forums—litigation and Review—enabled Ariosa to advocate for wholly inconsistent

20  claim constructions in the different forums." (Motion at n.2.) There is nothing inconsistent about

21  the positions Ariosa has taken. The procedure governing IPR requires that a claim "be given its

22  broadest reasonable construction in light of the specification of the patent in which it appears." 37

23  C.F.R. § 42.100(b). Ariosa's petition clearly states that the claim constructions it is proposing are

24  those advanced *by Sequenom in this litigation*. To avoid any doubt, Ariosa expressly stated that

25  its "position regarding the scope of the claims under their broadest reasonable interpretation is not

26  to be taken as stating any position regarding the appropriate scope to be given the claims in a court

27  or other adjudicative body under the different claim interpretation standards which apply in such

28  proceedings." (Ex. 7 at 21.)

1   Sequenom attempts to minimize the risk that its participation in the IPR poses to Ariosa by

2   asserting that the tasks that Sequenom's litigation counsel seek to perform in the IPR "are nearly

3   identical to the tasks they would perform in this litigation," and that they "have already performed

4   essentially the same tasks in this litigation without violating the Protective Order." (Motion at

5   1:15-16, 2:2-3, *see also* 12:3-27.) Sequenom misses the point entirely. The purpose of the PO in

6   this case, as expressly stated on the first page of the document, is to prevent the use of the parties'

7   confidential information ***outside of this litigation***. (Dkt. 62 at 1.) It is thus irrelevant that

8   Sequenom's litigation counsel can perform tasks in this litigation that it cannot perform in the IPR.

9   It also misses the entire point of a prosecution bar—to prevent litigation counsel who has been

10  exposed to the accused infringer's confidential information from participating in PTO proceedings

11  regarding the patent-in-suit.

12      Sequenom is also wrong to suggest that this is a matter of trust. (Motion at 2:12-14.) As the

13  Federal Circuit recognized, "it is very difficult for the human mind to compartmentalize and

14  selectively suppress information once learned, no matter how well-intentioned the effort may be to

15  do so." *Deutsche Bank,* 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350

16  (D.C. Cir. 1980)). There is a high risk of inadvertent disclosure of confidential information when

17  litigation counsel participates in proceedings before the PTO. This is precisely why prosecution

18  bars are nearly ubiquitous in patent litigation. Sequenom's suggestion that Ariosa has an "ulterior

19  motive" is an ill-tempered accusation. (Motion at 2:15.) Ariosa is asking for nothing more than

20  compliance with the provisions of a prosecution bar voluntarily agreed to by Sequenom—and that

21  governs all patent cases in this district unless an alternative protective order is entered.

22          **3.      The PTAB Decisions Cited By Sequenom Are Inapposite**

23      Sequenom once again relies on *Avaya Inc. v. Network-1 Security Solutions, Inc.*, IPR2013-

24  00071, Paper 15 (PTAB Feb. 22, 2013), to support its contention that IPR is not included within

25  the scope of the prosecution bar in this case. There were two prosecution bars at issue in *Avaya*:

26  one in a pending litigation, and the second in a litigation that had settled more than two years prior

27  to the PTAB decision. The pending litigation in *Avaya* allowed litigation counsel with access to

28  confidential information to "participate in any reexamination proceeding of the patent at issue in

1    this Action, except that outside counsel for [Network-1] may not act as counsel of record in any

2    reexamination proceeding and may not reveal the contents of any 'CONFIDENTIAL' or

3    'HIGHLY CONFIDENTIAL' information to reexamination patent counsel or agents." *Id.* at 4.

4    This prosecution bar thus bears little resemblance to the prosecution bar at issue in this case, and

5    the PTAB's analysis of it and the arguments made by the parties is not instructive. As explained

6    earlier, the risks posed by *inter partes* reexamination are the same as those posed by IPR.

7    Accordingly, it would be difficult to argue that a prosecution bar that allows participation in

8    reexamination proceedings would prohibit participation in IPR. Furthermore, the protective order

9    in the pending litigation in *Avaya* did not prohibit "directly or indirectly drafting, amending,

10   advising, or otherwise affecting the scope or maintenance of patent claims." Had it done so, the

11   PTAB would not have come to the same conclusion.

12          The prosecution bar in the settled litigation in *Avaya* was no longer in effect—its duration

13   was only "two (2) years from disclosure of the technical information or one (1) year after

14   conclusion of the litigation (including any appeals), whichever period is longer." (Ex. 8 at ¶ 12,

15   Ex. 9.) Furthermore, unlike the prosecution bar at issue in this case, the prosecution bar in the

16   settled litigation did not define prosecution as "directly or indirectly drafting, amending, advising,

17   or otherwise affecting the scope or maintenance of patent claims" and it prohibited litigation

18   counsel from participating "'in any aspect of any reexamination proceedings' involving the [patent

19   in IPR] *other than forwarding prior art references produced in the litigation*." *Avaya*, IPR2013-

20   00071 at 6 (emphasis added). Consequently, the "reasoning" of the PTAB—"[f]or similar reasons

21   as those explained above with respect to the pending litigation, we disagree that good cause to

22   recognize Mr. Dovel *pro hac vice* is lacking" *id.* at 6-7—provides no guidance with respect to the

23   prosecution bar at issue in this case.

24          Sequenom also relies on *ScentAir Technologies, Inc. v. Prolitec, Inc.*, IPR2013-00179,

25   Paper 9 (PTAB April 16, 2013). Once again, its reliance is misplaced. The prosecution bar at issue

26   in the case was much narrower than the prosecution bar at issue here. The prosecution bar

27   provided that persons with access to confidential material "shall not . . . draft, supervise, assist, or

28   advise in drafting or amending claims or patent specifications . . . ." (Ex. 10 at ¶ 23.) Moreover,

1   the PTAB's decision was influenced by the fact that the parties had already sought expedited relief

2   from the district court. The PTAB noted that the patent owner had already filed an expedited

3   motion before the district court for clarification of the protective order and that a decision was

4   expected within three weeks to one month. The PTAB also noted that the alleged infringer had

5   represented that it would be filing a motion within a day seeking relief from the district court.

6   *ScentAir*, IPR2013-00179 at 3-4. The PTAB further noted that "[e]ven if the normal time period

7   for a decision on an expedited motion is between three weeks to one month, if the matter is of

8   sufficient importance as ScentAir suggests, ScentAir is not restricted from seeking a more

9   expedited decision from the U.S. District Court." *Id.* at 4-5. The PTAB instructed the alleged

10  infringer to renew its request to bar litigation counsel from participating in the IPR if the district

11  court indicated that the protective order prohibited such participation. *Id.* at 5.

12          **B.      Sequenom Has Not Carried Its Burden For Modifying The Protective Order**

13          In determining whether modification of a protective order is appropriate, courts consider

14  the following factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of

15  issuance of the order, of the modification requested; (3) the parties' reliance on the order; and

16  most significantly (4) whether good cause exists for the modification." *Chicago Mercantile Exch.,*

17  *Inc. v. Tech. Research Group, LLC*, 276 F.R.D. 237, 239 (N.D. Ill. 2011) (quoting *Murata Mfg.*

18  *Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006)). Sequenom has the burden of showing

19  good cause for modifying the protective order. *Chicago Mercantile Exch.*, 276 F.R.D. at 239.

20  "Where, as here, a protective order is agreed to by the parties before its presentation to the court,

21  there is a higher burden on the movant to justify the modification of the order." *Kyles v. J.K.*

22  *Guardian Sec. Servs.*, 97 C 8311, 2006 WL 2349238, at *4 (N.D. Ill. Aug. 15, 2006).

23          In *Chicago Mercantile Exchange, Inc. v. Technology Research Group, LLC*, the

24  prosecution bar prohibited any individual who had received confidential information from

25  prosecuting or preparing any patent or patent application related to certain areas of technology in

26  "any and all proceedings, including but not limited to reissue or reexamination proceedings, before

27  the United States Patent and Trademark Office or any other patent office worldwide." *Chicago*

28  *Mercantile Exch.*, 276 F.R.D. at 239. The patent owner moved to amend the protective order to

1   allow litigation counsel who had access to confidential material to participate in a reexamination

2   of the patent at issue initiated by the alleged infringers. *Id.* The court denied the motion based on

3   the four-factor test. First, the provision at issue was negotiated, and thus the nature of the

4   protective order weighed against granting the modification. Second, the court found that the

5   alleged infringers' decision to initiate reexamination was foreseeable given the "increased use of

6   reexamination as an alternate or additional venue to challenge patent validity where district court

7   litigation has been initiated . . . ." *Id.* at 240 (internal quotation marks and citation omitted). Third,

8   the court found that the alleged infringers and third parties had relied on the protective order in

9   conducting discovery. Fourth, the court found that the patent owner's need to hire another set of

10   lawyers to represent it before the PTO did not constitute good cause for the modification. Finally,

11   in addition to the foregoing, the court found that the patent owner failed to establish the absence of

12   an unacceptable risk of inadvertent disclosure of confidential information.

13         Applying the four factor test here leads to the same conclusion: modification of the

14   prosecution bar is not warranted.

15               **1.      The Nature Of The Protective Order Favors Ariosa**

16         Sequenom and Ariosa negotiated the terms of the PO for two weeks. The parties reached

17   agreement on all term and submitted a stipulation to this Court, which entered the PO on April 13,

18   2012. Accordingly, this factors weighs against modification of the PO.

19               **2.      Ariosa's Decision To Petition For IPR Was Foreseeable**

20         Sequenom contends that it "did not anticipate that Ariosa would petition for Review, or

21   that they might be involved in proceedings before the Board that would involve depositions of

22   their inventors, prior art witnesses, and experts." (Motion at 11:3-5.) This argument is not credible.

23   Sequenom's counsel are experienced patent litigators. They were admittedly aware, during the

24   negotiation of the IPR, that IPR would replace *inter partes* reexamination. As experienced patent

25   litigators, they were no doubt aware it is commonplace for an accused infringer to initiate

26   reexamination proceedings, and that the accused infringer typically bases the validity challenge in

27   the reexamination on prior art references at issue in the litigation. The prosecution bar here

28   recognizes this very fact—it anticipates that Ariosa might challenge the '540 patent in an *inter*

1  *partes* reexamination, and specifically exempts the activities of ***Ariosa's counsel*** from the bar. It

2  was foreseeable that IPR, which is designed to make *inter partes* reexamination more efficient,

3  would be used in a similar fashion once it became available. Indeed, one would predict that IPR

4  would be even more prevalent than *inter partes* reexamination due to its expedited nature.

5  Accordingly, this factor also weighs against modification of the PO.

**3.   Ariosa Relied On The Prosecution Bar In Producing Its Confidential Technical Information To Sequenom**

8  Ariosa has already produced highly sensitive technical information about its Harmony Test

9  to Sequenom, relying on the provisions of the PO, including the prosecution bar, to prevent the use

10  of its confidential information outside of this litigation. Ariosa would not have produced this

11  information to Sequenom without the safeguards provided by the prosecution bar. Sequenom gave

12  no indication during the PO negotiations that it had any concern about the breadth of the

13  prosecution bar or that it did not understand the scope of protection afforded by its provisions.

14  Now that it has obtained Ariosa's confidential technical information by making promises it no

15  longer finds advantageous to keep, Sequenom claims that the prosecution bar it agreed to is

16  ambiguous. This factor too weighs against modifying the PO.

**4.   Sequenom Has Not Shown Good Cause For Modifying The Protective Order**

19  Sequenom must demonstrate actual prejudice in order to satisfy the "good cause"

20  requirement necessary to modify the PO. *55 Brake, LLC v. Audi of Am.*, 1:CV 08-177-BLW, 2011

21  WL 2747523, at *1 (D. Idaho July 13, 2011); *see also MasterObjects, Inc. v. Google Inc.*, C 11-

22  01054 LB, 2012 WL 2958227, at *1 (N.D. Cal. July 19, 2012) ("Generally, good cause requires

23  the moving party to show that specific prejudice or harm will result if the protective order is not

24  issued."). Sequenom argues that it will be substantially harmed if it is restricted in its choice of

25  counsel.[4] (Motion at 21:26-23:23.) In balancing the risk of inadvertent disclosure of confidential

---

[4] Sequenom relies heavily on *Xerox Corporation v. Google, Inc.*, 270 F.R.D. 182 (D. Del. 2010), to support its contention that it will be substantially harmed if litigation counsel is not allowed to participate in the IPR. In *Xerox*, the court held that litigation counsel that had access to confidential information could advise its client regarding amending claims on reexamination. Sequenom does not dispute that the prosecution bar at issue in this case—to which it agreed—

information against the potential harm to the opposing party from restricting its choice of counsel as a result of a prosecution bar, "the court should consider such things as the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *Deutsche Bank*, 605 F.3d at 1381.

*55 Brake, LLC v. Audi of America* is instructive. In *55 Brake*, the protective order barred involvement in "Patent Prosecution" for those having access to confidential material. *55 Brake*, 2011 WL 2747523, at *1. "Patent Prosecution" was defined as "preparing, drafting, reviewing, filing, responding to office actions, signing oaths or declarations, or prosecuting patent applications or patents, or assisting in any of those activities with respect to . . . (c) any . . . re-examinations of any of the patents asserted in the current litigation." *Id.* Plaintiff moved to amend the protective order to allow its litigation counsel to assist with prior art issues during a reexamination initiated by one of the defendants, pledging that it would not assist in any work leading to amendment of the claims. *Id.* The court found that the prosecution bar was broad, and could not be read to protect only against the use of confidential information to amend the claims. *Id.* at *2. Plaintiff argued that it would be more efficient for litigation counsel to participate in the reexamination because they were much more knowledgeable about prior art issues than its prosecution counsel. *Id.* at *1. The court rejected this argument, noting that "inefficiency in legal representation does not amount to 'actual prejudice.'" *Id.* at *2.

Sequenom represents that Sterne Kessler, Isis's prosecution counsel in the IPR, was

---

prohibits litigation counsel from advising Isis regarding amending claims on reexamination. Unlike here, *Xerox* did not involve a request to allow litigation counsel to undertake activities in a PTO proceeding that were already covered by an agreed-to prosecution bar. In agreeing to the prosecution bar, Sequenom has already stipulated to a different outcome than that adopted in *Xerox*. Indeed Sequenom has thus impliedly acknowledged that any potential harm from being denied right to counsel of its choice as a result of the prosecution bar is outweighed by the risk of inadvertent disclosure of confidential information. Moreover, this district has also recognized that the balance of interests weighs in favor of including reexamination in the prosecution bar in the model protective order. Finally, *Edwards Lifesciences AG v. Corevalve, Inc.*, No. 08-91-GMS, 2011 WL 10565589 (D. Del. Feb. 23, 2011), another more recent case from the District of Delaware, reached the opposite conclusion to *Xerox*.

1   retained by Isis at least six months ago. (Motion at 2:23-24.) It contends that "Sterne Kessler does

2   not have the same depth of knowledge and familiarity as litigation counsel regarding the specific

3   patent, the prior art at issue in this case, or the relevant witnesses," and will "be hampered in its

4   ability to gain the same level of knowledge and familiarity" due to "the expedited nature of the

5   Review proceedings." (Motion at 2:25-3:1.) Sequenom's litigation counsel's purported

6   "substantial familiarity and experience with the subject matter disclosed in the '540 Patent and the

7   prior art" (Motion at 23:2-3) is not enough to justify modifying the prosecution bar to allow its

8   participation in the IPR after being exposed to Ariosa's confidential technical information.

9   Nowhere in its brief does Sequenom suggest that Sterne Kessler will not be able to competently

10  represent Isis in the IPR. There is a limited universe of prior art at issue in the IPR, and Sterne

11  Kessler has had more than six months to analyze this prior art. Isis's Preliminary Patent Owner

12  Response to the petition for IPR, which was submitted by Sterne Kessler on December 31, 2012,

13  over four months ago, demonstrates that Sterne Kessler already had ample opportunity as of that

14  date to familiarize itself with the subject matter of the IPR and analyze the prior art at issue. (Ex.

15  11.)

16      Sequenom's litigation counsel has had no previous involvement with patent prosecution

17  activities relating to the '540 patent. The original prosecution of the '540 patent was handled by

18  Volpe and Koenig, P.C. ("Volpe"). The prosecution of the continuation application to the '540

19  patent was conducted in part by Volpe and in part by Cozen O'Connor. Volpe appears to have

20  represented Isis before the PTO for at least four years. (Exs. 13, 14.)

21      Moreover, Sequenom candidly admits that "Kaye Scholer partner Michael Malecek,

22  Sequenom's lead litigation attorney [who has moved for expedited admission *pro hac vice* in the

23  IPR], is not and has never been Sequenom's or Isis' prosecution counsel. Indeed, he is not a

24  registered patent attorney. Further, no attorneys at Kaye Scholer perform patent prosecution

25  services." (Motion at 18:14-16.) Accordingly, this is not a situation where Isis is being deprived of

26  representation by its long trusted counsel or by someone with unique experience in patent

27  prosecution matters. Moreover, it is inconceivable that Isis—the technology transfer arm of the

28  University of Oxford—would not have access to prosecution counsel capable of adequately

1   responding to the IPR without the assistance of its licensee's litigation counsel. Thus it is difficult

2   to understand how Sequenom or Isis would be harmed if the prosecution bar is enforced against

3   Sequenom's litigation counsel.

4          And, in fact, Isis has hired capable counsel, Sterne Kessler, to handle the IPR.

5   Representing clients in IPR proceedings is one of the services advertised by Sterne Kessler, Isis's

6   prosecution counsel in the IPR, on its website, which states that Sterne Kessler is representing or

7   has represented clients in thirty IPR proceedings since the procedure first became available on

8   September 16, 2012. (Ex. 12.) Sterne Kessler's website also states that it has represented clients in

9   over 400 reexaminations, which, as explained earlier, involve the same analyses of patents and

10  printed publications as does IPR. (*Id.*) Sequenom does not, and cannot, demonstrate that Sterne

11  Kessler is unable to competently represent Isis in IPR unless aided by Sequenom's litigation

12  counsel. Although Sequenom points to a vague and unquantifiable "deep understanding of ***the***

13  ***issues***" that its litigation counsel possesses and that Isis's prosecution counsel purportedly lacks,

14  (Motion at 23:18 (emphasis added)), this nebulous and highly speculative alleged "harm" is

15  simply not enough to show actual prejudice to Sequenom as a result of the prosecution bar.

16  Accordingly, Sequenom's requested modification of the prosecution bar should be denied.

17  **IV.    CONCLUSION**

18         The prosecution bar in this case, which Sequenom voluntarily agreed to, prohibits

19  Sequenom's litigation counsel from participating in the IPR of the '540 patent on behalf of Isis in

20  the manner outlined in Sequenom's brief. Ariosa relied on the protections of the prosecution bar in

21  producing its most confidential technical information to Sequenom. Sequenom cannot now alter

22  the terms of its agreement without showing good cause. It has failed to do so. Sterne Kessler has

23  competently represented Isis in the IPR for over six months without (to our knowledge) any

24  assistance from Sequenom's litigation counsel. There is no evidence that Sterne Kessler has been

25  handicapped by the prosecution bar. In contrast, if Sequenom's litigation counsel is allowed to

26  participate in the IPR, there is a high risk that Ariosa's confidential information will be used,

27  perhaps inadvertently, to stake out claim positions intended to overcome prior art but still capture

28  Ariosa's Harmony Test. Accordingly, Sequenom's motion should be denied.

1

2   Dated: May 15, 2013                    Respectfully submitted,

3                                          IRELL & MANELLA LLP
                                           David I. Gindler
4                                          Andrei Iancu
                                           Amir Naini
5                                          Lina F. Somait

6                                          By: */s/ Lina F. Somait*

7                                          Lina F. Somait
                                           Attorneys for Plaintiff and Counterclaim Defendant
8                                          Ariosa Diagnostics, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28